**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**PROCAPUI-PRODUTORES de CAMAROES de**
**ICAPUI LTDA.**

                                                    **07 Civil Action**
                            **Plaintiff,**          **File No. 6627-BSJ**


                  **v.**


**MARCIAL GERALD LAYANI, G. F. HIGGINS,**
**INC., THERESA HIGGINS, as Executrix of**
**THE ESTATE OF GERALD FRANCIS HIGGINS,**
**THOMAS HIGGINS, ROBERT HIGGINS,**
**RICHARD RUBIN and NOEL BLACKMAN,**

                            **Defendants.**
-------------------------------------------------------------x


## MEMORANDUM OF LAW
## IN SUPPORT OF HIGGINS DEFENDANTS
## MOTION TO DISMISS AND FOR
## OTHER RELIEF

        This Memorandum is offered to the Court in Support of the Motions of

Defendants G.F. Higgins, Inc., Theresa Higgins, as Executrix of the Estate of

Gerald Francis Higgins, Thomas Higgins and Robert Higgins (hereinafter the

"Higgins Defendants") to dismiss the Complaint herein and this action or, in the

alternative, for other relief.  The relief requested is detailed in the accompanying

Notice of Motion.

-1-

In brief summary, the Complaint, a copy of which is filed as an Exhibit, contains five purported Claims for Relief, four of which attempt to make "RICO", 18 U.S.C. §§ 1961 et seq., Claims and the Fifth of which purports to set forth a Claim for Common Law goods sold and delivered. The RICO Claims are subject to dismissal on pleading grounds, including a wholesale lack of required particularity, and other failures adequately to plead essential elements of RICO claims as described in detail below. Once the RICO Claims fail, the Fifth Claim also requires dismissal because there will then be no Federal claim to which it might be pendent and there is no other basis of Federal Court subject matter jurisdiction. The Plaintiff is a non-U.S. corporation. The first named Defendant, Marcial Gerald Layani, is, contrary to the allegations of the Complaint, a U.S. citizen domiciled outside of the U.S. (See Layani Declaration) and, accordingly is not diverse from the Plaintiff, thereby destroying diversity for all parties.

Once the Court determines that the RICO Claims are fatally flawed, the entire action must be dismissed as to all Claims and as to all Defendants.

At the outset, the Court should note that annexed to the Complaint are sworn statements of Leyla Layani and Sergio Sidou each of which confirms that, in 2003, they and principals of Plaintiff Procapui learned material facts concerning the matters they now allege as frauds and RICO violations. That being do,

-2-

Plaintiff has no fraud claims for anything since, as it cannot have relied on

anything done or said by the Higginses.  Alternatively, any such matters have been

waived and condoned and the Statute of Limitations has run on any injury prior to

such discovery.

## POINT I

### THE PLEADING OF THE RICO CLAIMS IS FATALLY DEFECTIVE

Rule 12(b)(6) F.R.Civ.P. reads as follows in pertinent part:

> Rule 12.  Defenses and Objections - When and How Presented - By
> Pleading or Motion - Motion for Judgment on the Pleadings.
> . . .
> (b) How Presented.  Every defense, in law or fact, to a claim for relief
> in any pleading, . . . shall be asserted in the responsive pleading
> thereto if one is required, except that the following defenses may at
> the option of the pleader be made by motion: (1) lack of jurisdiction
> over the subject matter, . . . (6) failure to state a claim upon which
> relief can be granted

What follows will discuss the deficiencies in pleading in the Complaint.

Defendants contend, however, that these defects signal far more critical failures,

that is, that Plaintiff has not made out a RICO Claim because it cannot, because

there are no facts which can support its claims.  This purported RICO Claim, like

so many others, is a bare and unsupportable attempt to lift an ordinary commercial

dispute into a Federal Court treble damage claim.  In addition, the Higgins

Defendants and the Plaintiff have been involved in a New York State Court

litigation which has been proceeding since September, 2005 and which is now

ready for trial and on that Court's trial calendar.  This new RICO action is a

transparent attempt to deflect that action and to avoid its trial

**The Motion to Dismiss the RICO Claims**.

Title 18 U.S.C. § 1962(c), the provision on which Plaintiff relies in all its

RICO claims, reads as follows:

> § 1962. Prohibited Activities.
>
> . . .
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Title 18 U.S.C. § 1964 (c) reads as follows in pertinent part:

> (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, . . .

The decisional law on the subject of the requirements to plead and to prove

a RICO claim of this kind is myriad.  Many treatises and law review articles and

books have been devoted to the topic and despite the variances in results reached

on certain of the topics, certain things are clear.  A RICO claim requires pleading

-4-

and proof of an "enterprise", a "pattern", "racketeering" activity, "predicate acts" and injury to business or property of the Plaintiff. Indeed, in this field, injury is not only an element of the claim, it is required for the Plaintiff to enjoy "standing" to bring the action. The difficulties come in defining and locating the parameters of each of these terms.

Under Rule 12, the "well pleaded" allegations of the complaint are taken as true by the Court. Those not "well pleaded" are not entitled to any such deference. *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Conley v. Gibson*, 355 U.S. 41, 78 S. ct. 99, 2 L. Ed. 2d 80 (1957). Accordingly, while the Higgins Defendants will deny all the allegations of wrongful conduct if they are required to plead, we will not, in this motion, contradict or challenge the assertions of the Complaint except in one instance, that of our motion challenging the Court's diversity jurisdiction. No admission of any allegations is intended nor any waiver of any defense.

**Particularity.**

The Higgins Defendants' Motion to Dismiss the RICO claims is partly based on the wholesale lack of particularity of the Plaintiff's pleading. While Rule 9(b) F.R.Civ.P. does not directly apply to RICO claims, it certainly applies to any fraud or similar claim which forms a predicate act or is one of the acts giving rise

to any injury. "Under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity, a requirement justified by the 'threat of treble damages and injury to reputation'". *Farlow v. Peat, Marwick, Mitchell & Co*, 956 F. 2d 982 (10th Cir. 1992). "[T]he complaint must, at a minimum, describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud'". *Picard Chemical, Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101 (W.D. Mich. 1996). The complaint must "state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations". **It must also particularize each defendant's alleged participation in the fraud**. *DiVittorio v. Equidyne Extractive Indus., Inc.* 822 F. 2d 1242 (2d Cir 1987). *Stern v. Leucadia National Corp.*, 844 F. 2d 997 , *cert. denied*, 488 U.S. 852 (1988). Apart from Rule 9(b), even simple notice pleading requires that Defendants be informed about what they are charged with having done so they can respond to the pleading.

Rule 9(b) reads as follows in pertinent part::

Rule 9. Pleading Special Matters.

(b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

The briefest review of the Complaint in this action reveals that, while there are many paragraphs with many allegations, virtually none of them tell us with any precision whatsoever what the Higginses or any of them did, when they did it, how they did it, how they became associated with the "enterprise", what their individual roles in the "enterprise" were, what the "predicate acts" were or when they took place or what role each had in the alleged predicate acts. Of particular note is the absence of any dates which might advise the Higgins Defendants of when it is they were supposed to have committed the acts alleged. In the entire 17 page, 86 paragraph complaint, there is not one specific date including day, or even month, and year. Paragraphs, 11, 14, 19, 23, 30, 50 and 51 each allege that something happened "in or about" a certain year, which references go back as far as 1992. Paragraphs 55, 60, 62, 63, 64, 65 and 66 allege that the wrongful conduct was committed during the period 2001 to 2004.

As will be seen below, all such times and ranges of time include periods prior to the Statute of Limitations cutoff of four years, July 23, 2003. If we cannot tell when an act or an injury is alleged to have occurred, we cannot tell whether or not it is time barred. Even the first claimed predicate act alleged, a purported threat to the life of an alleged principal of Plaintiff, is stated only as having been made "in or about 2004, and for a continuous period thereafter" (¶ 50). Surely the

victim of a death threat can recall vividly that threat and when it occurred. This vague description might even include some time in 2003 and possibly a date beyond the statute. What does "and for a continuous period thereafter" mean in the context of a claimed death threat? Does it mean there was more than one? Does it mean that the Defendants are said to have threatened him continuously, every day, every hour? What was the role of each of the Higgins Defendants in the "death threat" or in each of the numerous death threats if that is what is being alleged? The Higginses are not said to have personally delivered any threat but only to have been "in concert" with Layani who is alleged to have done so.

*Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164 (1994). What is it they did that placed them in concert? Did they actively direct or assist him in some way or are they said only to have known what he was allegedly doing? Before making an allegation of participation in the kind of violent criminal behavior Plaintiff attempts here, surely the details of the role of each of the Higginses ought to have been thoroughly examined. This shocking, scandalous and libelous allegation contains none of the detail it would if it had any evidence to support it other than the flimsiest guesswork. Even the double hearsay letter of Leyla Anavian, improperly attached to the Complaint, which talks about death threats, only speaks, albeit falsely, of death threats which she says that Defendant

Marcial Layani told her had been made **against him**, **not** against Jozef Anavian. She also says that Layani (she says "he himself", she does not say the Higginses) was threatening "us" whoever that is. The translated Brazilian declaration of Jozef Anavian, also improperly annexed, makes no mention of such threats. If there were any cogent detailed allegation of such threats by the Higginses or any of them, they were required to be alleged, not vaguely suggested as here. The same paragraph 50 demonstrates another defect, that of not defining the role of each Defendant. All that is said is that "In or about 2004, and for a continuous period thereafter, Layani, acting in concert with, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins . . . ". This is wholly inadequate to notify any Defendant of what he is charged with.

Certainly within Rule 9(b) are all the remaining RICO allegations which purport to allege mail fraud, wire fraud and common law misrepresentation (Second, Third and Fourth Claims for Relief.) Fraud allegations are, by the words of the Rule, at the center of the requirements of Rule 9(b). "Who, when, where, what" must be specified. The fact that they are alleged as predicate acts of a RICO claim rather than stand alone claims for relief does not change this. They are not specified. See cases cited above.

What are the specific acts complained of? Paragraph 55 of the Complaint

says that Layani, again "acting in concert" with the Higginses used the mails to transmit "doctored" invoices to G.F. Higgins. Is Higgins, as the buyer of the goods in question said to have participated in preparing invoices to be sent by Procapui to itself? Examples of these invoices are attached to the Complaint - dated July 21, 2002, barred, of course, as claims under the Statute of Limitations for over a year. They are on the stationery of the Plaintiff, prepared by the Plaintiff, signed by Layani and sent to the Higgins company. **They were mailed, if at all, by Plaintiff in Brazil, not by Defendants.** None of these steps were taken by the Higginses nor are they alleged to have been. Where then is the mail fraud? Any falsity or inaccuracy is the act of the Plaintiff, Procapui. Even if Defendant were, *arguendo*, involved in some conspiracy to alter the invoices, Procapui, the preparer of the invoices could not have been deceived by documents which it, itself, prepared. The invoices bear the apparent signature of Defendant Layani who, according to the documents annexed to the Complaint, was running Procapui at the time. How then was Procapui fooled or deceived by anything on those invoices? They are Procapui's invoices. There can be no falsehood and certainly no reliance by Procapui on any claimed falsehood.

Beyond this fatal difficulty, there is no specification of what is wrong with the invoices or how Procapui was harmed by them. There is nothing in the

Complaint which will tell the Defendants or the Court what they are said to have done which made the invoices false. There is nothing which specifies how they were false and whether the Higgins Defendants knew they were false. There is nothing which tells the Court how each Defendant contributed to the falsehoods or omissions.

Similar defects affect the wire fraud allegations, ¶¶ 62-66. The allegation apparently, is that the Defendants, including the Higginses, defrauded Procapui by sending wire transfers of money to Procapui. Note that Higgins company *did not obtain money* through fraud under this allegation. It allegedly committed fraud *by sending money* to Procapui. In ¶ 63, the Plaintiff alleges that some money wire transferred was sent to third parties. There are no specifics of time, place, to whom or other essential facts. If Plaintiff and its counsel were candid, they would have added the allegation, well known to them, that every wire transfer sent by the Higginses was directed to the receiving bank and to the particular account directed by Procapui. While the Court cannot look beyond the Complaint on this Motion, it is certainly fair to say that there is no allegation in the Complaint stating how the Higginses came to send the wire transfers to the banks and accounts they did. Paragraphs 65 and 66 of the Complaint introduce a new variant when they allege, again without specificity, that these wire transfers operated as a fraud on the

Higgins's bank and on the U.S. Customs Service.  Although scurrilous and false, these allegations add nothing to the claims of Plaintiff.

Again, the wire fraud allegations suffer from the same lack of particularity which infects the mail fraud claims.  The "who, when, where, and what" are all absent.  Unlike the mail fraud charge where at least a couple of invoices were attached, the wire fraud charge describes no particular transaction at all.  There is no allegation of scienter or of reliance.  The allegations confirm that there could be no reliance by Procapui.  Is Plaintiff really alleging that, over a four year period, Higgins company sent the wrong amount of money to Procapui or sent it to the wrong party and that Procapui nonetheless continued to do business with Higgins and never noticed this practice.  No reasonable reliance could conceivably have been placed by Procapui.  Indeed, the sworn statement of Sergio Sidou annexed to the Complaint, states that he was employed by Procapui as an accountant and that, in 2003, he noticed "irregularities" regarding the 2002 figures and alerted Procapui management to them.  The declaration of Leyla Anavian annexed to the Complaint says that, in March 2003, they discovered certain problems with the way the company was being run.  These statements absolutely destroy any possibility of reliance by Procapui on anything, certainly on anything done or not done by the Higgins Defendants.

As stated above, Plaintiff knows full well that every wire transfer was sent in accordance with Procapui's express instructions. While the Court may not be able to use such information in determining this Motion, it can consider the absence of allegations on this subject in its determinations.

The Fourth claim for common law fraud has no additional factual allegations attributable to it alone in the Complaint. As set forth above, it is subject to the same particularity rules as the mail fraud and wire fraud counts.

In the event the Court determines to deny the Motion to dismiss the RICO claims for pleading defects, the Higgins Defendants have, alternatively, moved for a More Definite Statement under Rule 12 (e) F.R.Civ.P. In the present state of the pleading, they are unable to answer the Complaint without considerably more detail. The Court is, however, requested to dismiss these wholly defective claims outright.

**Enterprise.**

The RICO Claims in the Complaint are required to define, *inter alia*, what is the "enterprise" described in 18 U.S.C. § 1962(b). The term "enterprise" is defined in Section 1961(4) as follows:

> (4) "enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

As set forth in § 1962(b), quoted above, proof is required that a Defendant or "person" be found to have "through a pattern of racketeering activity . . . to acquire or maintain directly or indirectly, any interest in or control of any enterprise that is engaged in . . . Interstate commerce.

Paragraph 45 of the Complaint defines the "enterprise" alleged as consisting of "... defendant G.F. Higgins, together with defendants and co-racketeers Layani, G.F. Higgins, Gerald Higgins, Thomas Higgins, Robert Higgins, Rubin and Blackman and others associated with organized crime...". The "others" are nowhere described in the Complaint and this is clearly a 'form book' allegation. The "enterprise" alleged thus consists of precisely the same persons who are the Defendants in the action. All Defendants are in the "enterprise" and no one else is. The Complaint nowhere describes the duration of the "enterprise". It does not allege what the role of each participant was or what his position was within the enterprise. It does not describe what its purpose or function were other than to perform the acts complained of in interstate commerce and in a pattern. There is no allegation of how each person came to join the "enterprise" or when or by what acts or when. There is no discussion of the continuity of the claimed "enterprise" apart from the allegations that certain acts were committed between 2001 and 2004 in ¶¶ 55 to 66. The predicate acts, the pattern and the enterprise are all

different concepts under RICO and, while there is often overlap, a pleading must describe each in sufficient detail to allow the Court to judge its presence or absence. *U.S. v. Turkette*, 452 U.S. 576 (1981); *U.S. v. Coonan*, 938 F. 2d 1553 (2d Cir. 1991); *U.S. v. Indelicato*, 865 F. 1370 (2d Cir), *cert. denied*, 491 U.S. 907 (1989).

Pattern Of Racketeering Activity.

Section 1961(5) reads as follows:

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [1970] and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity.

As with many RICO issues, the Courts have struggled with the issue of what constitutes a pattern and how it differs from, for example the enterprise.

The Complaint here alleges acts that are within the statutory definition of "racketeering activity" but all that means is that we have allegations of certain non-specific "predicate acts". Since the Complaint is devoid of the necessary details, we do not know whether these acts constitute a "pattern" or not. Acts are alleged in the Complaint which go back to 1992 and as recently as 2004, although we are not told months or dates. Clearly, acts that remote from each other cannot be a "pattern". They do not even fit within the ten year limit of 1961(5). We

cannot tell which, if any, of these acts are within the Statute of Limitations. Some of the acts are alleged to have been committed by persons who are not even Defendants. The acts which are alleged to have occurred within a reasonable time frame, 2001 to 2004, are, due to the lack of particularity, unable to be properly evaluated as to whether or not they form a pattern.

**Predicate Acts.**

As stated above, the predicate acts which Plaintiff attempts to assert are extortion, mail fraud and wire fraud. Each of these is, of course, among the enumerated acts in § 1961 (1). For the reasons stated above, the allegations concerning these acts are insufficiently pled. What role, for example, did each of the Higgins Defendants have in any claimed act of "extortion" as to which they are merely said to have "acted in concert". The mail fraud and wire fraud allegations lack all essential particularity and merely pleading that they occurred many times over a course of years does not change this.

**Injury and Standing.**

In every civil damage case, a plaintiff must allege compensable damages arising from the conduct of the defendant. In RICO civil claims under § 1964 (c), the need to allege compensable damages goes to a further issue as well, that of standing. Under the statute, only a ". . . person injured in his business or property

by reason of a violation. . ." may even bring suit.  The wrongful conduct must

proximately cause the injury.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)

## POINT II

## PLAINTIFF'S RICO CLAIMS ARE, AT LEAST IN PART, BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

The RICO statute nowhere contains an internal Statute of Limitations.  In

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 107 S. Ct.

2759, 97 L. Ed. 2d 121 (1987) the Supreme Court held that the Clayton Act four

year statute was the closest analogous statute and applied it to RICO claims.  The

Court avoided dealing with the accrual issue, the issue of when the period begins

to run.  In *Rotella v. Wood*, 528 U.S. 549, 120 S. Ct. 1075, 145 L.Ed. 2d 1047

(2000), the Court remedied this, at least in part, by rejecting various alternative

theories and adopting the "injury discovery" alternative.  Under this approach, the

statute of limitations begins to run with the discovery by the plaintiff of the fact

that he has been injured.  That "discovery" is, of course an actual or "through the

exercise of reasonable diligence should have discovered" standard.  In *Rotella*, the

Court expressly rejected the "pattern discovery" rule applied by some lower courts

which had held that the Plaintiff must know, not only that he had been injured, but

that the injury occurred as part of a pattern of wrongdoing.  The Court determined

that, once there is an injury discovered, it commences an obligation on the

Plaintiff's part to commence his investigation as to the cause and the facts,

including whether the wrong causing the injury is part of a pattern.

In this case, we, of course, do not have sufficient allegations to tell what

each of Plaintiff's claimed injuries are, much less when they occurred and when

they were or should have been discovered.  Since Procapui itself generated the

allegedly false invoices, it presumably "discovered" the wrongdoing instantly.

In *Bankers Trust Co. v. Rhoades*, 859 F. 2d 1096 (2d Cir. 1988), *cert.*

*denied*, 490 U.S. 1007 (1989), the Second Circuit held that each injury in a series

creates a new cause of action and starts its own limitations period running.  Thus,

any injury of loss to Plaintiff in this case, filed July 24, 2007, which injury is

alleged to have occurred on or prior to July 23, 2003 is barred by the statute of

limitations.

Of course, due to the lack of particularity of Plaintiff's complaint, we do not

know if any of Plaintiff's injuries are barred or if they all are.   We ask in this

Motion that, in the event the Court has not previously dismissed the case, it enter

an Order dismissing all claims for injuries occurring on or before July 23, 2003.

The Court is also asked to consider the facts, described above, that the

declarations of Layla Anavian and Sergio Sidou annexed to the Complaint clearly

demonstrate that, as early as March, 2003, the principals of Procapui were all aware of the conduct they now allege as wrongful.  Since that is so, they can have placed no reliance on any statements, omissions or actions of the Higgins Defendants thereafter and so all wire fraud and mail fraud claims thereafter are dismissable.  They either fail to state a claim or they have been waived or condoned by Plaintiff.  Accordingly, the only conceivable claims are those barred by the Statute of Limitations.

## POINT III

### THERE IS NO SUBJECT MATTER JURISDICTION OVER THE STATE LAW CLAIM IF THE RICO CLAIM IS DISMISSED

The Complaint alleges Federal question jurisdiction over the RICO claims and diversity jurisdiction over the State law claims.  If the RICO claims survive, there will be Federal question jurisdiction and the state law claim would come under pendent jurisdiction.  If, however, the Court dismisses the RICO claims, as we contend it should, there will be no pendent jurisdiction as this case is in its earliest stages and the Court has no vested interest in determining the remaining state law claims.  This case will then be unlike those cases where, only after discovery and trial are the Federal claims found wanting and the Federal Court then finishes what it has begun by continuing pendent or supplemental jurisdiction

over the remaining claims.  This Motion, made at the very outset, should dispose of any such factors.

Filed herewith is a declaration of Defendant Marcial Gerald Layani attesting to the fact that he is a U.S. citizen who no longer has his residence or domicile in the United States and that he is a permanent resident of Brazil.  He has established his legal residence there in 2001 and pays taxes there.  A U.S. citizen not domiciled in any state of the United States cannot be a party to a diversity action. *Brady v. Brown*, 51 F. 3d 810 (9th Cir. 1995).  Here, the Plaintiff is a Brazilian corporation and the other Defendants are U.S. citizens.  The Complaint alleges that Layani is a resident of New York.  Layani's declaration swears that he has not been to the U.S. since 2003 and has left his former residence here.  Layani is not diverse from Procapui and is not within any provision of the diversity statute, 28 U.S.C. § 1332.

Layani's status as not diverse also destroys diversity jurisdiction for all defendants, including the Higginses.  For diversity jurisdiction to obtain, there must be complete diversity for all parties.  Each Plaintiff must be diverse from each Defendant.  *Herrick Co., Inc. v. SCS Communications, Inc.,* 251 F. 3d 315 (2d Cir. 2001).

## POINT IV

**THIS COURT IS REQUESTED TO STAY THIS ACTION OR TO ABSTAIN FROM DETERMINING THE ACTION PENDING THE DETERMINATION OF THE STATE COURT ACTION**

There is presently pending before the Supreme Court, New York County, an action entitled G.F. Higgins, Inc. v. Procapui Produtores de Camaroes de Icapui Ltda and Jozef Anavian, New York County Clerk Index No. 603300/05 of which the Court is respectfully requested to take judicial notice.  That action was commenced in September, 2005, nearly two years ago.  The action was commenced by Higgins seeking to collect approximately $1,100,000 for Procapui and to enforce a guaranty of a portion of Procapui's obligation against Anavian which guaranty was secured by a mortgage on real estate owned by Anavian in New York State.  After motion practice and extensive discovery and with none of the outrageous claims of illegality as made in this RICO action, that case has been placed on the Supreme Court trial calendar by Plaintiff pursuant to a May 9, 2007 Order of the Supreme Court directing the completion of discovery and the filing of a Note of Issue by August 1, 2007.

While Procapui's counsel stated his intention to bring a RICO claim, nothing was done.  Discovery continued in the state court and was completed.  Higgins's counsel served the Note of Issue on July 25, 2007 as required.

-21-

Procapui's counsel filed this action on July 24, 2007.

The issues in the two cases all relate to a series of business dealings between the parties whereby Higgins purchased shrimp and lobster from Procapui and imported it into the U.S.  In addition, Higgins loaned money to Procapui to assist it in financing its business to make it a better and more dependable supplier of fish.  Large numbers of documents have been provided by Higgins to Procapui and a far lesser number in the other direction.  The deposition testimony of the principals have been taken and the Supreme Court action is ready for trial.

At the last moment, in what can readily be interpreted as an effort to delay the inevitable, Procapui brings this contrived RICO action in Federal Court.  They attempt to allege that a criminal conspiracy took place between their principal, Marcial Layani, and the Higginses and others.

This Court should be aware that, in the State Court action, Procapui has made no counterclaim and has never raised any of these alleged "crimes" as a defense.  They have said that they believe that Higgins owes them money but have made no counterclaim or sought any relief respecting that supposed claim.

When the action was commenced in 2005,  Procapui could have removed the state court action to Federal Court, after making a counterclaim similar to the claims attempted here, on Federal jurisdiction grounds.  They chose not to do so.

The time to do so under 28 U.S.C. § 1446(b) has long expired.

In the event the Court declines to dismiss this action, the Higgins parties request the Court to stay the Federal Court action pending the determination of the State Court action under the abstention or deferral principles in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). This course, that of deferral to the pending state court action, was followed in *Coopers & Lybrand v. Sun-Diamond Growers of CA,* 912 F. 2d 1135 (9th Cir. 1990) in a case where, as here, the Federal Court case included a RICO claim and the state court case did not.

Plaintiff Procapui, in bringing this action just as the state court action is placed on the trial calendar is engaged in a process of manipulating the processes of both courts. If it were to have attempted instead to approach the state court at this late stage and try to amend its pleadings and bring in new parties and new claims, the state court would have had little patience with such a move. Higgins would be severely prejudiced by such an attempted amendment since it would have completed its discovery based on the pleadings filed. The Supreme Court would have been unlikely to grant leave to file such an amendment. The Federal Court should not condone it either.

## CONCLUSION

The Higgins Defendants, for all the reasons set forth above, respectfully request the Court to dismiss this action or, failing that, to grant the other relief requested, including the stay of proceedings.

Dated: New York, NY
        August 16, 2007

Yours, etc.
John J. Phelan, III, P.C.


By/S/_____
        John J. Phelan, III(JP8632)
    Attorney for the Higgins Defendants
1285 Avenue of the Americas
    Suite 3500
New York, NY 10019
(212) 315-3082
Email: jphelaniii@att.net