twenty cents) in exports already performed. Mr. Marcial Gerald Layani brought the documents into question with the exception of the contract signed with the company G. F. Higgins, which he confirmed the existence and validity of.

In response to the petition set forth by Mr. Marcial Gerald Layani's attorney the commission unanimously decided to send an official letter (sheets 387 to 389) to inform the Federal Public Ministry to no longer continue in the presuppositions necessary to the previously formulated request in order to decree a preventative custody, primarily in virtue of the new statements of Dr. Atílio Paracampos.

The commission unanimously decided to approve the breakage of bank confidentiality of the company Propcapuí and of Mr. Marcial Gerald Layani, sending official requests to the Brazilian Central Bank. Until the writing of the present report, this information has not been received, since, when it arrived, it was sent in confidentiality to the Public Ministry, since it is fundamental to nullify the investigation.

In response to the previously formulated Representation, the PIC received the official document nº 1172/06/Secrim/PR/CE (sheet 390), from the Office of the Attorney General of the State of Ceará, informing of the filing of the Administrative Criminal Proceedings nº 1.15.000.000795/2006-71, with a request sent to the Federal Police for the launching of a Police Investigation.

EXTERMINATION PIC
PARTIAL REPORT
DENUNCIATION Nº. 4
PROCAPUÍ CASE

In addition to this significant change, the debates that occurred during the witness questioning brought some new facts to the attention of the Commission, especially the declarations and the documents attached by Dr. Alberto Veras Carapeba. Dr. Carapeba gathered documents (sheets 314 to 386) that proves payments from abroad performed by Jozef Anavian to the credit of the company Procapuí and a contract that proves the taking of a loan from its principal buyer, the company G.F. Higgins, that came to a total value of around two and a half million dollars, in addition to a document from the Brazilian Central Bank (sheet 313) giving notice of a default on payment of US$ 1,809,270.20 (one million eight hundred and nine thousand two hundred and seventy dollars and

**EXTERMINATION PIC (Parliamentary Inquiry Commission)**
**PARTIAL REPORT**
**DENUNCIATION Nº. 4**
**PROCAPUÍ CASE**

## REPORT

During the 4th Ordinary Session of the Parliamentary Inquiry Commission, held on the 18th day of April of 2006, the Reporting Judge was represented by attorney Atílio Braga de Paracampos, who informed the court that he was running the risk of imminent death, and that the threats were a result of problems related to the foreign businessmen exporting shrimp and lobster.

Keeping in mind that the objective of the PIC had been amended on the 7th of April of 2006, including *crimes carried out against businessmen in the lobster fishery activity* into the scope of the investigation, the Commission understood there to be a connection to the denunciation presented, and decided in favour of the hearsay of the attorney, meeting the requirement of the Reporting Judge.

His statements (sheets 455 to 475) brought to the Commission's attention the possible committal of crimes by the associate manager of the company PROCAPUÍ - Shrimp Producers of Icapuí Ltd., the American citizen Marcial Gerald Layani, known as Mike Layani, and by his attorney Dr. Eunice Leal de Oliveira.

1

**EXTERMINATION PIC (Parliamentary Inquiry Commission)**
**PARTIAL REPORT**
**DENUNCIATION Nº. 4**
**PROCAPUÍ CASE**

of shrimp collected per farm was drastically less than expected. However, as was customary, the group would always choose a spy messenger, who in this case was an engineer of equatorial fishing, who was even shot a few times, but escaped. He also learned that Mike Layani took part of the lobster that he bought in Sao Paolo, placed drugs within them and also kept part of the container for himself, selling it separately, all this by way of information that had come to his knowledge. According to the investigation, Mike then started to harm people that had a relationship with the Bolivian drug mafia, and that they had two, three or four people, it is not known for certain, here in Brazil with the order from organized crime from there to eliminate Mike Layani and whoever dealt with him, and that they were not to return to Bolivia without having fulfilled that mission. He also stated that he was aware of the fact that the American businessman donated one million reals to the campaign of Mister José Airton Cirilo, and because of this would be receiving favorable benefits from the state system. The businessman would have been arrested in Bahia for the possession of several Kg of cocaine and using the influence of the Minister of Justice would have been set free within half an hour. He also said that three weeks ago, Mr. Mike Layani was the victim of a kidnapping and beating in Recife, from which he received serious wounds that almost killed him, and that he presumes had been the actions of the aforementioned Bolivians.

When he was asked to specify the reason for which the group would desire his death, the declarant was evasive, but ended up making two possibilities apparent in his statement: the interests of the group through the project that he had paralyzed, or the suspicion of his participation in the in the attempt on the life of Mike Layani.

Although the statements of the attorney Atílio Paracampos had contained many omissions, the narrated facts could not be withheld from being immediately

4

**EXTERMINATION PIC (Parliamentary Inquiry Commission)**
**PARTIAL REPORT**
**DENUNCIATION Nº. 4**
**PROCAPUÍ CASE**

in the Brazilian Barristers Association registry, amongst other irregularities, would render advisory services in a procedure that was being processed in the 20th district, and that for this would receive R$ 150,000.00 (one hundred and fifty thousand reals) in advance, guaranteeing the result of the judgment, and also that he would receive some money from the defendant, the company Icapel, having the rights to 30% of the sum amount, that would be approximately R$ 7,000,000.00 (seven million reals). In addition to this, there are two receipts in the amount of R$ 100,000.00 (one hundred thousand reals) each, where the attorney Atílio Paracampos pays off the amounts relative to the drawing up of two investment projects, one destined to BNDES bank (sheet 155) and the other to SUDENE bank (sheet 156), that has been closed for more than ten years. According to the declarant, there are also problems referring to the project developed for BNB, such as the farce created in relation to the alleged enterprise partners, that in reality were former Procapuí employees of poor and humble origins, and also regarding one of the territories given as security, supplied by the Paracampos office, that was the same one used to secure loans taken by Duda Mendonça and Marcos Valério. He says that it is not possible to measure the true damages caused by Paracampos Consultoria, but that if they were ascertained they would be the objects of compensation suits. He said that this is all he knows of Paracampos. He then goes on to describe the history of the arrival of the group of foreigners in Brazil. According to him Mr. Jozef Anavian decided to invest in Brazil because he dreamt of living in a tropical paradise. Getting together with his family, they legally sent to Brazil, through the Central Bank, more or less US$ 7,000,000.00 (seven million dollars). The said amount was designated for the purchase of an area for the installation of a farm for the production of shrimp in Icapuí, purchased and registered in his name. The company Procapuí was established, which would be the administrator of the families' investments in the country. This company, that was managed by Mike Layani, Jozef's nephew, hired the attorney Eunice Leal de Oliveira as a judiciary

**EXTERMINATION PIC (Parliamentary Inquiry Commission)**
**PARTIAL REPORT**
**DENUNCIATION Nº. 4**
**PROCAPUÍ CASE**

counselor. It was only afterwards that Dr. Eunice became the attorney of the company with unlimited powers with respect to the administration of the entire operational part of the company, when Mike bestowed unrestricted powers of attorney, which had been given him by his uncle (sheets 83 to 88). She became the administrator of the company, as is proven by several documents, such as, promise of return of containers (sheet 98), financial activities (sheets 84 to 89), Euro operations (sheet 95), etc. The company had its headquarters at the same address as the attorney's office, as is displayed on Mr. Mike Layani's own visitor's card (sheet 23). He said that the attorney also became member, attorney and retainer of full power (sheet 89) over the company called Iglomar Icapuí Industrial, a refrigerator bought together with Mike for the benefit and export of lobster and shrimp, that also had its headquarters at the address of the attorney's office, accordingly proven in the partnership agreement (sheets 92 to 94). He states that afterwards she also participated and received all the power of attorney necessary from Mr. Mike Layani for another company, named Interbrás Global Comércio. He alleges that throughout this entire period she remained as Mr. Jozef's attorney, receiving payment for her services (sheets 136 to 142). Also attached is the documentation of the protests against the company Procapuí (sheets 31 to 33) and Mr. Mike Layani (sheets 34 and 35), as well as a report of the procedures in which the businessman and Dr. Eunice are involved (sheets 36 to 65). He reported that there had been a tip of a crime against the group that, led by Marcial Gerald Layani, tried to take over the possessions of Mr. Jozef, including as an attachment the proper Report of the Police Inquiry (sheets 125 to 132). Several different situations led them to this understanding, from the duplicating of a house purchase (sheets 27 and 28), forgery of Power of Attorney, undue transference and appropriation of partnership stocks, fraud in the projects for the attainment of resources, etc., eventually culminating in the request for the preventive detention of Mike Layani (sheets 71 to 73). It should also be clear that currently all the companies are closed, there remains only

**EXTERMINATION PIC (Parliamentary Inquiry Commission)**
**PARTIAL REPORT**
**DENUNCIATION Nº. 4**
**PROCAPUÍ CASE**

debts, none of them paid the taxes owed, which amount to, calculating only the contributions in arrears, at least R$ 10,000,000.00 (ten million reals). He said that he has received information, but that he cannot confirm, that the company Procapuí was part of a scheme for the illegal export of lobster. He said that there is information in the Central Bank of more than US$ 1,500,000.00 (one million and five hundred thousand dollars) unresolved, from the exportations processed whose values have not entered the country. Add to that the fact there are very strong indications that the values exported by this company between 2001 and 2003 were not legally declared. The values would come to a number somewhere between R$ 23,000,000.00 (twenty-three million reals) and R$ 27,000,000.00 (twenty-seven million reals). He declares that the American Mike Layani moved to Santos, where he currently works in the company Ita Fish, where he set up an operation similar to this one, purchasing irregularly sized lobster here, that he would prepare there and export. In possession of the powers of attorney that he created, without the knowledge of the owners, a company called Diphas, as it is recognized in Terms of Public Declaration, that was recorded in the Office of the Notary Public for the protection of Jozef, Mário and others (sheets 27 and 28). When questioned about Mr. Atílio's statements that the group had some involvement with murders and drug trafficking, he stated that he considered such allegations fantastical, and was not in possession of any information about them. Regarding the alleged support of the political campaign of Mr. José Airton Cirilo, several Procapuí employees informed him of this, being notorious that Mr. Mike Layani spent large sums of money on several different candidates. Upon being questioned about which candidates they were, he said that they would be the same candidates mentioned on the site Em Off, a printed copy of that page on the Internet is attached (sheets 19 to 22). He states that know knows that two attorneys that worked together in the office of Atílio Paracampos are being sued for forgery of signatures in legal documents. He concluded by placing himself at

8

**EXTERMINATION PIC (Parliamentary Inquiry Commission)**
**PARTIAL REPORT**
**DENUNCIATION N°. 4**
**PROCAPUÍ CASE**

communicated to the proper authorities, especially being guardians of the physical integrity and safety and of the life of the respondent. In such a way, the Commission kept in touch, through the issuing of Official statements and telephone communication, with the Secretary of Public Security, the Secretary of Justice and the Superintendence of the Federal Police, in order to obtain police protection, which was promptly provided. In addition to this he sent, at the end of the Session, a team of advisors to the airport, with the intention of alerting the Federal Police and the airport authorities of the possible arrival of the gunmen to our capital. However, in spite of all of our greatest efforts, the aforementioned suspects were not located, according to Document n° 015/2006 NTFI/SR/DPF/CE (sheet 03).

In order to deepen the investigations, the Commission unanimously decided to hear Dr. Alberto Veras Carapeba, attorney of Mr. Jozef Anavian, and of Dr. Eunice Leal de Oliveira, former attorney for Mr. Mike Layani and of the company Procapuí. Both were heard during the session held on the 26th day of April of the current year (sheets 476 to 514), and the procedure documents are attached.

**Alberto Veras Carapeba declared** that Mrs. Leyla Anavian, mother of Mr. Marcial Gerald Layani, known as Mike Layani, sought him out in July of 2005. This lady alleged to be having a very serious problem with an enterprise that her family had set up in Brazil, and suspected that a large-scale fraud was being orchestrated through the company. The declarant said that when he came into contact with the first documents coming from the referenced company, he began to notice a great number of irregularities, some of them even startling. Amongst the irregularities there was the presence of the details of a service-rendering contract (sheets 158 and 159), signed between Paracampos Consultoria and Mr. Jozef Anavian, according to which the signature of the consultant, at least as it is

**EXTERMINATION PIC (Parliamentary Inquiry Commission)**
**PARTIAL REPORT**
**DENUNCIATION Nº. 4**
**PROCAPUÍ CASE**

## REPORT

During the 4th Ordinary Session of the Parliamentary Inquiry Commission, held on the 18th day of April of 2006, the Reporting Judge was represented by attorney Atílio Braga de Paracampos, who informed the court that he was running the risk of imminent death, and that the threats were a result of problems related to the foreign businessmen exporting shrimp and lobster.

Keeping in mind that the objective of the PIC had been amended on the 7th of April of 2006, including *crimes carried out against businessmen in the lobster fishery activity* into the scope of the investigation, the Commission understood there to be a connection to the denunciation presented, and decided in favour of the hearsay of the attorney, meeting the requirement of the Reporting Judge.

His statements (sheets 455 to 475) brought to the Commission's attention the possible committal of crimes by the associate manager of the company PROCAPUÍ - Shrimp Producers of Icapuí Ltd., the American citizen Marcial Gerald Layani, known as Mike Layani, and by his attorney Dr. Eunice Leal de Oliveira.

**Atílio Braga de Paracampos, in his statements,** confirmed that he had his net worth damaged and that his physical safety was threatened by gunmen, who had made many calls to his cell phone and to that of his security personnel, having set the time to die at 10:00 o'clock PM of that day. The supposed gunmen would be coming from Pernambuco, and were to be travelling to Fortaleza to kill him. Their names were given to the Commission: They would be Rogério Coutinho Fernandes, Federal Policeman decommissioned for banditry, Antônio Queiroz de Lima, Civil Police of Pernambuco, Aristides Ribeiro de Lima, Military

EXTERMINATION PIC (Parliamentary Inquiry Commission)
PARTIAL REPORT
DENUNCIATION N°. 4
PROCAPUÍ CASE

Police Captain From Pernamabuco, Francisco Coutinho Bezerra, Military Police Major from Pernambuco, Antônio Coutinho dos Santos Lima, prison guard, and Fernando Coutinho de Lima, attorney. He is said to have attained this information through hiring the services of a Private Investigator. He confirms that was life is being threatened as a result of his dealing with a criminal organization. This relationship began after having been represented by attorney Eunice Leal de Oliveira, in order to deal with judicial pendencies arising from an incident involving some American that had some problems in Icapuí. Since good results were obtained in all cases, respect of the businessman Mike Layani was being earned, getting to the point of, after a "false breakage" of ties between the American and Eunice Leal, she was invited to take over all defence cases. He said that during the time that she represented the foreigner, the company had a market debt of 17.5 million reals, and that he was able to stabilize the situation. He made it clear that as time passed he discovered that the true owner of the assets was the American citizen Jozef Anavian, the uncle of Mike Layani. However, when Jozef Anavian arrived in Brazil, he presented, via Mike, a proposal in which he elaborated a project to get financing from BNB, for the establishment of a new company in the area of shrimp farming. In this project a company within the group would lease the Farm belonging to the company Procapuí, according to what was informed by Mike and by the attorney Eunice Leal, totally with the scope of the Law and legality, totally adequate. It turned out that when the project was in its final stages, during a meeting in Passaré, it became known that there had been an attempt to fraud BNB, putting different people as leasers than those listed in the project. The project was not approved and they said that the project would only be presented when the problems were fixed. He alleged that it was from that point that the problems between the Americans and the attorney Eunice Leal began. He was then informed the following by his accountant Sérgio Sidou, who rendered services to the group: "no-way man, this business of fighting amongst themselves is common practice,

2

**EXTERMINATION PIC (Parliamentary Inquiry Commission)**
**PARTIAL REPORT**
**DENUNCIATION Nº. 4**
**PROCAPUÍ CASE**

they argue for show, for the lobster companies, and even because they have strong competitors like Expedito and the companies in Acaraú and afterwards in private are satisfied and planning another game plan in order to pull off another scam". He said that at this time Mr. Mike Layani moved to Sao Paulo, keeping in touch by telephone periodically, making it known that he intended to sue his uncle. However, after a few months he received a letter of resignation, being informed that she [Eunice Leal] would not represent any one of them, nor any of the other companies of the group. In about May of 2005, he said that an attorney had represented him from Sao Paulo that asked for the project in the name of the company, in order to give continuance. He clarified that he informed that he could deliver the project, but only after communicating to all the proper authorities the reason why his company, Paracampos Consultoria, stopped its proceedings, by which it would exonerate himself from any criminal or civil responsibility of being involved in a fraud scheme. The fact had been forgotten, when after a certain time had passed, Mike sought him out, and told him to "be prepared". After the threats he more deeply sought out information about the activities of the group. The declarant insinuated that there had been a connection between the purchase of the house of Mr. João Eudes Alves of Aragão and of the illicit activities they had in common. He tells that Mike, always associated with the attorney Eunice Leal, used bizarre things, even bought a load of shrimp from the people of Acaraú or else from the small producers from the region of lower Jaguaribe, he himself stole the load, had someone arrange for a dead cadaver at four or five o'clock am to put in the place of the driver and simulate a robbery of the load of shrimp. He also said that the uncle sent approximately R$ 180,000.00 (one hundred and eighty thousand reals) on a weekly basis to be used for the purchase of shrimp feed. Part of this money was seized by the criminal organization, which only invested the equivalent of R$ 50,000.00 (fifty thousand reals) for the purchase of shrimp feed, keeping the rest. He clarified that this difference in the investment was reflected at the harvest time, when the quantity