| | |
|---|---|
| **COMMERCIAL REVOLVING LINE OF CREDIT PROMISSORY NOTE** | **SOVEREIGN BANK** |

$3,000,000.00

July *28*, 2004
Boston, Massachusetts

For value received, G. F. Higgins, Inc. (the "**Borrower**") hereby promises to pay to the order of Sovereign Bank (successor in interest to Fleet National Bank, formerly Shawmut Bank, N.A., hereinafter the "**Bank**"), at the office of the Bank located at 75 State Street, Boston, Massachusetts 02109, or at such other address as the holder may designate, the principal sum of Three Million Dollars ($3,000,000.00), or the aggregate unpaid principal amount of all advances made by the Bank to the Borrower pursuant to the terms of the Agreement (as defined below), whichever is less, in lawful money of the United States. If any advances are made during the period from the date hereof until May 31, 2005 (as such date may be extended in writing from time to time, in the Bank's sole and absolute discretion, the "**Termination Date**"), unless an Event of Default (as defined in the Agreement) occurs, the Borrower may borrow, repay and reborrow; provided, however, that all outstanding principal, plus accrued and unpaid interest, shall be paid in full on the Termination Date.

Upon the Borrower's request, each advance hereunder will bear interest at either (i) a variable per annum rate equal to one quarter of one (.25%) percent in excess of the Prime Rate (as defined below) or (ii) a fixed per annum rate equal to the LIBOR Interest Rate plus Margin, determined as provided below. Prior to an Event of Default, outstanding principal hereunder which is not subject to a LIBOR Loan shall bear interest at a variable per annum rate equal to the Prime Rate. Changes in the rate of interest resulting from changes in the Prime Rate shall take place immediately without notice or demand of any kind. Interest on the outstanding principal of all advances shall be payable at the rate set forth above commencing on August 1, 2004 and continuing monthly thereafter on the same day of each succeeding month and on the Termination Date. Interest on the unpaid principal balance of each LIBOR Loan shall be payable on the last day of the Interest Period with respect to such LIBOR Loan. Interest shall be computed on the basis of a three hundred sixty (360) day year and actual days elapsed. Upon default or after maturity or after judgment has been rendered on this Note, the unpaid principal of all advances shall, at the option of the Bank, bear interest at a rate which is four (4) percentage points per annum greater than that which would otherwise be applicable. The term "**Prime Rate**" as used herein shall mean the annual interest rate announced by the Bank from time to time as its Prime Rate.

All payments shall be applied first to the payment of interest on the unpaid principal of all advances due under this Note and the balance on account of the principal of all advances due under this Note. The Bank is authorized, but not required, to charge principal and interest due on this Note and all other amounts due hereunder to any account of the Borrower when and as it becomes due.

If the entire amount of any required principal and/or interest is not paid in full within ten (10) days after the same is due, the undersigned shall pay to the Bank a late fee equal to five percent (5%) of the required payment.

The Borrower may request Prime Rate Loans hereunder by telephone, facsimile or mail by specifying the amount of the requested advance and electing the Prime Rate interest option. The Borrower may request LIBOR Loans hereunder by submitting to the Bank a written notification in the form of Exhibit 1 annexed hereto (herein a "**Notice of Borrowing**"), which indicates (i) the Borrowing Date for the requested LIBOR Loan; (ii) the amount of the LIBOR Loan (which shall be in increments of not be less than One Hundred Thousand ($100,000.00)

Dollars); and (iii) the Interest Period. Each Notice of Borrowing must be received by the Bank not less than three (3) Banking Days prior to the Borrowing Date. A Notice of Borrowing may be transmitted by facsimile or mail, but may not be transmitted by telephone. The Bank shall incur no liability to the Borrower in acting upon requests for advances hereunder by telephone, facsimile or mail which the Bank believes in good faith to have been given by an officer or other person authorized to borrow on behalf of the Borrower in accordance with the borrowing resolutions provided by the Borrower to the Bank.

After receipt from the Borrower of any Notice of Borrowing, the Bank shall determine if it is able to make such LIBOR Loan (or if it is unable to do so for reasons described in this Paragraph) and will notify the Borrower accordingly. If the Bank determines in good faith that, by reason of circumstances affecting the Interbank Market, adequate and reasonable methods do not exist for ascertaining the LIBOR which would otherwise be applicable to such LIBOR Loan, then the Bank shall so notify the Borrower on or before 4:00 p.m. on the Banking Day prior to the Borrowing Date specified in the Notice of Borrowing, and in such event, the Bank shall not be obligated to make such LIBOR Loan and the Notice of Borrowing shall be deemed to have been withdrawn by the Borrower with the Bank's consent and, in the case of new advances, substituted with a request for a Prime Rate Loan in an amount equal to the requested LIBOR Loan.

Except as otherwise provided in the Paragraph above, any Notice of Borrowing which requests a LIBOR Loan shall be irrevocable and binding upon the Borrower. In the event the Borrower fails to borrow the LIBOR Loan requested on the Borrowing Date specified in such Notice of Borrowing, the Borrower shall indemnify the Bank against any and all losses and expenses incurred by the Bank by reason of such failure including, without limiting the generality of the foregoing, all losses and expenses incurred by reason of the liquidation, disposition or redeployment of deposits or other funds acquired by the Bank to fund such LIBOR Loan.

Each advance which constitutes a LIBOR Loan hereunder shall be repaid in full on its Maturity Date. In the event a LIBOR Loan is not repaid in full on its Maturity Date, the outstanding principal balance of such LIBOR Loan shall thereafter convert to a Prime Rate Loan and bear interest accordingly. Any LIBOR Loan may be repaid with the proceeds of another LIBOR Loan.

No LIBOR Loan may be prepaid prior to its Maturity Date. In the event a LIBOR Loan is prepaid prior to its Maturity Date, whether voluntarily or upon exercise by the Bank of its rights hereunder following the occurrence of an Event of Default, the Borrower shall, upon demand by the Bank, pay to the Bank any amounts required to compensate the Bank for any additional losses, costs or expenses which it may reasonably incur as a result of such prepayment, including, without limitation, any loss, costs or expenses incurred by reason of the liquidation of redeployment of deposits or other funds acquired by the Bank to fund or maintain such LIBOR Loan.

Notwithstanding any other provision of this Note, (1) if the introduction of, or any change in, any law or regulation (or change in the interpretation thereof) applicable to the Bank or any foreign branch, agent or correspondent thereof shall make it unlawful, or (2) if any central bank or other governmental authority having jurisdiction over the Bank or any such branch, agent or correspondent, shall assert that it is unlawful, for the Bank to perform its obligations hereunder or for any such branch, agent or correspondent to act on behalf of the Bank to make LIBOR Loans to the Borrower or to continue to fund or maintain LIBOR Loans for the Borrower

4196

hereunder, or (3) if the Bank determines after making all reasonable efforts, that deposits of the relevant amount and for the relevant LIBOR Loan are not available to the Bank in the Interbank Market, then, on notice thereof by the Bank to the Borrower, the obligation of the Bank to the Borrower to make future LIBOR Loans shall terminate. If, as a result of any of the foregoing described events, the Bank is prohibited from maintaining LIBOR Loans the Bank shall, upon the happening of such event, notify the Borrower and the Borrower shall, in the case of each LIBOR Loan on the Maturity Date thereof (or, in any event, if the Bank so requests, on such earlier date as may be required by the relevant law, regulation or interpretation), either prepay such LIBOR Loan, or convert such LIBOR Loan into a Prime Rate Loan.

Calculation of the LIBOR Interest Rate, as well as all other fees and charges payable with respect to each LIBOR Loan shall be made and paid as though the Bank had actually funded the relevant LIBOR Loan through the purchase of a Eurodollar deposits at LIBOR in an amount equal to the amount of the LIBOR Loan and having a maturity comparable to the relevant Interest Period and through the transfer of such Eurodollar deposit from an offshore agent or office of the Bank to a domestic office of the Bank in the United States of America, provided, however, that the Bank may fund each LIBOR Loan in any manner it sees fit and the foregoing assumptions shall be nevertheless used for the calculation of the LIBOR Interest Rate and such other fees and charges.

At the option of the Bank, this note shall become immediately due and payable without notice or demand upon the occurrence at any time of: (i) the failure to pay in full and when due any installment of principal or interest hereunder; (ii) an Event of Default as defined in the Agreement between the Bank and the Borrower, as amended from time to time; or (iii) termination of the Agreement.

No delay or omission on the part of the Bank in exercising any right hereunder shall operate as a waiver of such right or of any other right of the Bank, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The Borrower and every other maker and every endorser or guarantor of this Note, regardless of the time, order or place of signing, waives presentment, demand, protest and notices of every kind and assents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral, and to the addition or release of any other party or person primarily or secondarily liable.

As used in this Note, the following terms shall have the following meanings:

(1) **"Banking Day"** shall mean a day on which banks are open for business in New York, N.Y., and if the applicable "Banking Day" relates to a LIBOR Loan, a day on which dealings are carried on and banks are open for business in New York or London, as applicable.

(2) **"Borrowing Date"** shall mean any day upon which a LIBOR Loan is made.

(3) **"Dollars"** or **"$"** shall mean currency of the United States of America.

(4) **"Eurocurrency Liabilities"** shall have the meaning assigned to that term in Regulation D of the Board of Governors of the Federal Reserve System, as in effect from time to time.

3

(5) "**Eurodollars**" shall mean Dollars acquired by the Bank through the purchase or other acquisition of deposits denominated in Dollars and made with any bank or branch of a bank (including any branch of the Bank) located outside the United States of America.

(6) "**Interbank Market**" shall mean, with respect to any LIBOR Loan, any recognized Interbank Eurodollar market chosen in good faith by the Bank.

(7) "**Interest Period**" shall mean, with respect to each LIBOR Loan, a period commencing on the Borrowing Date of such loan, and ending on the numerically corresponding day in the first, second or third month thereafter, as determined in accordance with the provisions of this Note, provided that any Interest Period which would otherwise end on a day which is not a Banking Day, shall end and the next Interest Period shall commence on the next preceding or the next succeeding day which is a Banking Day as determined in good faith by the Bank in accordance with the then current bank practices in the relevant Interbank Market.

(8) "**LIBOR**" shall mean, with respect to a LIBOR Loan, the rate per annum (rounded upward, if necessary, to the nearest one-thirty- second (1/32nd) of one (1%) percent) as determined on the basis of the offered rates for deposits in U.S. dollars, for a period of time comparable to such LIBOR Loan which appears on the Telerate page 3750 as of 11:00 a.m. London time on the day that is two London Banking Days preceding the first day of such LIBOR Loan; provided, however, if the rate described above does not appear on the Telerate System on any applicable interest determination date, the LIBOR rate shall be the rate (rounded upwards as described above, if necessary) for deposits in dollars for a period substantially equal to the interest period on the Reuters Page "LIBO" (or such other page as may replace the LIBO Page on that service for the purpose of displaying such rates), as of 11:00 a.m. (London Time), on the day that is two London Banking Days prior to the beginning of such interest period.

If both the Telerate and Reuters systems are unavailable, then the rate for that date will be determined on the basis of the offered rates for deposits in U.S. dollars for a period of time comparable to such LIBOR Loan which are offered by four major banks in the London interbank market at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the first day of such LIBOR Loan. The principal London office of each of the four major London banks will be requested to provide a quotation of its U.S. dollar deposit offered rate. If at least two such quotations are provided, the rate for that date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that date will be determined on the basis of the rates quoted for loans in U.S. dollars to leading European banks for a period of time comparable to such LIBOR Loan offered by major banks in New York City at approximately 11:00 a.m. New York City time, on the day that is two London Banking Days preceding the first day of such LIBOR Loan. In the event that the Bank is unable to obtain any such quotation as provided above, it will be deemed that LIBOR pursuant to a LIBOR Loan cannot be determined.

4198

(9) "**LIBOR Interest Rate**" shall mean an interest rate per annum (rounded upward, if necessary, to the nearest one-eighth (1/8th) of one (1%) percent) determined by the Bank pursuant to the following formula:

$$\text{LIBOR Interest Rate} = \frac{\text{LIBOR}}{1.00 - \text{Reserve Rate}}$$

(10) "**Margin**" shall mean: (a) Two hundred twenty-five (225) basis points.

(11) "**Maturity Date**" shall mean the date on which an Interest Period expires.

(12) "**Prime Rate**" shall mean the rate of interest announced from time to time by the Bank, at its head office, as its Prime Rate, it being understood that such rate is a reference rate and not necessarily the lowest rate of interest charged by the Bank. The rate of interest payable by the Borrower on Prime Rate Loans shall be changed effective as of that date on which a change in the Prime Rate becomes effective.

(13) "**Reserve Rate**" shall mean the rate (expressed as a decimal) at which the Bank would be required to maintain reserves under REGULATION D of the Board of Governors of the Federal Reserve System against Eurodollar Liabilities if such Liabilities were outstanding. The LIBOR Interest Rate shall be adjusted automatically as of the effective date of any change in the Reserve Rate.

This Note has been executed and delivered in accordance with the Commercial Revolving Line of Credit Agreement (the "**Agreement**") dated June 3, 1993, as amended, between the Borrower and the Bank, incorporated herein by reference, which sets forth further terms and conditions upon which the entire unpaid principal hereof and all interest hereon may become due and payable prior to the Termination Date, and generally as to further rights of the Bank and duties of the Borrower and any guarantor, endorser or surety of any obligation of the Borrower to the Bank (a "**Guarantor**") with respect hereto.

Borrower and each Guarantor of this Note agree to pay all taxes levied or assessed upon the outstanding principal against any holder of this Note and to pay all costs, including attorneys' fees, costs relating to the appraisal and/or valuation of assets and all other costs and expenses incurred in the collection, protection, defense, preservation, administration or enforcement of this Note, or any guaranty or endorsement of this Note, or in any litigation arising out of the transactions of which this Note or any guaranty or endorsement of this Note is a part.

The Borrower and each Guarantor hereby give the Bank a lien and right of setoff for all of Borrower's and each Guarantor's liabilities and obligations upon and against all the deposits, credits, collateral and property of the Borrower and each Guarantor, now or hereafter in the possession, custody, safekeeping or control of the Bank or any entity under the control of Fleet National Bank or in transit to any of them. At any time, without demand or notice, Bank may setoff the same or any part thereof and apply the same to any liability or obligation of the Borrower or any Guarantor even though unmatured.

4199

THE BANK, THE BORROWER AND EACH GUARANTOR IRREVOCABLY WAIVE ALL RIGHT TO A TRIAL BY JURY IN ANY PROCEEDING HEREAFTER INSTITUTED BY OR AGAINST THE BANK, THE BORROWER OR ANY GUARANTOR IN RESPECT OF THIS NOTE OR ARISING OUT OF ANY DOCUMENT, INSTRUMENT OR AGREEMENT EVIDENCING, GOVERNING OR SECURING THIS NOTE, INCLUDING THE AFORESAID AGREEMENT.

BORROWER AND EACH GUARANTOR: (1) ACKNOWLEDGE THAT THE ADVANCES EVIDENCED BY THIS NOTE ARE PART OF A COMMERCIAL TRANSACTION, AND (2) TO THE EXTENT PERMITTED BY ANY STATE OR FEDERAL LAW, WAIVE THE RIGHT ANY OF THEM MAY HAVE TO PRIOR NOTICE OF AND A HEARING ON THE RIGHT OF ANY HOLDER OF THIS NOTE TO ANY REMEDY OR COMBINATION OF REMEDIES THAT ENABLES SAID HOLDER, BY WAY OF ATTACHMENT, FOREIGN ATTACHMENT, GARNISHMENT OR REPLEVIN, TO DEPRIVE BORROWER OR ANY GUARANTOR OF ANY OF THEIR PROPERTY, AT ANY TIME, PRIOR TO FINAL JUDGMENT IN ANY LITIGATION INSTITUTED IN CONNECTION WITH THIS NOTE. The Borrower and each Guarantor further waive diligence, demand, presentment, notice of nonpayment, protest and notice of protest, and notice of any renewals or extensions of this Note, and all rights under any statute of limitations, and agree that the time for payment of this Note may be changed and extended at Bank's sole discretion, without impairing their liability hereon, and further consent to the release of all or any part of the security for the payment hereof at the discretion of Bank, or the release of any party liable for this obligation without affecting the liability of the other parties hereto. Any delay on the part of the Bank in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default.

The Borrower specifically acknowledges and agrees that the Bank is under no obligation to make any advance to the Borrower pursuant to this Note or the aforesaid Agreement. The making of an advance at any time, shall not be deemed a waiver of, or consent, agreement or commitment by the Bank to the making of any future advance to the Borrower.

If any provision of this Note shall, to any extent, be held invalid or unenforceable, then only such provision shall be deemed ineffective and the remainder of this Note shall not be affected.

This Note shall bind the heirs, executors, administrators, successors and assigns of each Borrower and all Guarantors hereto and shall inure to the benefit of the Bank, its successors and assigns.

This Note is executed as a sealed instrument and shall be governed and construed in accordance with the laws of the Commonwealth of Massachusetts.

[Signatures on following page]

4200

Witness:                                G. F. HIGGINS, INC.

_____                By: _*Thom Higgin*_ (signature)
Robert A. Lupien                        Thomas Higgins
                                        Its  President

```
THIS NOTE IS SECURED PURSUANT TO A SECURITY
AGREEMENT (ALL ASSETS) DATED JUNE 22, 1990.
```

U:\BTG\Sovereign\GF Higgins-6170-68\Commercial Revolving Line of Credit.doc

4201

## EXHIBIT 1

## NOTICE OF BORROWING

Date: _____, 200_

To: Sovereign Bank
75 State Street
Boston, Massachusetts 02109

Re: Commercial Revolving Line of Credit Promissory Note between Fleet National Bank (the "**Bank**") and G.F. Higgins, Inc. (the "**Borrower**") dated July ___, 2004 (the "**Note**")

This Notice of Borrowing confirms the following request for a LIBOR Loan under the Note.

Date of Request:

Date of LIBOR Loan:

Amount of LIBOR Loan at LIBOR Rate: *

Interest Period: **

The Borrower hereby certifies that all representations and warranties contained in the Agreement between the Borrower and the Bank are true and accurate in all material respects on the date of this Notice of Borrowing as though such representations and warranties had been made on this date (except to the extent that such representation or warranty expressly relates to an earlier date).

Terms used herein which are defined in the Note are used as so defined.

G.F. HIGGINS, INC.

By:_____

\*     Must be in increments of $100,000.00
\*\*    One, Two or Three Months

8

4202

## G. F. HIGGINS, INC.

## CLERK'S CERTIFICATE OF DIRECTORS' AND STOCKHOLDERS' VOTES

The undersigned, being the Clerk of G. F. Higgins, Inc., a corporation duly organized, validly existing, and in good standing under the laws of the Commonwealth of Massachusetts, certifies that the following resolutions were duly adopted by unanimous consent of the Stockholders and Directors of said Corporation dated July _28_, 2004, the originals of which consents having been placed with the records of meetings of Stockholders and Directors of said Corporation and are in conformity with the Articles of Organization, Certificate of Incorporation and By-Laws of said Corporation (each as amended to date) and that each of the following resolutions presently is in full force and effect without change:

"RESOLVED, That the President, Treasurer or any other officer or agent of this Corporation or any one or more of them be and they are hereby authorized and empowered to borrow, from time to time, from Sovereign Bank, (herein **"Secured Party"**) such sum or sums of money as any of said officers may deem necessary or advisable for the purposes of this Corporation;" and it was further

"RESOLVED, that the President, Treasurer, or any other officer or any agent of this Corporation, or any one or more of them, be and they are hereby authorized and empowered to enter into and execute on behalf of this Corporation a security agreement(s) and/or a mortgage(s) with Secured Party relating to the granting of a security interest, pledge, assignment, negotiation and guarantee to said Secured Party of accounts, contracts, contract rights, general intangibles, chattel papers, instruments, documents; and all forms of obligations owing to this Corporation arising from or out of the sale of merchandise and/or the rendition of services or however otherwise, and all proceeds thereof, collectively referred to as **"Accounts"**, and/or relating to the granting of a security interest, consignment, pledge, mortgage or other hypothecation of any and all of the inventory and any and all of the machinery, equipment, goods or other property, now or hereafter belonging to or acquired by the Corporation, to or with said Secured Party and/or to enter into and to execute on behalf of this Corporation a mortgage(s) relating to the real property of this Corporation, of whatever kind or nature and wherever situated, and from time to time to modify or supplement said security agreement(s) or mortgage(s) and to make and modify, or supplement arrangements with said Secured Party as to the terms or conditions on which such Accounts are to be pledged, assigned, negotiated or guaranteed to said Secured Party, and as to the terms or conditions on which merchandise or other property, now or hereafter belonging to or acquired by this Corporation, may be consigned, pledged, mortgaged or otherwise hypothecated to or with said Secured Party, and they and each of them and any person or persons hereafter and from time to time designated by any of them to act for this Corporation are hereby further authorized and empowered from time to time to assign, transfer, deliver, endorse, negotiate or otherwise transfer and/or guarantee to said Secured Party and its assigns any and all Accounts now or hereafter belonging to or acquired by this Corporation, and for said purposes to execute and deliver any and all assignments, schedules, transfers, endorsements, contracts, guarantees, agreements or other instruments in respect thereof and to make remittances and payments in respect thereof as provided by any security agreement entered into with Secured Party, and they are further authorized and empowered from time to time to consign, designate, pledge, mortgage or otherwise hypothecate to or with said Secured Party merchandise or other property whether

real personal or of whatever kind or nature and wherever situated, now or hereafter belonging to or acquired by this Corporation, and for said purposes to execute and deliver any and all consignments, promissory notes, security agreements, financing statements, designations, schedules, mortgages, agreements, instruments of pledge and/or other instruments in respect thereof, and to do and perform all such other acts and things deemed by such officer or agent necessary, convenient or proper to carry out, modify or supplement any such agreement and arrangements made with said Secured Party, hereby ratifying, approving and confirming all than any of said officers or agents have done or may do in the premises;" and it was further

"RESOLVED, that until said Secured Party receives notice in writing of any change or limitations of authority of any officers or any agents of this Corporation. Said Secured Party is authorized to rely upon the authority and power set forth in these resolutions;" and it was further

"RESOLVED, that any one (1) of the officers and/or persons authorized by the foregoing Resolutions, acting singly, may by written instrument furnished the Bank delegate to any other officer or person the same authority which is vested (singly and individually - collectively) by said Resolutions in the person(s) or officer(s) so delegating authority, which written delegation shall be in such form as may be requested by the Bank and may be subject to such restrictions and limitations as may be indicated thereon."

The undersigned hereby FURTHER CERTIFIES that the following are the names and the officers and agents of said Corporation authorized and empowered to act in accordance with said Resolutions, and their specimen signatures are as follows namely:

President: *Thomas Higgins*

Treasurer: *Robert Higgins*

IN WITNESS WHEREOF, the undersigned has hereunto set his hand and affixed the seal of said corporation hereby as of the _____ day of July, 2004.

_____, Clerk

U:\BTG\Sovereign\GF Higgins-6170-68\Clerk Certificate.doc

4204

## SOVEREIGN BANK

### <u>GUARANTY</u>
(Thomas Higgins)

TO:    Sovereign Bank
75 State Street
Boston, Massachusetts 02109

       To induce you to make or continue to make loans, advances, or grant other financial accommodations to G. F. Higgins, Inc., a Massachusetts corporation (hereinafter called the "**Borrower**"), and in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by you to or for the account of the Borrower; the undersigned Guarantor guarantees the payment to you of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to you from Borrower pursuant to the Transaction Documents (as defined below) (hereinafter the "**Obligations**"); and also guarantees the due performance by the Borrower of all its Obligations under all present and future contracts and agreements with you related to the Transaction Documents.

       Guarantor also agrees: to indemnify you and hold you harmless against all obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid by you as a result of or in any way arising out of, or following, or consequential to transactions with the Borrower pursuant to the Loan and Security Agreement (All Assets) of even date and related documents (the "**Transaction Documents**"); that this Guaranty shall not be impaired by any modification, supplement, extension or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, release or other alteration of any of the Obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatever with the Borrower or anyone else; that the liability of Guarantor hereunder is direct and unconditional and may be enforced without requiring you first to resort to any other right, remedy or security; that Guarantor shall have no right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and Obligations of the Borrower to you, unless and until all of said debts and Obligations have been paid in full; that if the Borrower or Guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or Guarantor, any and all Obligations of Guarantor shall, at your option, forthwith become due and payable without notice; that your books and records showing the account between you and the Borrower shall be admissible in any action or proceeding, shall constitute prima facie proof of the items therein set forth; that this Guaranty is a continuing guaranty which shall remain effective until expressly terminated as hereinafter provided; that this Guaranty may be terminated as to Guarantor only by giving you thirty (30) days' prior written notice by registered or certified mail, and thereupon this Guaranty shall terminate with respect to such Guarantor only at the expiration of said thirty (30) days period which shall then be the effective date of termination; that such termination shall be applicable only to transactions having their inception after the effective date of termination and shall not affect rights and Obligations arising out of transactions having their

inception prior to such date; that the death of Guarantor shall not effect the termination of this Guaranty as to such deceased or as to any other guarantor; that termination by any Guarantor shall not affect the continuing liability hereunder of guarantors as do not give notice of termination; that nothing shall discharge or satisfy the liability of Guarantor hereunder except the full payment and performance of all of the Borrower's debts and Obligations to you with interest; that any and all present and future debts and obligations of the Borrower to Guarantor are hereby waived and postponed in favor of and subordinated to the full payment and performance of all present and future debts and obligations of the Borrower to you; and that all sums at any time to the credit of Guarantor and any of the property of Guarantor at any time in your possession may be held by you as security for any and all obligations of Guarantor to you, no matter how or when arising, whether absolute or contingent, whether due or to become due and whether under this Guaranty or otherwise.

Guarantor agrees to pay on demand all fees, costs, and expenses of every kind incurred by you for any purpose arising from, relating to, or in connection with the Transaction Documents subject to any limitations contained therein, including, without limitation, fees, costs and expenses incurred by you in enforcing this Guaranty.

This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of all or any part of the Obligations guaranteed hereunder is rescinded or otherwise must be restored by you to the Borrower or to the creditors of the Borrower or any representative of the Borrower or representative of the Borrower's creditors upon the insolvency, bankruptcy or reorganization of the Borrower, or to the Guarantor or to the creditors of the Guarantor or any representative of the Guarantor or representative of the creditors of the Guarantor upon the insolvency, bankruptcy or reorganization of any Guarantor, or otherwise, all as though such payments had not been made.

Guarantor waives: notice of acceptance hereof, presentment and protest of any instrument, and notice thereof; notice of default; and all other notices to which Guarantor might otherwise be entitled. Guarantor also waives any and all defenses relating to or resulting from your failure to acquire or perfect any security interest and any ability of the Borrower or its creditors or any representative of them to avoid payment of the Obligations or the secured nature of the Obligations under any bankruptcy or insolvency laws or any law under which the Obligations or security therefor may or could be deemed a fraudulent transfer.

GUARANTOR AND YOU HEREBY KNOWINGLY AND VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY. GUARANTOR HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF YOURS HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT YOU WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. GUARANTOR ACKNOWLEDGES THAT YOU HAVE BEEN INDUCED TO ENTER INTO YOUR LENDING RELATIONSHIP WITH THE BORROWER BY, AMONG OTHER THINGS, THE PROVISIONS OF THIS PARAGRAPH.

4206

This Guaranty shall be binding upon the heirs, successors, representatives and assigns of the Guarantor and shall apply to all Obligations of the Borrower and any successor to the Borrower, including any successor by operation of law and shall inure to your benefit and the benefit of your successors and assigns.

This Guaranty shall be governed, construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts. The Guarantor submits to the jurisdiction of the Courts of the Commonwealth of Massachusetts for all matters in connection with this Guaranty as well as for all purposes in connection with any other relationship between you and the Guarantor. It is the intention of the Guarantor that the provisions of this Guaranty be liberally construed to the end that you may be put in as good a position as if the Borrower promptly, punctually and faithfully performed all of its Obligations to you and as if the Guarantor had promptly, punctually and faithfully performed hereunder.

The Guarantor shall furnish his personal financial statement (on the Bank's form) and a copy of his federal tax returns to the Bank annually, within ninety (90) days after the end of each calendar year.

The Guarantor certifies that the Guarantor has read this Guaranty prior to its execution.

Executed under seal and dated July 28, 2004.

Witnessed By:

_____         _____
                                        Thomas Higgins, Individually as Guarantor

                                        Address:

U:\BTG\Sovereign\GF Higgins-6170-68\Guaranty-TH.doc

-3-

4207