## WORKING CAPITAL ADVANCES AND
## PRODUCT REVOLVING LINE OF CREDIT AGREEMENT

This WORKING CAPITAL ADVANCES AND PRODUCT REVOLVING LINE OF CREDIT AGREEMENT ("Agreement") is made and entered into as of the 19th day of September, 2002, by and between PROCAPUI PRODUTORES DE CAMAROES DE ICAPUI LTDA., a Brazilian corporation ("PROCAPUI"), and G.F. HIGGINS, INC., a Massachusetts corporation ("G.F. HIGGINS").

## W I T N E S S E T H:

WHEREAS, PROCAPUI is engaged in the business of harvesting, fishing, processing and packaging seafood products within the Country of Brazil for sale to distributors; and

WHEREAS, G.F. HIGGINS is engaged in the business of distribution of seafood products within the United States of America and elsewhere to wholesalers, retailers and others; and

WHEREAS, PROCAPUI has requested G.F. HIGGINS to advance payments to PROCAPUI for working capital purposes and in prepayment of seafood products to be sold and delivered by PROCAPUI to G.F. HIGGINS, and G.F. HIGGINS is willing to advance such payments to PROCAPUI, subject to the terms and conditions contained in this Agreement;

NOW, THEREFORE, in consideration of the premises and mutual promises herein contained, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

Section 1. Working Capital.

1.1   2002 Working Capital.

(a)   PROCAPUI and G.F. HIGGINS each hereby acknowledge and agree that G.F. HIGGINS has previously advanced the aggregate sum of Two Hundred Thousand United States Dollars ($200,000) to PROCAPUI during calendar year 2002 for working capital purposes in connection with PROCAPUI's processing and packaging operations in Brazil (the "Initial 2002 Working Capital Advance"). From and after the date hereof through December 31, 2002, G.F. HIGGINS may, in its sole discretion, advance an additional aggregate sum of One Hundred Thousand United States Dollars ($100,000) to PROCAPUI for working capital purposes of PROCAPUI (the "Additional 2002 Working Capital Advance"; together with the Initial 2002 Working Capital Advance, the "2002 Working Capital Advance"). In the event that G.F. HIGGINS determines, in its sole discretion, not to advance the Additional 2002 Working Capital

Advance to PROCAPUI, such amount shall instead be added to the 2002 Product Revolving Line of Credit, as defined below.

(b)     On or before December 31, 2002, PROCAPUI shall pay to G.F. HIGGINS, or order, in lawful money of the United States and in immediately available funds, the full amount of the 2002 Working Capital Advance; provided, however, that so long as any payment of principal due under the 2002 Working Capital Advance is not paid when due, PROCAPUI shall also pay interest on the outstanding principal balance thereof during the period such payment remains unpaid at a default rate equal to the lesser of eighteen percent (18%) per annum or the maximum rate of interest permitted by applicable law; and, provided further, that if the 2002 Working Capital Advance is paid in full on or before December 31, 2002, no interest shall be payable on the principal balance thereof.

(c)     In addition to, and not in limitation of, PROCAPUI's other obligations to G.F. HIGGINS hereunder, in consideration of the 2002 Working Capital Advance made by G.F. HIGGINS to PROCAPUI, on or before December 31, 2002, PROCAPUI shall provide G.F. HIGGINS with a five percent (5%) discount towards the purchase price (net of all other applicable discounts and allowances) on one (1) twenty foot (20') container of product containing four hundred fifty (450) cases of lobster tails sold and delivered by PROCAPUI to G.F. HIGGINS.

1.2     Subsequent Working Capital Advances.

(a)     So long as no Event of Default, as defined below, shall have occurred and be continuing, on or before January 31, 2003, and on or before each succeeding January 31 thereafter, G.F. HIGGINS may, in its sole discretion, advance up to the aggregate sum of Three Hundred Thousand United States Dollars ($300,000) to PROCAPUI for working capital purposes of PROCAPUI (each a "Subsequent Annual Working Capital Advance"). In the event that G.F. HIGGINS determines in any given calendar year, in its sole discretion, not to advance the full amount of the Subsequent Annual Working Capital Advance for such calendar year, such amount not advanced shall instead be added to the Subsequent Annual Product Revolving Line of Credit, as defined below, for such calendar year.

(b)     On or before December 31 of each calendar year, PROCAPUI shall pay to G.F. HIGGINS, or order, in lawful money of the United States and in immediately available funds, the full amount of the Subsequent Annual Working Capital Advance for such calendar year; provided, however, that so long as any payment of principal due under the Subsequent Annual Working Capital Advance is not paid when due, PROCAPUI shall also pay interest on the outstanding principal balance thereof during the period such payment remains unpaid at a default rate equal to the lesser of eighteen percent (18%) per annum or the maximum rate of interest permitted by applicable law; and, provided further, that if the Subsequent Annual Working Capital Advance is paid in full on or before December 31 of such calendar year, no interest shall be payable on the principal balance thereof.

(c) In addition to, and not in limitation of, PROCAPUI's other obligations to G.F. HIGGINS hereunder, in consideration of each Subsequent Annual Working Capital Advance made by G.F. HIGGINS to PROCAPUI, on or before December 31 of each such calendar year, PROCAPUI shall provide G.F. HIGGINS with a five percent (5%) discount towards the purchase price (net of all other applicable discounts and allowances) on one (1) twenty foot (20') container of product containing four hundred fifty (450) cases of lobster tails sold and delivered by PROCAPUI to G.F. HIGGINS during such calendar year.

Section 2. Product Revolving Line of Credit.

2.1   2002 Product Revolving Line of Credit.

(a) Subject to the terms and conditions of this Agreement, G.F. HIGGINS agrees to make prepayments to PROCAPUI for seafood products to be sold and delivered by PROCAPUI to G.F. HIGGINS during calendar year 2002, on a revolving basis from time to time from the date hereof to and including December 31, 2002, in an aggregate principal amount up to but not exceeding at any one time outstanding the sum of Four Hundred Fifty Thousand United States Dollars ($450,000)(the "2002 Product Revolving Line of Credit"); provided, however, that in the event G.F. HIGGINS determines, in its sole discretion, not to advance the Additional 2002 Working Capital Advance to PROCAPUI as provided above, the amount of the 2002 Product Revolving Line of Credit shall be increased to Five Hundred Fifty Thousand United States Dollars ($550,000).

(b) Each prepayment by G.F. HIGGINS to PROCAPUI under the 2002 Product Revolving Line of Credit shall be made at such times and in such amounts as shall be mutually agreed to by the parties in writing, provided that the first such prepayment by G.F HIGGINS to PROCAPUI shall occur no later than twenty (20) days following the execution and delivery of this Agreement; and, provided further, that so long as any Event of Default shall have occurred and be continuing, G.F. HIGGINS shall have no obligation to make any further prepayments to PROCAPUI under the 2002 Product Revolving Line of Credit. All such prepayments shall be made by G.F. HIGGINS to PROCAPUI by wire transfer of immediately available funds to such account or accounts designated for such by PROCAPUI in writing.

(c) On or before December 31, 2002, PROCAPUI shall pay to G.F. HIGGINS, or order, in lawful money of the United States and in immediately available funds, the full amount of the unpaid principal balance of the 2002 Product Revolving Line of Credit; provided, however, that so long as any payment of principal due under the 2002 Product Revolving Line of Credit is not paid when due, PROCAPUI shall also pay interest on the outstanding principal balance thereof during the period such payment remains unpaid at a default rate equal to the lesser of eighteen percent (18%) per annum or the maximum rate of interest permitted by applicable law; and, provided further, that if

the 2002 Product Revolving Line of Credit is paid in full on or before December 31, 2002, no interest shall be payable on the principal balance thereof.

      2.2      Subsequent Product Revolving Line of Credit

      (a)      So long as no Event of Default shall have occurred and be continuing, during calendar year 2003 and each subsequent calendar year thereafter, G.F. HIGGINS agrees to make prepayments to PROCAPUI for seafood products to be sold and delivered by PROCAPUI to G.F. HIGGINS during such calendar year, on a revolving basis from time to time from January 1 to and including December 31 of such calendar year, in an aggregate principal amount up to but not exceeding at any one time outstanding the sum of Four Hundred Fifty Thousand United States Dollars ($450,000)(each a "Subsequent Annual Product Revolving Line of Credit"); provided, however, in the event that G.F. HIGGINS determines in any given calendar year, in its sole discretion, not to advance the full amount of the Subsequent Annual Working Capital Advance for such calendar year as provided above, such amount not advanced shall instead be added to the Subsequent Annual Product Revolving Line of Credit for such calendar year.

      (b)      Each prepayment by G.F. HIGGINS to PROCAPUI under the Subsequent Annual Product Revolving Line of Credit shall be made at such times and in such amounts as shall be mutually agreed to by the parties in writing, provided that the first such prepayment by G.F HIGGINS to PROCAPUI shall occur no later than twenty (20) days following January 1 of such calendar year; and, provided further, that so long as any Event of Default shall have occurred and be continuing, G.F. HIGGINS shall have no obligation to make any further prepayments to PROCAPUI under the Subsequent Annual Product Revolving Line of Credit. All such prepayments shall be made by G.F. HIGGINS to PROCAPUI by wire transfer of immediately available funds to such account or accounts designated for such by PROCAPUI in writing.

      (c)      On or before December 31 of each calendar year, PROCAPUI shall pay to G.F. HIGGINS, or order, in lawful money of the United States and in immediately available funds, the full amount of the unpaid principal balance of the Subsequent Annual Product Revolving Line of Credit; provided, however, that so long as any payment of principal due under the Subsequent Annual Product Revolving Line of Credit is not paid when due, PROCAPUI shall also pay interest on the outstanding principal balance thereof during the period such payment remains unpaid at a default rate equal to the lesser of eighteen percent (18%) per annum or the maximum rate of interest permitted by applicable law; and, provided further, that if the Subsequent Annual Product Revolving Line of Credit is paid in full on or before December 31 of such calendar year, no interest shall be payable on the principal balance thereof.

      2.3      Excess Prepayments. Notwithstanding anything contained in this Agreement to the contrary, the aggregate amount of the prepayments outstanding at any time hereunder shall in no event exceed the 2002 Product Revolving Line of Credit or the Subsequent Annual Product Revolving Line of Credit, as the case may be, unless the

parties agree in writing to extend such amounts. In the event that the aggregate amount of the prepayments outstanding at any time exceeds the foregoing limits, then PROCAPUI shall immediately pay to G.F. HIGGINS, in United States Dollars and in immediately available funds, an amount equal to the amount by which such aggregate outstanding prepayments exceed the applicable limits, so that PROCAPUI shall always be in compliance with the 2002 Product Revolving Line of Credit or the Subsequent Annual Product Revolving Line of Credit, as the case may be.

2.4   Shipments of Products.

(a)   Within fifteen (15) days following each prepayment by G.F. HIGGINS to PROCAPUI under the 2002 Product Revolving Line of Credit or the Subsequent Annual Product Revolving Line of Credit, as the case may be, PROCAPUI shall sell and deliver seafood products to G.F. HIGGINS against purchase orders placed by G.F. HIGGINS with an aggregate value (net of all applicable discounts and allowances) equal to the amount of such prepayment. The terms and conditions of each purchase order shall continue to apply to the products subject to such purchase order notwithstanding the execution and delivery of this Agreement. The value of each shipment of product by PROCAPUI to G.F. HIGGINS shall be applied against the 2002 Product Revolving Line of Credit or the Subsequent Annual Product Revolving Line of Credit, as the case may be, for purposes of reducing the outstanding principal balance thereof.

(b)   The parties hereby acknowledge and agree that any particular shipment of product by PROCAPUI to G.F. HIGGINS may be plus or minus ten percent (10%) of the purchase order(s) relating thereto, as a result of fishing and sea conditions, size availability, fishing and shipping schedules, and other factors. As such, to the extent a shipment of product by PROCAPUI to G.F. HIGGINS shall be less than the purchase order(s) relating thereto, not to exceed, however, more than a ten percent (10%) variance in any one shipment, PROCAPUI shall have the right to correct such deficiency by delivering additional product to G.F. HIGGINS in the immediately succeeding shipment of product to G.F. HIGGINS, with a value equal to the amount of the deficient shipment.

(c)   PROCAPUI shall sell and deliver seafood products to G.F. HIGGINS meeting all applicable health and safety regulations and shall enter into fishing, processing and packaging arrangements only with HAACP approved facilities.

(d)   PROCAPUI warrants to G.F. HIGGINS that the products to be sold and delivered by PROCAPUI to G.F. HIGGINS pursuant to this Agreement shall be free from defects in quality, processing and packaging existing at the time of shipment of such products to G.F. HIGGINS, and PROCAPUI covenants and agrees to replace any such defective products within twenty (20) days following notice thereof from G.F. HIGGINS or on the next available vessel, which is shorter, or to issue a credit to G.F. HIGGINS in the full amount of the value of such defective products. PROCAPUI further warrants that each and every carton containing products shipped to G.F. HIGGINS shall be marked "Product of Brazil", and that the finished counts and net weights shall

conform to the product descriptions, purchase orders, invoices and other documentation covering such products, subject to the terms and conditions of this Agreement.

(e) In the event that any products shall be rejected by the United States Food and Drug Administration (the "U.S. FDA"), as a result of a defect or other condition prior to the container of product being sealed, PROCAPUI shall, subject to the provisions of this Section, repurchase such products from G.F. HIGGINS at G.F. HIGGINS' original purchase price, plus one hundred percent (100%) of the cost and freight destination price paid by G.F. HIGGINS for such products, plus the cost of ocean freight to return such products to PROCAPUI. G.F. HIGGINS shall promptly notify PROCAPUI of any rejection of any products by the U.S. FDA and provide PROCAPUI with a copy of the U.S. FDA rejection notice, if any. Within seven (7) days following notification by G.F. HIGGINS that any of such products have been rejected by the U.S. FDA, PROCAPUI shall issue and establish a documentary credit covering the repurchase of such products from G.F. HIGGINS. Alternatively, PROCAPUI may replace such defective products within thirty (30) days of the date of rejection by the U.S. FDA with replacement products in an amount equal to the full value of the defective products. If any rejection by the U.S. FDA shall occur at or following the end of the usual and customary shipping season for PROCAPUI, as a result of a defect or other condition prior to the container of product being sealed, PROCAPUI shall replace such defective products in equal value as herein provided, or wire a full refund to G.F. HIGGINS in lawful money of the United States and in immediately available funds, in each case within thirty (30) days of the date of such rejection.

Section 3. <u>Representations and Warranties</u>. Each party represents and warrants to the other, as follows:

(a) Such party is a corporation, duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization. Such party has all requisite corporate and other power and authority to enter into this Agreement, perform its obligations hereunder and consummate the transactions contemplated hereby. All necessary and appropriate corporate and other action has been taken by such party with respect to the execution and delivery of this Agreement and the documents contemplated herein, and the same constitute valid and binding obligations of such party enforceable in accordance with their terms. The consummation of the transactions contemplated by this Agreement and the documents contemplated herein do not and shall not conflict with any applicable international, federal, state or local law, rule, regulation, writ, decree or order to which such party is subject, nor does it nor shall it conflict with or violate any term, provision or covenant of any mortgage, indenture, contract, agreement, instrument or judgment applicable to such party or any of the organizational or governing documents of such party.

(b) No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any person or governmental body is required on the part of such party in connection with the execution and delivery of this Agreement or the compliance by such party with any of the provisions hereof.

(c) There is no action, suit, or proceeding at law or in equity or by or before any governmental instrumentality or other agency now pending or threatened against or affecting such party which, if adversely determined, could be expected to have an adverse effect on the business, operations, properties, assets, or condition, financial or otherwise, of such party.

(d) The individual executing this Agreement on behalf of each party, notwithstanding the representative capacity of such individual, by signing this Agreement, hereby confirms that such individual has reviewed the representations and warranties of such party contained in this Section 3 and elsewhere in this Agreement, and that each such representation and warranty is true and correct in all respects.

Section 4. <u>Books and Records</u>. PROCAPUI will keep and maintain books of record and account with respect to its business operations in accordance with usual and customary industry practices. Upon the occurrence of an Event of Default (as defined below), PROCAPUI will permit G.F. HIGGINS, its officers, authorized agents and employees to inspect, at all reasonable times, the properties, both real and personal, of PROCAPUI and, further, at such reasonable times and places, to examine the books and records of PROCAPUI to determine compliance with the terms and conditions of this Agreement.

Section 5. <u>Events of Default</u>. Upon the occurrence of any one or more of the following events (each an "Event of Default"):

(a) PROCAPUI shall fail to pay on the date when due (without any notice thereof being required) any principal or interest or other amount due under this Agreement or under any other liability or obligation of PROCAPUI to G.F. HIGGINS, whether now or hereafter existing or hereafter contracted or assumed, when and as the same respectively becomes due and payable to G.F. HIGGINS, whether at maturity, by acceleration or otherwise; or

(b) PROCAPUI shall default in any payment of principal of or interest on any other obligation for borrowed money or the deferred purchase price of property beyond any period of grace provided with respect thereto or in the performance of any other agreement, term or condition contained in the agreement or instrument under which any such obligation is created if the effect of such default is to cause, or permit the holder or holders of such obligation (or a trustee on behalf of such holder or holders) to cause, such obligation to become due prior to its stated maturity; or

(c) Any representation or warranty herein made by PROCAPUI shall prove to be false or misleading in any material respect; or

(d) PROCAPUI shall default in the performance or observance of any other covenant, condition or provision hereof applicable to it and such default shall not be remedied for a period of ten (10) days after notice thereof to PROCAPUI from G.F. HIGGINS; or

(e) Jozef Anavian, an executive officer and the principal shareholder and owner of PROCAPUI (i) shall die, become disabled, or no longer be an executive officer of PROCAPUI, or (ii) shall sell, transfer, pledge (except to G.F. HIGGINS) or assign any of his equity interest in PROCAPUI to any third party, or (iii) shall be adjudicated insolvent or admit in writing his inability to pay his debts as they mature, or shall file a voluntary petition in bankruptcy or to effect a plan or other arrangement with creditors, or shall file an answer admitting the jurisdiction of the court and the material allegations of an involuntary petition pursuant to any law relating to bankruptcy or to any law purporting to be amendatory thereof, or shall be adjudicated a bankrupt, or shall make or attempt to make an assignment for the benefit of creditors, or (iv) shall make an assignment to an agent authorized to liquidate any part of his property or any receiver, trustee, liquidator, custodian or like officer shall be appointed to take custody, possession or control of any part of his property; or

(f) PROCAPUI (i) shall be adjudicated insolvent or admit in writing its inability to pay its debts as they mature, or shall file a voluntary petition in bankruptcy or a voluntary petition in reorganization or to effect a plan or other arrangement with creditors, or shall file an answer admitting the jurisdiction of the court and the material allegations of an involuntary petition pursuant to any law relating to bankruptcy or to any law purporting to be amendatory thereof, or shall be adjudicated a bankrupt, or shall make or attempt to make an assignment for the benefit of creditors, or (ii) shall make an assignment to an agent authorized to liquidate any part of its property or any receiver, trustee, liquidator, custodian or like officer shall be appointed to take custody, possession or control of any part of its property, or (iii) shall take any corporate or other action in furtherance of any of the foregoing purposes; or

(g) An order shall be entered pursuant to any law relating to bankruptcy or to any law purporting to be amendatory thereof approving an involuntary petition against Jozef Anavian or PROCAPUI, or an order shall be entered without the application, consent or approval of Jozef Anavian or PROCAPUI appointing a receiver of or trustee for him or it or any part of his or its property, or a writ or warrant of attachment or any similar process shall be issued against any part of his or its property, and such order approving an involuntary petition or appointing a receiver or trustee is not vacated or such writ or warrant of attachment or any similar process is not released or bonded within thirty (30) days after its entry or levy;

then, and in any such Event of Default, (i) G.F. HIGGINS shall be immediately released and discharged from all obligations to make further payments to PROCAPUI under this Agreement, whether in the form of working capital advances or prepayments for seafood products, and (ii) any and all amounts due from PROCAPUI to G.F. HIGGINS hereunder, together with all charges, fees and interest accrued thereon, shall become and be immediately due and payable without further presentment, demand, protest or notice of any kind, all of which are hereby expressly waived.

Section 6.   *Expenses.*   PROCAPUI shall reimburse G.F. HIGGINS on demand for all costs and expenses incurred by G.F. HIGGINS including, but not limited

to, reasonable attorneys' fees, in connection with the enforcement of this Agreement or of any document or instrument delivered hereunder.

Section 7.    Security of Performance.

7.1    Guaranty. As a condition to G.F. HIGGINS entering into this Agreement, and as additional security for the performance of PROCAPUI'S obligations hereunder (and not in lieu of any other right or remedy available to G.F. HIGGINS at law or in equity), Jozef Anavian shall execute and deliver to G.F. HIGGINS a Guaranty Agreement unconditionally and irrevocably guaranteeing the timely and full performance by PROCACPUI of its obligations hereunder, which Guaranty Agreement shall be secured by a second priority mortgage on the real estate and improvements thereon located at Walkers Mill Road, Town of Livingston, Columbia County, State of New York.

7.2    Right of Offset. PROCAPUI hereby irrevocably grants G.F. HIGGINS the right of offset against all obligations due G.F. HIGGINS hereunder, any obligations owed to PROCAPUI or any of its affiliates from time to time by G.F. HIGGINS.

Section 8.    Miscellaneous.

8.1    Binding Effect; Successors and Assigns. This Agreement shall bind and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns; provided, however, that no party to this Agreement shall assign, pledge or hypothecate its rights nor delegate its obligations under this Agreement to any person or entity, by operation of law or otherwise, without the prior written consent of the other party hereto, except that G.F. HIGGINS may assign this Agreement and all or any part of G.F. HIGGINS' rights hereunder to any successor in interest to, any entity controlling, controlled by or under common control with, any entity acquiring all or substantially all of the assets of, or any lending institution of, G.F. HIGGINS, without the prior consent of PROCAPUI.

8.2    Section Headings. Titles or headings contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement. If there is any conflict between any such titles or headings and the text of this Agreement, the text shall control.

8.3    Waiver. Neither the failure nor any delay on the part of any party hereto in exercising any right, power or remedy hereunder shall operate as a waiver thereof, or of any other right, power or remedy nor preclude any further or other exercise thereof, or the exercise of any other right, power or remedy, unless such waiver shall be in writing and signed by an authorized representative of the party claimed to have given or consented thereto.

8.4    Governing Law; Jurisdiction. THIS AGREEMENT SHALL BECOME EFFECTIVE ONLY UPON ACCEPTANCE BY G.F. HIGGINS AT ITS

PRINCIPAL PLACE OF BUSINESS AS EVIDENCED BY G.F. HIGGINS' EXECUTION HEREOF. THIS AGREEMENT SHALL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS, U.S.A, WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAW THEREOF. IN THE EVENT THAT G.F. HIGGINS BRINGS ANY ACTION OR PROCEEDING IN CONNECTION HEREWITH IN ANY COURT OF RECORD OF THE COMMONWEALTH OF MASSACHUSETTS, OR THE UNITED STATES IN SUCH COMMONWEALTH, PROCAPUI HEREBY IRREVOCABLY CONSENTS TO AND CONFERS PERSONAL JURISDICTION OF SUCH COURT OVER PROCAPUI. IN ANY SUCH ACTION OR PROCEEDING, PROCAPUI HEREBY WAIVES PERSONAL SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER PROCESS AND AGREES THAT SERVICE THEREOF MAY BE MADE UPON PROCAPUI BY MAILING A COPY OF SUCH SUMMONS, COMPLAINT OR OTHER PROCESS BY UNITED STATES CERTIFIED MAIL, RETURN RECEIPT REQUESTED, POSTAGE PREPAID, TO PROCAPUI AT THE ADDRESS SET FORTH BELOW. PROCAPUI AND G.F. HIGGINS MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION HEREWITH.

8.5   Entire Agreement. This Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof and shall not be modified or amended except by an instrument in writing signed by the parties hereto.

8.6   Separability. Any provision of this Agreement that conflicts with applicable law or is held to be void or unenforceable shall be ineffective to the extent of such conflict, voidness or unenforceability without invalidating the remaining provisions hereof, which remaining provisions shall be enforceable to the fullest extent permitted under applicable law.

8.7   Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

8.8   Gender, Etc. In the case of all terms used in this Agreement, the singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, as the context requires.

8.9   Notice. All notices, demands or other communications required or desired to be given hereunder by any party shall be set forth in writing and shall be validly given or made to the other party if served personally or if mailed, postage prepaid, by United States mail, certified mail-return receipt requested, or by a recognized overnight delivery service. If such notice, demand or other communication is served personally, service shall be conclusively deemed effected at the time of such personal service. If such notice, demand or other communication is given by mail, such service shall be conclusively deemed given seventy-two (72) hours after the deposit thereof in

the United States mail or with the delivery service. Each such notice, demand or communication shall be delivered or addressed to such party's address as set forth below. Any party hereto may change its address for the purpose of receiving notices, demands and other communications as herein provided by delivering written notice thereof in the manner aforesaid to the other party hereto.

| | |
|---|---|
| If to G.F. HIGGINS: | G.F. Higgins, Inc.<br>825 Washington Street<br>Pembroke, Massachusetts, U.S.A. 02359<br>Attention: Mr. Gerald F. Higgins, President |
| With a copy to: | Partridge Snow & Hahn LLP<br>180 South Main Street<br>Providence, Rhode Island 02903<br>Attention: Christopher C. Cassara, Esquire |
| If to PROCAPUI: | Procapui Produtores De Camaroes De Icapui Ltda.<br>C/o Mr. Jozef Anavian<br>190 Walker's Mill Road<br>Livingston, New York 12526 |
| With a copy to: | McLaughlin & Stern, LLP<br>3304 Franklin Avenue<br>P.O. Box 1369<br>Millbrook, New York 12545<br>Attention: Shawn B. Pratt, Esquire |

      8.10    Further Assurances. From time to time hereafter, each party shall, without further consideration, execute, acknowledge and deliver to the other party such further instruments and documents and take such other action as the other party may reasonably request to effect or evidence the transactions contemplated by this Agreement.

      8.11    Interpretation. Should any provision of this Agreement require interpretation in any legal or arbitration proceeding, it is agreed that the court, legal tribunal or arbitrator interpreting or construing the same shall not imply a presumption that the terms hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who itself or through its agent prepared the same, it being agreed that the agents of all parties have participated in the preparation of this Agreement.

      8.12    Independent Contractor. For all purposes, G.F. HIGGINS shall be deemed to be an independent contractor, and not an employee, agent, or partner of, or joint venturer with, PROCAPUI. All sales made by G.F. HIGGINS shall be in its own name and for its own account. G.F. HIGGINS shall have sole control, authority and discretion as to the price, credit terms, payment terms, and other terms and conditions at which G.F. HIGGINS sells products within the Unites States and elsewhere. Under no

circumstances shall either party be, or be deemed to be, a partner or agent of the other party and no employee or agent of either party is intended to be, or shall be deemed to be, an employee or agent of the other party. Neither party shall have any authority to make any representation, warranty, agreement or other undertaking on behalf of the other party, nor to bind the other party in any manner whatsoever, and neither party shall claim to have such authority or otherwise purport to act on behalf of the other party, without the prior written consent of such other party.

8.13  **Survival**.  All representations, warranties, covenants and agreements of the parties contained herein or made in writing in connection herewith shall survive the execution and delivery of this Agreement.

8.14  **Term and Termination**.  The term of this Agreement shall commence on the date hereof and shall continue until terminated as provided in this Section. Upon the occurrence of an Event of Default, in addition to, and not in limitation of, any other rights and remedies available to G.F. HIGGINS under this Agreement and applicable law, G.F. HIGGINS may terminate this Agreement immediately upon written notice to PROCAPUI. Further, either party may terminate this Agreement, with or without cause, upon not less than one hundred eighty (180) days prior written notice to the other, whereupon any and all amounts due from PROCAPUI to G.F. HIGGINS hereunder, together with all charges, fees and interest accrued thereon, shall become and be immediately due and payable without further presentment, demand, protest or notice of any kind, all of which are hereby expressly waived.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the day and year first written above.

WITNESS:                                                  G.F. HIGGINS, INC.

_____           By: _____
                                                                Gerald F. Higgins
                                                                President

                                                                PROCAPUI PRODUTORES DE CAMAROES DE ICAPUI LTDA.


_____           By: _____
                                                                Jozef Anavian
                                                                President

an employee or agent of the other party. Neither party shall have any authority to make any representation, warranty, agreement or other undertaking on behalf of the other party, nor to bind the other party in any manner whatsoever, and neither party shall claim to have such authority or otherwise purport to act on behalf of the other party, without the prior written consent of such other party.

8.13 **Survival**. All representations, warranties, covenants and agreements of the parties contained herein or made in writing in connection herewith shall survive the execution and delivery of this Agreement.

8.14 **Term and Termination**. The term of this Agreement shall commence on the date hereof and shall continue until terminated as provided in this Section. Upon the occurrence of an Event of Default, in addition to, and not in limitation of, any other rights and remedies available to G.F. HIGGINS under this Agreement and applicable law, G.F. HIGGINS may terminate this Agreement immediately upon written notice to PROCAPUI. Further, either party may terminate this Agreement, with or without cause, upon not less than one hundred eighty (180) days prior written notice to the other, whereupon any and all amounts due from PROCAPUI to G.F. HIGGINS hereunder, together with all charges, fees and interest accrued thereon, shall become and be immediately due and payable without further presentment, demand, protest or notice of any kind, all of which are hereby expressly waived.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the day and year first written above.

WITNESS:                                G.F. HIGGINS, INC.


By: _____
    Gerald F. Higgins
    President

                                        PROCAPUI   PRODUTORES   DE
                                        CAMAROES DE ICAPUI LTDA

By: _____
    Jozef Anavian
    President

12

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF ___Plymouth___

      In ___Pembroke___, in said County, on this 27th day of September, 2002, before me personally appeared Gerald F. Higgins, to me known and known by me to be the President of G.F. Higgins, Inc., and the person executing the foregoing instrument on behalf of G.F. Higgins, Inc., the party executing this instrument, and he acknowledged said instrument by him so executed to be his free act and deed in such capacity and the free act and deed of said G.F. Higgins, Inc.

                                              _/s/ Diane L. Ostrander_
                                              Notary Public
                                              My Commission Expires:

                                                              Diane L. Ostrander
                                                              NOTARY PUBLIC
                                                          My commission expires Feb. 19, 2004

STATE OF NEW YORK
COUNTY OF _____

      In _____, in said County, on this ___ day of September, 2002, before me personally appeared Jozef Anavian, to me known and known by me to be the President of Procapui Produtores De Camaroes De Icapui Ltda., and the person executing the foregoing instrument on behalf of Procapui Produtores De Camaroes De Icapui Ltda., the party executing this instrument, and he acknowledged said instrument by him so executed to be his free act and deed in such capacity and the free act and deed of said Procapui Produtores De Camaroes De Icapui Ltda.

                                              _____
                                              Notary Public
                                              My Commission Expires:

647667_5/2885-1

13

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF _____

In _____, in said County, on this __ day of September, 2002, before me personally appeared Gerald F. Higgins, to me known and known by me to be the President of G.F. Higgins, Inc., and the person executing the foregoing instrument on behalf of G.F. Higgins, Inc., the party executing this instrument, and he acknowledged said instrument by him so executed to be his free act and deed in such capacity and the free act and deed of said G.F. Higgins, Inc.

_____
Notary Public
My Commission Expires:

STATE OF NEW YORK
COUNTY OF New York

In 401 B'way, in said County, on this 7 day of September, 2002, before me personally appeared Jozef Anavian, to me known and known by me to be the President of Procapui Produtores De Camaroes De Icapui Ltda., and the person executing the foregoing instrument on behalf of Procapui Produtores De Camaroes De Icapui Ltda., the party executing this instrument, and he acknowledged said instrument by him so executed to be his free act and deed in such capacity and the free act and deed of said Procapui Produtores De Camaroes De Icapui Ltda.

647667_5/2885-1

_____
Notary Public
My Commission Expires

STANLEY TISCHLER
COMMISSIONER OF DEEDS
CITY OF NEW YORK-NO. 4-3961
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES MAY 1, 200_4_

13