CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

---

THIS MORTGAGE, made the 19th day of September, 2002

BETWEEN

Jozef Anavian, an individual of New York
190 Walkers Mill Road, Germantown, NY 12526

FILED

02 NOV 21   AM 9: 31

COLUMBIA COUNTY
CLERK'S OFFICE

and                                                                              , the mortgagor,

G.F. Higgins, Inc., a Massachusetts corporation
825 Washington Street, Pembroke, Ma 02359

                                                                              , the mortgagee,

WITNESSETH, that to secure the payment of an indebtedness in the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00), lawful money of the United States, to be paid by the mortgagor to the mortgagee

according to a certain bond, note or obligation bearing even date herewith, the mortgagor hereby mortgages to the mortgagee

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Livingston, Columbia County, State of New York, as more particularly described on Exhibit A attached hereto and made a part hereof.

Recorded by:
Sneeringer Monahan Provost
Redgrave Title Agency, Inc.
800 724-7856 Title No.: M035010

EXHIBIT F

TOGETHER with all right, title and interest of the mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises;

TOGETHER with all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said premises, together with any and all replacements thereof and additions thereto;

TOGETHER with all awards heretofore and hereafter made to the mortgagor for taking by eminent domain the whole or any part of said premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said mortgagor hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

AND the mortgagor covenants with the mortgagee as follows:

1.  That the mortgagor will pay the indebtedness as hereinbefore provided.

2.  That the mortgagor will keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee; that he will assign and deliver the policies to the mortgagee; and that he will reimburse the mortgagee for any premiums paid for insurance made by the mortgagee on the mortgagor's default in so insuring the buildings or in so assigning and delivering the policies.

3.  That no building on the premises shall be altered, removed or demolished without the consent of the mortgagee.

4.  That the whole of said principal sum and interest shall become due at the option of the mortgagee: immediately after default in the payment of any installment of principal or of interest; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the mortgagee for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided.  An assessment which has been made payable in installments at the application of the mortgagor or lessee of the premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first installment becomes due or payable or a lien.

5.  That the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

6.  That the mortgagor will pay all taxes, assessments, sewer rents or water rates, and in default thereof, the mortgagee may pay the same.

7.  That the mortgagor within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any offsets or defenses exist against the mortgage debt.

8.  That notice and demand or request may be in writing and may be served in person or by mail.

9.  That the mortgagor warrants the title to the premises.

10. That the fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the mortgagor, within thirty days after notice and demand, will keep the premises insured against war risk and any other hazard that may reasonably be required by the mortgagee.  All of the provisions of paragraphs No. 2 and No. 4 above relating to fire insurance and the provisions of Section 254 of the Real Property Law construing the same shall apply to the additional insurance required by this paragraph.

11. That in case of a foreclosure sale, said premises, or so much thereof as may be affected by this mortgage, may be sold in one parcel.

12. That if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor, together with interest thereon at the rate of six per cent per annum, and any such sum and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in or claim upon said premises attaching or accruing subsequent to the lien of this mortgage, and shall be deemed to be secured by this mortgage.  In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

13. That the mortgagor hereby assigns to the mortgagee the rents, issues and profits of the premises as further security for the payment of said indebtedness, and the mortgagor grants to the mortgagee the right to enter upon and to take possession of the premises for the purpose of collecting the same and to let the premises or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. This assignment and grant shall continue in effect until this mortgage is paid.  The mortgagee hereby waives the right to enter upon and to take possession of said premises for the purpose of collecting said rents, issues and profits, and the mortgagor shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in this mortgage, and agrees to use such rents, issues and profits in payment of principal and interest becoming due on this mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said premises, but such right of the mortgagor may be revoked by the mortgagee upon any default, on five days' written notice.  The mortgagor will not, without the written consent of the mortgagee, receive or collect rent from any tenant of said premises or any part thereof for a period of more than one month in advance, and in the event of any default under this mortgage will pay monthly in advance to the mortgagee, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of said premises or of such part thereof

as may be in the possession of the mortgagor, and upon default in any such payment will vacate and surrender the possession of said premises to the mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.

14.  That the whole of said principal sum and the interest shall become due at the option of the mortgagee: (a) after failure to exhibit to the mortgagee, within ten days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments; or (b) after the actual or threatened alteration, demolition or removal of any building on the premises without the written consent of the mortgagee; or (c) after the assignment of the rents of the premises or any part thereof without the written consent of the mortgagee; or (d) if the buildings on said premises are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the premises within three months from the issuance thereof; or (f) if on application of the mortgagee two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the premises; or (g) in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal property at least equal in quality and condition to those replaced, free from chattel mortgages or other encumbrances thereon and free from any reservation of title thereto; or (h) after thirty days' notice to the mortgagor, in the event of the passage of any law deducting from the value of the land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes; or (i) if the mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this mortgage.

15.  That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

16.  This mortgage is subject to and subordinate to the first priority mortgage granted by mortgagor to First Union National Bank in the principal amount not to exceed $606,000 and recorded in the Columbia County Registry of Deeds at Book 398, Page 999.  This first mortgage in favor of First Union National Bank may be refinanced, consolidated, modified, replaced, and/or assigned at any time without restriction other than the amount of the first priority lien shall not exceed $606,000.  In the event said first mortgage in favor of First Union National Bank is refinanced, consolidated, modified, replaced, and/or assigned, mortgagee agrees to promptly execute and deliver a subordination agreement in form and substance reasonably acceptable to mortgagee and its counsel upon reasonable request of mortgagor.

\*

        This mortgage may not be changed or terminated orally.  The covenants contained in this mortgage shall run with the land and bind the mortgagor, the heirs, personal representatives, successors and assigns of the mortgagor and all subsequent owners, encumbrancers, tenants and subtenants of the premises, and shall enure to the benefit of the mortgagee, the personal representatives, successors and assigns of the mortgagee and all subsequent holders of this mortgage.  The word "mortgagor" shall be construed as if it read "mortgagors" and the word "mortgagee" shall be construed as if it read "mortgagees" whenever the sense of this mortgage so requires.

IN WITNESS WHEREOF, this mortgage has been duly executed by the mortgagor.


\*17.   This is a Credit Line Mortgage which secures indebtedness under a note, credit agreement, or other financing agreement that reflects the fact that the parties reasonably contemplate entering into a series of advances, or advances, payments and readvances, and that limits the aggregate amount at any time outstanding to the maximum amount specified in this mortgage.


IN PRESENCE OF:

_____                    _____
STANLEY TISCHLER, AS WITNESS ONLY                  Jozef Anavian, individually

                                                   _____

Exhibit A

# Chicago Title Insurance Company

*Issued by*

# SNEERINGER MONAHAN PROVOST REDGRAVE

## TITLE AGENCY, INC.

*ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Livingston, County of Columbia and State of New York more particularly described as follows:*

*BEGINNING at a point on the westerly presumed road line of Walkers Mill Road at the southeasterly corner of this lot. Being the northeasterly corner of lands now or formerly of Rockefeller as shown on file map 94-0262. Referenced as being located S 64° 10' 00" W 25.81 feet from the southwesterly corner of a bridge on Walkers Mill Road.*

*PROCEED along the lands of Rockefeller on the south and this lot on the north along the approximate top of a bank overlooking a pond on this lot.*

*THENCE North 50° 57 minutes 30 seconds West for a distance of 37.75 feet to an iron pin set*

*THENCE North 50° 57 minutes 30 seconds West for a distance of 73.31 feet to a point*

*THENCE North 28° 15 minutes 35 seconds West for a distance of 28.70 feet to a point*

*THENCE North 14° 00 minutes 25 seconds West for a distance of 21.29 feet to a point*

*THENCE South 66° 26 minutes 35 seconds West for a distance of 11.79 feet to a point*

*THENCE North 46° 45 minutes 35 seconds West for a distance of 16.55 feet to an iron pin set*

*THENCE North 42° 14 minutes 05 seconds West for a distance of 173.63 feet to an iron pin set*

*THENCE North 38° 37 minutes 05 seconds West for a distance of 63.41 to a point*

*THENCE North 53° 40 minutes 40 seconds West for a distance of 34.89 feet to an iron pin set*

*THENCE North 61° 38 minutes 30 seconds West for a distance of 28.79 feet to a point*

*THENCE North 68° 21 minutes 35 seconds West for a distance of 65.38 feet to an iron pin set*

*THENCE North 52° 40 minutes 15 seconds West for a distance of 66.48 feet to an iron pin set*

*THENCE North 45° 30 minutes 20 seconds West for a distance of 107.46 feet to an iron pin set*

*THENCE North 30° 27 minutes 15 seconds West for a distance of 58.33 feet to an iron pin set*

- CONTINUED -

Description - Page 1
Order No. M035010
Date: June 20, 2002

*Chicago Title Insurance Company*

*Issued by*

# SNEERINGER MONAHAN PROVOST REDGRAVE
## TITLE AGENCY, INC.

THENCE North 17° 32 minutes 30 seconds West for a distance of 138.85 feet to a point in the center of a creek. Here continue along the center of the creek

THENCE South 48° 27 minutes 05 seconds West for a distance of 48.70 feet to a point

THENCE South 05° 10 minutes 10 seconds East for a distance of 67.62 feet to a point

THENCE South 15° 01 minutes 05 seconds East for a distance of 80.75 feet to a point

THENCE South 11° 53 minutes 30 seconds West for a distance of 39.95 feet to a point

THENCE South 46° 06 minutes 35 seconds West for a distance of 44.70 feet to a point

THENCE North 80° 41 minutes 40 seconds West for a distance of 60.38 feet to a point

THENCE North 69° 51 minutes 40 seconds West for a distance of 119.43 feet to a point

THENCE North 80° 03 minutes 30 seconds West for a distance of 147.57 feet to a point

THENCE North 57° 36 minutes 05 seconds West for a distance of 124.24 feet to a point on the easterly line of lands now or formerly of Klein Kill Fruit Farm as described in Liber 442 Page 310. Continue along the lands of Klein Kill Fruit Farm along the line of a wire fence.

THENCE North 06° 17 minutes 10 seconds East for a distance of 28.11 feet to a point

THENCE North 14° 52 minutes 30 seconds West for a distance of 238.88 feet to an angle in the fence

THENCE North 25° 38 minutes 50 seconds East for a distance of 412.47 feet to a wire fence corner.

THENCE South 62° 42 minutes 30 seconds East for a distance of 552.77 feet to a post in the corner of the wire fence

THENCE North 45° 45 minutes 30 seconds East for a distance of 270.08 feet to a corner of wire fence and beginning on a stone wall. Continue along the stone wall

THENCE North 43° 41 minutes 50 seconds East for a distance of 285.38 feet to the lands now or formerly of Bohac as described in Liber 787 Page 169. This point is referenced as being located N 73° 57' W 1.8 feet from a pipe found. Continue along the lands of Bohac

THENCE South 73° 57 minutes 05 seconds East for a distance of 319.84 feet to a pipe found at lands now or formerly of McKinney as described in Liber 874 Page 313. Continue along the lands of McKinney on the east and north and this lot on the west and south.

– CONTINUED –

Description - Page 1
Order No. M035010
Date: June 20, 2002

# *Chicago Title Insurance Company*
### *Issued by*
## SNEERINGER MONAHAN PROVOST REDGRAVE
### *TITLE AGENCY, INC.*

THENCE South 20° 49 minutes 25 seconds West for a distance of 554.77 feet to a point

THENCE South 22° 47 minutes 55 seconds West for a distance of 113.38 feet to a point

THENCE South 17° 27 minutes 55 seconds West for a distance of 57.27 feet to a point

THENCE South 20° 27 minutes 20 seconds West for a distance of 195.74 feet to a point

THENCE South 50° 53 minutes 05 seconds East for a distance of 180.05 feet to a point

THENCE South 50° 53 minutes 05 seconds East for a distance of 206.71 feet to a point on the northwesterly line of Walkers Mill Road.  Continue along the northwesterly and westerly presumed road line.

THENCE South 65° 55 minutes 10 seconds West for a distance of 113.61 feet to a point

THENCE along a curve to the left having a radius of 300.00 feet and an arc length of 138.55 feet, being subtended by a chord of South 62° 41 minutes 25 seconds West for a distance of 137.32 feet to the point or place of BEGINNING.