UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
**PROCAPUI-Productores de Camaroes de Icapui Ltda.,**

                           Plaintiffs,

       -against-                                         **Case No.**  07 Civ 6627 (BSJ)

**G.F. HIGGINS INC., THERESA HIGGINS as
Executrix of THE ESTATE OF GERALD
FRANCIS HIGGINS, THOMAS HIGGINS,
ROBERT HIGGINS,**

                           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, by its attorneys, De Maio & Hughes, LLC. , for its First Amended Complaint herein filed pursuant to this Court's Order dated January 11, 2008, complaining of defendants, alleges:

### JURISDICTION

1. Jurisdiction herein is predicated upon Title 18, United States Code, Section 1964, and upon Title 28, United States Code, Sections 1331 and Title 28, United States Code Section 1332 and the principles of pendent jurisdiction.

### VENUE

2. Venue herein is predicated upon Title 18, United States Code, Section 1965 and Title 28 United States Code, Section 1391.

### PLAINTIFF

3. Plaintiff, **Pracapui- Productores de Camaroes de Icapui Ltda**.("Pracapui"), is a

corporation organized and existing under and by virtue of the laws of the Republic of Brazil with its principal place of business in Icapui, Brazil.

## DEFENDANTS AND CO-RACKETEERS

4. Upon information and belief, Co-Racketeer, **MARCIAL GERALD LAYANI ("Layani")**, was at all times relevant hereto, a citizen of the United States and a resident of the State of New York, Southern District of New York. Upon information and belief, Marcial Gerald Layani is now located in Toulouse, France being a fugitive from justice under the laws of the Republic of Brazil among other countries.

5. Upon information and belief, a warrant has been issued by the Courts of the Republic of Brazil for the arrest and incarceration of **MARCIAL GERALD LAYANI** for acts, a portion of which are the subject matter of this Amended Complaint.

6. Defendant Co-Racketeer, **G.F. HIGGINS, INC**. ("**Higgins, Inc**.), upon information and belief, is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business at 825 Washington Street, Pembroke, Mass.

7. Defendant Co-Racketeer, **THE ESTATE OF GERALD FRANCIS HIGGINS**, upon information and belief, is the estate of Gerald Higgins, deceased, who at the time of his death was a citizen and resident of the State of Massachusetts and was the President and a principal shareholder of G.F. Higgins, Inc. Defendant **Theresa Higgins** is named herein by virtue of her representative capacity as Executrix of the Estate of Gerald Francis Higgins.

8. Defendant Co-Racketeer, **THOMAS HIGGINS**, upon information and belief, is a citizen and resident of the State of Massachusetts and was, at all times relevant hereto, a principal shareholder and officer of G.F. Higgins, Inc.

9. Defendant Co-Racketeer, **ROBERT HIGGINS**, upon information and belief, is a citizen and resident of the State of Massachusetts and was a principal shareholder and Treasurer of G.F. Higgins, Inc.

10. Upon information and belief, the judicial and executory agencies of the Republic of Brazil are currently investigating **G.F. HIGGINS, INC., ROBERT HIGGINS AND THOMAS HIGGINS** for acts arising, in part, from the acts complained of herein.

## FACTS

11. In or about 1999, Layani induced Jozef Anavian ("Anavian"), his uncle, to invest in Brazil for the purpose of creating and maintaining company for the cultivation and sale and export of shrimp.

12. As part of the venture, Anavian purchased a parcel of property in Icapui, Brazil.

13. Anavian requested Layani to form a corporation under the laws of the Republic of Brazil for the purpose of furthering the creation, development and maintenance of the shrimp farm and the company for the sale and export of shrimp and lobster from Brazil.

14. Layani, using his own counsel in Brazil, formed Procapui.

15. Anavian made a capital investment in Procapui providing it with the funds for the development of the land into a viable shrimp farm and for the purpose of further and advancing the business of Procapui.

16. As a result thereof, Procapui became a viable wholesaler and exporter of principally shrimp and lobster in and from the Republic of Brazil.

17. In or about 2000, Layani and Noel Blackman and, upon information and belief, Richard Rubin, acting in concert, introduced Procapui to G.F. Higgins. Inc. ostensibly for the purpose of selling lobster and shrimp to G.F. Higgins, Inc.

18. At that time, Anavian was informed by Layani and G.F. Higgins, Gerald Higgins, Robert Higgins and Thomas Higgins ("the Higgins defendants") that the relationship between Procapui and G.F. Higgins was arms length.

19. In fact, the relationship was a contrivance to illegally and fraudulently divert the assets and profits of Procapui from Procapui to the Higgins defendants and Layani.

20. Layani and the Higgins defendants devised a scheme whereby, *inter alia*, Procapui would sell shrimp and lobster to G.F. Higgins, Inc. at unreasonable and fraudulent discounts in return for the agreement of the Higgins defendants to divert payments for said products away from the accounts of Procapui and into such other accounts as Layani would designate.

21. In furtherance of said scheme, Layani and the Higgins defendants, using the mails and the wires, entered into agreements which were not in the interests of Procapui and conducted the purchase and sale of the goods and products of Procapui for their own fraudulent purposes in derogation of the rights of Procapui.

22. In or about early 2004, upon discovery of said scheme, Layani for the first time disclosed the nature of the scheme and executed a statement before a Judicial Official of the Republic of Brazil stating:

> I, Marcial Gerald Layani, do make the following declarations.
> On June 29";2004 (sic.) I have declared that I personally have diverted funds, profits and capital, from Procapui Ltda, Brasil. This process was partially done with the help of shareholder officers of G.F.Higgins Pembroke U.S.A. Specifically Gerry Higgins and Thomas Higgins.
> Our official invoices for shipments of lobsters and shrimps from Procapui

>Ltda Brasil; were approximately 20-50% less than actual real value of "same day price" of the "same type of goods". This extra 20-50% was shared between Higgins and myself, Marcial Gerald Layani.
>
>Thomas Higgins has full knowledge of this fact. Plus the facts such as, we were shipping illegal size lobsters (sizes 2 & 3) from Brazil. (the shared profits were very high on these illegal lobsters).And also both Thomas and Gerry Higgins were well aware that the money send (sic.) to various accounts-other than Procapui Ltda, in Brazil-;were for our mutual benefits and for our illegal activities. And the money send (sic.) had absolutely nothing to do with Procapui Ltda., and with personal guarantee of Jozef Anavian.
>
>As a matter of record, G.F. Higgins owes Procapui Ltda.. Brasil, over $1,000,000.00 for the actual shipments. Plus he owes Procapui Ltda ., and its shareholders one half of all the illegitimate discounts that they have received.
>
>All these were done with total secrecy from the shareholders of Procapui Ltda., shareholders .None of the members of my family or the shareholders of Procapui Ltda., were aware of any of these illegal activities.
>
>Witnesses

A copy of said statement is annexed hereto and incorporated herein (Exhibit 1).

23. In furtherance of said scheme, and without the knowledge or consent of Anavian or Procapui, Layani and the Higgins defendants, using the mails and the wires, throughout the period from 2001 through 2004, as more particularly set forth below, acting in concert, jointly and severally with full knowledge of the facts:

>a.. contrived to cause the merchandise of Procapui to be sold to G.F. Higgins, Inc. for unreasonable and illegal discounts which were so substantial that Procapui was not able to derive a reasonable profit therefrom, and

>b. in consideration of the fraudulent discounts, continued the fraudulent scheme by transferring sums in payment for the Procapui invoices to Banks and payees which were not either Procapui or the designated Bank of Procapui in violation of the payment instructions which accompanied each invoice, and in violation of the exchange control regulations of the United States and the Republic of Brazil, and

  c. diverted payments due to Procapui from Procapui and into the private and personal accounts of G.F. Higgins, Gerald Higgins, Thomas Higgins and Layani, and

  d. altered the books and records of Procapui to erase, reduce, eliminate or otherwise obfuscate accounts due and receivable to Procapui from G.F. Higgins, Inc., and

  e. made payments to Procapui through illegal and unauthorized intermediaries, contrary to the laws of Brazil and of the United States which then further diverted the proceeds of those payments away from Procapui and to the Higgins defendants and Layani, and

  f. contrived to have Procapui engage in the unlawful sale of lobster which did not conform legal lobster either under the laws of the United States or those of Brazil.

 24. In furtherance of this continuing scheme, on or about September 19, 2002, the Higgins defendants, acting in concert with Layani, contrived to cause Procapui to enter into a "working capital" and "line of credit" agreement whereby G.F. Higgins was to advance funds to Procapui and be repaid either in cash or in merchandise delivered to it by Procapui.

 25. In reality this agreement was simply a further effort and device to divert the assets of Procapui to the Higgins defendants and Layani and others.

 26. In furtherance of this scheme, Layani and the Higgins defendants, acting in concert, contrived to take a mortgage on property of Anavian located within the State of New York as "security" for the full and faithful performance of the "working capital" and "line of credit" agreement.

27. At all times during the relationship between G.F. Higgins and Procapui, Layani and the Higgins defendants were aware that they, acting in concert, were managing the affairs of Procapui in a notorious and fraudulent manner designed solely to enrich themselves at the expense of Procapui and its shareholders.

28. Anavian was unaware of the activities of Layani and the Higgins defendants.

29. For a continuous period from in or about 2000 through the end of the relationship in or about early 2005, Layani and the Higgins defendants contrived to defraud Procapui and embezzle its assets and profits and transfer those assets and profits to themselves.

30. There is currently due and owing to Procapui from G.F. Higgins the sum of approximately $1,500,000 as calculated by the Central Bank of Brazil representing the balance of the unpaid, underbilled invoices.

31. No part of said $1,500,000 has been repaid though duly demanded.

32. Layani and the Higgins defendants sought to evade and avoid the obligations of G.F. Higgins by making purported payments to Procapui not in accordance with the payee designated by the invoices and shipping documents but rather to unauthorized and illegal third-parties from whom Layani and the Higgins defendants would further divert the proceeds to themselves.

33. The payments so made were in direct violation of the laws of the United States and the laws of the Republic of Brazil.

## THE RACKETEERING ENTERPRISE

34. This is an action brought pursuant to the Racketeer Influenced Corrupt Organizations Act as defined in 18 U.S.C. §1964. At all times relevant hereto, in the Southern District of New

York and elsewhere, Layani and the Higgins defendants and others associated with the organized crime, have constituted an enterprise, that is a legal entity and group of entities and individuals associated in fact as defined in 18 U.S.C. §1964, which engaged in and whose activities affected and which continues to engage in and continues to affect interstate commerce.

35. At all times relevant hereto, in the Southern District of New York and elsewhere, Layani, the Higgins defendants and others associated with the organized crime have unlawfully, wilfully and knowingly engaged in a pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961 in that said defendants, acting in concert, through the commission of two or more acts prohibited by the statute, more particularly set forth below, engaged in a pattern of racketeering activity and both directly and indirectly conducted and participated in a racketeering enterprise the activities of which affected interstate commerce to the detriment of plaintiff.

36. At all times relevant hereto, in the Southern District of New York and elsewhere, Layani and the Higgins defendants and others associated with organized crime, constituted and enterprise which is engaged in and whose activities affect interstate commerce, and defendants together with the co-racketeers and others known and unknown, have unlawfully, wilfully and knowingly conducted or participated, directly and indirectly, in the conduct complained of through a pattern of racketeering acts in violation of Title 18, United States Code, Section 1962(c).

37. The racketeering enterprise which defendants, acting in concert, formed and continued was called G.F. Higgins - Procapui Joint Venture by which defendants continued the activities more particularly set forth below.

38. In addition to those activities which are set forth and described in Exhibit 1 annexed hereto and incorporated herein, Layani and the Higgins defendants and others associated with the organized crime acting individually and in concert with the co-racketeers, and others, unlawfully,

wilfully and knowingly engaged in a pattern of racketeering activity, as defined in 18 U.S.C. §1961, by committing the following specific acts:

**Racketeering Act One**: (mail fraud)

    39. Plaintiff repeats and realleges paragraphs 1 through 38 hereof.

    40. Commencing in or about 2001 until late 2004, Layani, acting in concert with Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins engaged in a pattern of using the mails to transmit under billed invoices of Procapui to G.F. Higgins allegedly representing the arms length sale of goods by Procapui to G.F. Higgins.

    41. All of the invoices sent with the shipments were under billed in accordance with the scheme and did not reflect arms length transactions.

    42. Annexed hereto and incorporated herein (Exhibit 2) is a listing of each Procapui invoice sent by Layani to the Higgins defendants via the mails. The date and amount of each such invoice is set forth on Exhibit 2.

    43. All of the invoices transmitted between defendants, each of which discovered to date is set forth on Exhibit 2, did not reflect the fair and reasonable market value of the goods shipped.

    44. Defendants exchanged said invoices with full knowledge that they were under billed, bogus and fraudulent and for the sole material purpose of diverting funds away from Procapui and to themselves.

    45. Layani, acting in concert with Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins engaged in a pattern of using the mails for the purpose of sending and receiving these invoices, with full knowledge that they were false and fraudulent, did not reflect fair market

value and diverted the sums due thereon from Procapui to third parties known only to Layani.

46. Purportedly in accordance with the "Working Capital" and "Line of Credit Agreements", the Higgins defendants wired funds purportedly to or for the benefit of Procapui and the Higgins defendants maintained on the books and records of G.F. Higgins, Inc. and its bank Sovereign Bank, an account purportedly tracking each such advance.

47. However, when the Higgins defendants received merchandise from Procapui in reduction of the advances, the Higgins defendants credited Procapui solely with the under billed value of the merchandise and not the true value thereof.

48. As a result thereof, the Higgins defendants claimed a balance due it from Procapui which was false and fraudulent.

**Racketeering Act Two (wire fraud)**

49. Plaintiff repeats and realleges paragraphs 1 through 48 hereof.

50. In addition to the under billed and under valued invoices, Layani and the Higgins defendants contrived to have a series of duplicate invoices sent from procapui to the Higgins defendants.

51. These duplicate invoices bore the suffix "T" and are referred to as "the T invoices".

52. The "T" invoices are listed in Exhibit 2 under the column "T Invoice #"; the date of each such invoice is listed under the column "T Date", and the amount of each such invoice is listed under "Slotted".

53. There is a total, discovered to date, of 44 "T" invoices over the period from August 30,

2001 through July 7, 2003.

54. The "T" invoices were exchanged among defendants for the purpose of defrauding Procapui and to obtain its money and property through the use of the interstate wires.

55. The "T" invoices were exchanged by defendants through the wires and not through the normal channels accompanying the shipments as part of and in furtherance and execution of the fraud and were a material and essential element of the fraud.

56. In addition, defendants contrived to cause the "T" invoices to not be registered with the Central Bank of Brazil which governs all import/export transactions from or to the Republic of Brazil and which acts as a clearing house for all payments made in accordance with any such invoice.

57. Upon information and belief, the purpose of the "T" invoices was to bill the Higgins defendants for illegal and undersized lobsters which were illegally included in the containers which contained the originally invoiced merchandise.

58. Since the original invoices did not and could not list on the Bill of Lading illegal and undersized lobsters, Layani and the Higgins defendants, upon information and belief, simply packed said lobsters in the containers and then transmitted an unregistered and unapproved invoice to cover the additional goods.

59. Layani and the Higgins defendants are currently under investigation in the Republic of Brazil regarding the illegal lobsters and the "T" invoices.

**Racketeering Act Three:** (wire fraud)

60. Plaintiff repeats and realleges paragraphs 1 through 59 hereof.

61. For a continuous period from 2001 through 2004, Layani and the Higgins defendants, acting in concert, caused approximately 265 wire transfers to be sent either to the bank of Procapui or to other recipients ostensibly for the benefit of Procapui.

62. Annexed hereto and incorporated herein (Exhibit 3) is a list of each such wire transfer, the date of each transfer and the amount of each transfer.

63. Each such wire transfer was ostensibly made pursuant to the "Working Capital" and "Line of Credit" agreements between G.F. Higgins, Inc. and Procapui.

64. However, the Higgins defendants did not transfer all of said funds to Procapui's bank.

65. Instead, the Higgins defendants, in concert with Layani, made a total of 52 transfers to Star Financing Corp. and to Tansy, S.A. and not to the registered accounts of Procapui. In addition, the Higgins defendants, acting in concert with Layani, made transfers to other third-parties set forth on Exhibit 3, ostensibly for Procapui which had nothing whatsoever to do with Procapui. The third-party payees, date of transfer, amount of transfer are set forth in Exhibit 3.

66. Annexed hereto and incorporated herein (Exhibit 4) is a list of each transfer to Star Financing Corp and Tansy, SA. and the date and amount of each such transfer.

67. Said wire transfers were made for the specific purpose of diverting the funds from Procapui to Layani in consideration of the sale of the shrimp and lobster to G.F. Higgins, Inc., Gerald Higgins, Thomas Higgins and Robert Higgins at the unreasonable and illegal discounts as set forth above.

68. Each such transfer was made in violation of the rights of Procapui and in direct violation of the import/export and exchange control regulations of the United States and the Republic of Brazil.

## AS AND FOR A FIRST CLAIM FOR RELIEF

69. Plaintiff repeats and realleges paragraphs 1 through 68 hereof.

70. Plaintiff was made the subject of mail fraud.

71. Defendants, individually and acting in concert have engaged in conduct which violates the provisions of 18 U.S.C., Section 1962(c).

72. As a result thereof, plaintiffs have been damaged in an amount not yet fully determined but in no event less than $7,000,000.

## AS AND FOR A SECOND CLAIM FOR RELIEF

73. Plaintiff repeats and realleges paragraphs 1 through 68 hereof.

74. Plaintiff was made the subject of wire fraud

75. As a result of the above, defendants, individually and acting in concert have engaged in conduct which violates the provisions of 18 U.S.C. §1962(c).

77. As a result thereof, plaintiffs have been damaged in the amount not yet fully determined but in no event less than $7,000,000.

## AS AND FOR A THIRD CLAIM FOR RELIEF

78. Plaintiff repeats and realleges paragraphs 1 through 68 hereof.

79  Defendants, acting in concert, made representations to plaintiff, or failed to make representations to plaintiff which should have been made to make the representations made truthful, which at the time, defendants, acting in concert, knew to be false and knew that plaintiff would rely upon to its detriment.

80.  Plaintiff relied upon said misrepresentations to its detriment.

81.  As a result thereof, plaintiff has been damaged in an amount not yet fully determined but in no event less that $7,000,000.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

82.  Plaintiff repeats and realleges paragraphs 1 through 71 hereof.

73.  Pursuant to an agreement with G.F. Higgins, Inc., plaintiff sold and delivered goods to G.F. Higgins.

84.  G.F. Higgins has failed and refused to pay for said goods pursuant to said agreement.

85.  As a result thereof, and pursuant to the contract, there is currently due and owing to plaintiff the sum of approximately $1,500,000 together with interest no part of which has been paid through duly demanded.

**WHEREFORE**, plaintiff demands judgment against defendants, as follows:

1.  On its First Claim for Relief judgment in the amount of $7,000,000 together with treble damages and interest, and

2.  On its Second Claim for Relief judgment in the amount of $7,000,000 together with

treble damages and interest, and

    3.  On its Third Claim for Relief, judgment in the amount of $7,000,000 together with treble damages and interest, and

    4.  On its Fourth Claim for Relief, judgment in the amount of $1,500,000 together with interest

together with costs and attorneys fees herein.

Dated:
New York, New York
February 20, 2008

                                                          _____
                                                          Luigi P. De Maio (LPD 4175)
                                                          **DE MAIO & HUGHES, LLC.**
                                                          Attorneys for Plaintiff
                                                          330 East 30th Street
                                                          New York, NY 10016
                                                          (212)888-8300