UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
PROCAPUI-Productores de Camaroes de Icapui Ltda.,

                            Plaintiffs,
    -against-                                 Case No.  07 Civ 6627 (BSJ)

G.F. HIGGINS INC.,  THERESA HIGGINS as
Executrix of  THE ESTATE OF GERALD
FRANCIS HIGGINS, THOMAS HIGGINS,
ROBERT HIGGINS,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT AND FOR OTHER RELIEF**

**Preliminary Statement**

      Plaintiff submits this Memorandum in opposition to defendants' motion dated March 6, 2008 seeking the following relief:

    a. an order dismissing the Complaint on the alleged grounds that:
        i.  failure to state a claim for relief, and
        ii.  failure to allege the claims with particularity, and
        iii.  plaintiff lacks standing to bring the Amended Complaint, and
        iv.  plaintiff has "waived" or "condoned" the actions of the Higgins defendants

    b. an order dismissing the Complaint on the alleged ground that Marcial Layani is a citizen of the United States

    c. alternatively, an order directing a more definite statement of the claims alleged,

  d. alternatively dismissing the Amended Complaint as to all claims which could have been discovered prior to July 24, 2003 as being allegedly barred by the statute of limitations,

  e. an order declaring that parties named in the original complaint are still parties to the Amended Complaint,

  f. a stay of discovery pending determination of the motions,

  g. an order of abstention

  Plaintiff will deal with each branch of defendants' motion separately.

## Procedural History

  As this Court is aware, the original Complaint herein was filed on July 24, 2007.

  Absent a stay of discovery, some limited discovery ensued supervised by Magistrate Judge Peck.

  Defendants had moved to dismiss the original complaint under Rules 9 and 12 F.R.Civ. P. and by order dated January 11, 2008, this Court granted said motion to the extent of ordering plaintiff to file an Amended Complaint which addressed defendants' concerns with the original complaint. This Court also "stayed" this action as to all further proceedings of any nature whatsoever pending the filing of the Amended Complaint.

  This Court's order on January 11, 2008 also expressed some concern over the subject matter jurisdictional status of the action, further discussed below, insofar as Marcial Layani had provided defendants with an affidavit that he was a citizen of the United States[1].

---

[1] Interestingly, the relation between Layani and the Higgins defendants appears to be continuing against the interest of his own company, as further discussed below.

## ALLEGED FAILURE OF THE AMENDED COMPLAINT TO ALLEGE WITH PARTICULARITY

It is respectfully submitted that the Amended Complaint could not allege with any more particularity each and every element and aspects of the claims made against the Higgins defendants setting forth the date, precise amount of each transaction, nature of each transaction, date and amount of each transfer, recipient, amount and purpose of each such transfer all in furtherance of a scheme.

The Amended Complaint also sets forth and incorporates the statement made under oath by Gerald Marcial Layani that he was engaged in a fraudulent and actionable scheme with the Higgins defendants to sell the products of Procapui to them at illegal and extraordinary discounts and then share those discounts with them. The statement states:

> I, Marcial Gerald Layani, do make the following declarations.
> On June 29";2004 (sic.)[2] I have declared that I personally have diverted funds, profits and capital, from Procapui Ltda, Brasil. This process was partially done with the help of shareholder officers of G.F.Higgins Pembroke U.S.A. Specifically Gerry Higgins and Thomas Higgins.
>
> Our official invoices for shipments of lobsters and shrimps from Procapui Ltda Brasil; were approximately 20-50% less than actual real value of "same day price" of the"same type of goods". This extra 20-50% was shared between Higgins and myself, Marcial Gerald Layani.
> Thomas Higgins has full knowledge of this fact. Plus the facts such as, we were shipping illegal size lobsters (sizes 2 & 3) from Brazil. (the shared profits were very high on these illegal lobsters). And also both Thomas and Gerry Higgins were well aware that the money send (sic.) to various accounts-other than Procapui Ltda, in Brazil-;were for our mutual benefits and for our illegal activities. And the money send (sic.) had absolutely nothing to do with Procapui Ltda., and with personal guarantee of Jozef Anavian.
> As a matter of record, G.F. Higgins owes Procapui Ltda.. Brasil, over $1,000,000.00 for the actual shipments. Plus he owes Procapui Ltda ., and its shareholders one half of all the illegitimate discounts that they have received.
> All these were done with total secrecy from the shareholders of Procapui Ltda., shareholders .None of the members of my family or the shareholders of Procapui Ltda., were aware of any of these illegal activities.

---

[2]Actually dated 2005.

Witnesses

Defendants are indeed disingenuous in complaining that the Amended Complaint does not fairly and reasonably particularize the acts complaint against them. It is apparent that the gravamen of the Amended Complaint, fully set forth in the sworn statement[3] of its former President, is that the Higgins defendants and Layani were involved in a scheme whereby Procapui was used to sell shrimp and lobster to Higgins at unreasonable and unfair discounts and then have those discounts shared between them. In furtherance of that scheme, Layani and Higgins contrived to have a "Working Capital" and "Line of Credit" Agreement whereby Higgins would make "loans" to Procapui to be repaid by either cash or product.

However, the real purpose of that agreement was to arrange for the sale of goods at unfair, illegal and fraudulent discounts and then divert the "loans" from the accounts of Procapui to the purposes of Higgins and Layani. The Amended Complaint alleges:

> 25. In reality this agreement was simply a further effort and device to divert the assets of Procapui to the Higgins defendants and Layani and others.

The Amended Complaint sets forth the precise nature of the scheme, how it was carried out and the dates of each and every transaction alleging, in pertinent part:

> 40. Commencing in or about 2001 until late 2004, Layani, acting in concert with Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins engaged in a pattern of using the mails to transmit under billed invoices of Procapui to G.F. Higgins allegedly representing the arms length sale of goods by Procapui to G.F. Higgins.
>
> 41. All of the invoices sent with the shipments were under billed in accordance with the scheme and did not reflect arms length transactions.

---

[3] Interestingly, defendants challenge this statement as a "forgery". Firstly, it was executed and authenticated by an official of the Brazilian government. Secondly, under Brazilian law it is "self-sponsoring" and "undeniable" after execution. Thirdly, as more fully discussed below, the allegation that it is a forgery, obviously stemming from Layani himself, is further evidence that the incestuous relationship between Higgins and Layani continues to date.

42. Annexed hereto and incorporated herein (Exhibit 2)[4] is a listing of each Procapui invoice sent by Layani to the Higgins defendants via the mails. The date and amount of each such invoice is set forth on Exhibit 2.

43. All of the invoices transmitted between defendants, each of which discovered to date is set forth on Exhibit 2, did not reflect the fair and reasonable market value of the goods shipped.

44. Defendants exchanged said invoices with full knowledge that they were under billed, bogus and fraudulent and for the sole material purpose of diverting funds away from Procapui and to themselves.

45. Layani, acting in concert with Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins engaged in a pattern of using the mails for the purpose of sending and receiving these invoices, with full knowledge that they were false and fraudulent, did not reflect fair market value and diverted the sums due thereon from Procapui to third parties known only to Layani.

46. Purportedly in accordance with the "Working Capital" and "Line of Credit Agreements", the Higgins defendants wired funds purportedly to or for the benefit of Procapui and the Higgins defendants maintained on the books and records of G.F. Higgins, Inc. and its bank Sovereign Bank, an account purportedly tracking each such advance.

47. However, when the Higgins defendants received merchandise from Procapui in reduction of the advances, the Higgins defendants credited Procapui solely with the under billed value of the merchandise and not the true value thereof.

48. As a result thereof, the Higgins defendants claimed a balance due it from Procapui which was false and fraudulent.

Higgins, despite the fact that each and every invoice directed Higgins to remit to the approved and government supervised Bank of Procapui, diverted its payments away from Bank of Boston, a member bank of the Central Bank of Brazil, and into the accounts of Starr Financing and Tansy, SA, currently under investigation by both the U.S. and Brazil as facilitators of "money laundering". The Amended Complaint further alleges:

---

[4] Exhibit 2 sets forth each invoice, the amount and date of each.

61. For a continuous period from 2001 through 2004, Layani and the Higgins defendants, acting in concert, caused approximately 265 wire transfers to be sent either to the bank of Procapui or to other recipients ostensibly for the benefit of Procapui.

62. Annexed hereto and incorporated herein (Exhibit 3)[5] is a list of each such wire transfer, the date of each transfer and the amount of each transfer.

63. Each such wire transfer was ostensibly made pursuant to the "Working Capital" and "Line of Credit" agreements between G.F. Higgins, Inc. and Procapui.

64. However, the Higgins defendants did not transfer all of said funds to Procapui's bank.

65. Instead, the Higgins defendants, in concert with Layani, made a total of 52 transfers to Star Financing Corp. and to Tansy, S.A. and not to the registered accounts of Procapui. In addition, the Higgins defendants, acting in concert with Layani, made transfers to other third-parties set forth on Exhibit 3, ostensibly for Procapui which had nothing whatsoever to do with Procapui. The third-party payees, date of transfer, amount of transfer are set forth in Exhibit 3.

66. Annexed hereto and incorporated herein (Exhibit 4) is a list of each transfer to Star Financing Corp and Tansy, SA. and the date and amount of each such transfer.

67. Said wire transfers were made for the specific purpose of diverting the funds from Procapui to Layani in consideration of the sale of the shrimp and lobster to G.F. Higgins, Inc., Gerald Higgins, Thomas Higgins and Robert Higgins at the unreasonable and illegal discounts as set forth above.

68. Each such transfer was made in violation of the rights of Procapui and in direct violation of the import/export and exchange control regulations of the United States and the Republic of Brazil.

Thus, the Amended Complaint sets forth each and every element of a properly pled RICO claim for relief as set forth by established case law and this Court's prior ruling. It identifies the fraudulent scheme, it clearly identifies the participants in the scheme, the nature and purpose of the scheme, how it injured plaintiff, the manner in which the scheme was fulfilled and the precise

---

[5] Exhibit 3 sets forth the date, amount, recipient of each wire transfer.

dates and amounts of each and every transaction in furtherance of the scheme. It also sets forth that defendants "knowingly" participated in the scheme to the detriment of plaintiff since it cannot be seriously argued that defendants sent an uninterrupted series of wire transfers and received an uninterrupted series of invoices and "duplicate" invoices "unknowingly"[6]. The Amended Complaint specifically alleges:

> 35. At all times relevant hereto, in the Southern District of New York and elsewhere, Layani, the Higgins defendants and others associated with the organized crime have unlawfully, wilfully and knowingly engaged in a pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961 in that said defendants, acting in concert, through the commission of two or more acts prohibited by the statute, more particularly set forth below, engaged in a pattern of racketeering activity and both directly and indirectly conducted and participated in a racketeering enterprise the activities of which affected interstate commerce to the detriment of plaintiff.
>
> 36. At all times relevant hereto, in the Southern District of New York and elsewhere, Layani and the Higgins defendants and others associated with organized crime, constituted and enterprise which is engaged in and whose activities affect interstate commerce, and defendants together with the co-racketeers and others known and unknown, have unlawfully, wilfully and knowingly conducted or participated, directly and indirectly, in the conduct complained of through a pattern of racketeering acts in violation of Title 18, United States Code, Section 1962(c).
>
> 37. The racketeering enterprise which defendants, acting in concert, formed and continued was called G.F. Higgins - Procapui Joint Venture by which defendants continued the activities more particularly set forth below.
>
> 38. In addition to those activities which are set forth and described in Exhibit 1 annexed hereto and incorporated herein, Layani and the Higgins defendants and others associated with the organized crime acting individually and in concert with the co-racketeers, and others, unlawfully, wilfully and knowingly engaged in a pattern of racketeering activity, as defined in 18 U.S.C. §1961, by committing the following specific acts:

---

[6] As this Court is aware, the Credit Line and Working Capital agreements between Higgins and Procapui provided for a limit of $700,000. Interestingly, an analysis of the "loans" to Procapui against the "repayments" indicates that in August, 2003 Procapui, by Higgins' own documents, was indebted to it in the amount of $2,068,621.

Citing this Court to no authority whatsoever other than this Court's prior ruling, defendants would have this Court conclude that the Amended Complaint adds nothing to the prior pleading. Their contentions are without merit. The Amended Complaint deleted defendants Rubin and Blackman by reason of the fact that discovery had to date indicated that these defendants were involved in a fraud against Procapui which either pre-dated or only shortly overlapped the Higgins transactions. There are claims of Procapui against Rubin and Blackman which will be pursued in a different forum and which are unrelated to the issues herein. The Amended Complaint also deleted Layani as a defendant primarily by reason of the jurisdictional cloud which defendants have created around him[7]. Thus, the Amended Complaint clearly identifies the involvement of the remaining defendants, the nature of their actions, the precise dates and amounts of each transaction and the precise date and amount of each fraudulent invoice.

It is respectfully submitted that in a desperate attempt to find fault with the Amended Complaint, defendants trifle with this Court. Defendants argue that the invoices sent to Higgins by Procapui could not have been fraudulent as they were prepared by Procapui itself [Defendants' Memorandum of Law, p. 8]. It is clear that the Amended Complaint alleges that those invoices were for fraudulently reduced amounts in furtherance of a scheme between Higgins and Procapui of which both were obviously aware and "knowing" participants[8].

---

[7]Layani has provided defendants with an affidavit alleging that he is a resident of Brazil though a U.S. citizen. In reality, Layani is a fugitive from Brazil now believed to be in Toulouse, France. The courts of Brazil have issued a warrant for the arrest of Layani making it doubtful that he will ever return to Brazil. Layani has evaded service of the original Summons and Complaint and has failed and refused to disclose his address or whereabouts for service of process.

[8]Plaintiff anticipates that a review of the Higgins accounts and tax returns will show record profits during the relevant period. Plaintiff has already requested and subpoenaed those documents and they have been produced but Magistrate Peck ordered that they be held under seal pending further order of this Court. In accordance with the Magistrate's ruling, plaintiff has not reviewed those documents.

**NON-JOINDER OF PARTIES TO THE ORIGINAL COMPLAINT**

Defendants appear to take no issue with the non-joinder of Rubin and Blackman and, therefore, plaintiff will not address that issue.

Defendants, however, suggest that plaintiff should have made a motion pursuant to Rule 21 F.R. Civ. P. before deleting Layani as a party defendant. Of course, Layani never appeared or filed and Answer with regard to the original complaint and service of process could not be made against him up to the time of this Court's ruling regarding the original Complaint[9]. Therefore, defendants to the extent of Layani cross-claimed against a defendant over which this Court had not yet secured jurisdiction.

The above notwithstanding, the facts herein preclude acceptance of defendant's position. As this Court is aware, leave to amend and to add or delete parties should be freely granted. Rule 15 and 21 F.R. Civ. P.

> Subd. (a) of this rule [Rule 15], and rule 21 of these rules, relating to adding or dropping of parties, are to be liberally treated, within the sound discretion of the court. Helene Curtis Industries v. Sales Affiliates, S.D.N.Y.1952, 105 F.Supp. 886, 93 U.S.P.Q. 398, affirmed 199 F.2d 732, 95 U.S.P.Q. 172. Federal Civil Procedure Key Symbol 241; Federal Civil Procedure Key Symbol 828.1

This is particularly true where deletion of a particular defendant preserves diversity jurisdiction without prejudice to the remaining defendants and where, as here, the deleted defendant is not indispensable. As held in ***Samaha v. Presbyterian Hosp. in City of New York, 757 F.2d 529 (2d Cir., 1985)***:

> but in cases where leave is sought to eliminate a defendant in order to preserve diversity jurisdiction, "unless it appears that a non-diverse

---

[9] In fact, plaintiff had already advised Magistrate Peck that it was about to make a motion authorizing alternative means of service upon Layani. That motion was not made as a result of this Court's ruling.

>   defendant cannot be dropped from an action without prejudice to the remaining defendants, the [Rule 15(a) ] motion should be granted and a failure to do so is an abuse of discretion." Kerr v. Compagnie de Ultramar, 250 F.2d 860, 864 (2d Cir.1958).

Defendants object to the deletion of Layani without candor. Clearly, defendants contrived to create the jurisdictional issue in the first place by procuring an affidavit from Layani as to his citizenship. This affidavit is of particular interest in an action wherein Layani's former company, of which he was President and a fiduciary, is seeking to recover moneys due that company. Layani has also provided defendants with yet additional bogus materials all designed to either affect jurisdiction or the standing of plaintiff to sue. It is obvious that defendants sole interest in maintaining Layani as a defendant is for the purpose of further attacking the jurisdiction of this Court.

Defendants' attempts must be rejected. Defendants have contrived to create a jurisdictional issue and they wish to keep Layani in the case solely to preserve that contrivance. If defendants believe that they have a claim against Layani they are entitled to bring him into the action as a third-party defendant. They obviously do not wish to do that since third-party defendants do not affect diversity jurisdiction. Defendants suggest to this Court without candor that Layani is necessary as the "principal wrongdoer" with "documents and knowledge of the facts" [Defendants' memorandum, pp. 12-13]. This, of course, is a discovery issue easily handled by a subpoena directed to Layani. Given the obvious and continuing relationship between defendants and Layani there is a stronger circumstantial probability that defendants will be able to secure service against Layani than will plaintiff.

Defendants also protest that Jozef Anavian is not named in the Amended Complaint. Plaintiff anticipated that defendants would Answer the Amended Complaint and set forth a claim against Anavian and that service thereof would be accepted by counsel on behalf of Anavian precisely as it was with reference to the original complaint. Counsel for plaintiff does not seriously believe that counsel for defendants believes that service of the Answer with Counterclaims would not be again accepted. Therefore, the presence of Jozef Anavian should be a non-issue at this time.

Furthermore, our courts have not rejected deletion or addition of parties under circumstances such as those herein. As held in **Hines v. Delta Air Lines, Inc., 461 F.2d 576 (5th Cir., 1972)**

> If technically there was no order formally granting "leave" to add Eastern as a party, Eastern ignored the technicality in its one pleading which relied exclusively on an ill-conceived notion that the complaint had not set forth a claim cognizable against them. Delta cannot possibly sustain dismissal which aborts the case on an unjustly stringent procedural argument that one amended complaint was filed two days after the limited time prescribed. And there is simply no basis for denying the right to make Florida a new party, particularly in view of the affirmative statutory mandate of Rule 15(a) that "leave shall be freely given when justice so requires." Thus, dismissal of any of the parties on any of the procedural grounds asserted would constitute clear abuse of discretion. Foman v. Davis, 1962, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222; Lone Star Motor Import, Inc. v. Citroen Cars Corp., 5 Cir., 1961, 288 F.2d 69; Longbottom v. Swaby, 5 Cir., 1968, 397 F.2d 45.

Thus, it would appear that had plaintiff moved for leave to delete defendant Layani such a motion would have had to have been granted under the circumstances herein however, should this Court wish plaintiff to make a formal motion for said relief plaintiff will do so immediately.

**THE STATUTE OF LIMITATIONS DOES NOT BAR ANY PORTION OF THE CLAIMS HEREIN**

Obviously attempting to avoid proceeding on the merits through every procedural avenue possible, Movants suggest that the Complaint herein is time barred but solely as to claims which could have been discovered by July 24, 2003.

Since numerous of the claimed fraudulent activities took place after July 24, 2003 and throughout 2005 and into 2005, obviously the motion does not dispose of the claims for relief herein since apparently, not even Movants are arguing that such acts could or should have been discovered prior to their happening.

While the statute of limitations for claims brought under RICO is four years, Movants are certainly aware that that period does not even begin to accrue until Procapui either discovered or

should have discovered the facts underlying the claims made.

> Four-year limitations period applicable to homeowners' Racketeer Influenced and Corrupt Organizations Act (RICO) action against builder's employees who allegedly fraudulently passed off nonarchitects as architects to design and supervise home remodeling project did not commence to run when homeowners discovered fraud that served as basis of their RICO claim; period commenced to run when homeowners discovered or should have discovered injuries to their property arising from that fraud. Moeller v. Zaccaria, S.D.N.Y.1993, 831 F.Supp. 1046.

It is obvious that defendants not only defrauded Procapui but also took every possible step to conceal their fraud, mis-direct funds, fraudulently duplicate invoices and then move, conceal or destroy each and every document which might shed light on their activities. This was done with such abandon that Procapui was required to re-construct defendants' activities from pieces of documentation obtained from third-parties and through lawsuits commenced against it in Brazil.

In the matter at bar, it is uncontested that Procapui did not become aware of defendants fraudulent activities until the late 2005 into early 2006. In fact, the Central Bank of Brazil was advising Procapui that Movants still owed it approximately $1.5 million at the time that Movants commenced their State Court action alleging that they were owed approximately $1.3 million. In fact, it was the commencement of that action which triggered the investigation which led, in part, to the Complaint herein. The declaration of Jozef Anavian submitted herewith fully sets forth the efforts which were made to discover what had actually happened to Procapui and its assets.

The fact that these events were not known to Procapui and could not have been known to it prior to the commencement of the State action is evident from the action itself. Procapui's records, registered and filed with the Central Bank of Brazil, stated categorically that G.F. Higgins was substantially indebted to Procapui. To the contrary, however, Higgins claimed that Procapui was indebted to it and supported those allegations with a schedule of payments and shipments which bore no relationship to Procapui's records.

Plaintiff submits herewith the declaration of Jozef Anavian dated September 14, 2007 submitted with reference to this issue raised against the original complaint.

**OTHER REQUESTED RELIEF**

Defendants remaining requests are:

> b.  an order dismissing the Complaint on the alleged ground that Marcial Layani is a citizen of the United States
> c.  alternatively, an order directing a more definite statement of the claims alleged,
> e.  an order declaring that parties named in the original complaint are still parties to the Amended Complaint,
> f.  a stay of discovery pending determination of the motions,
> g.  an order of abstention

**Order of Dismissal by Reason of Layani:**

Obviously defendants, having contrived to create a jurisdictional issue request this Court to destroy its own jurisdiction by keeping a party who is neither necessary or indispensable in the case solely for the purpose of divesting the court of jurisdiction.  Our courts have been uniform in rejecting precisely that request. ***Samaha v. Presbyterian Hosp. in City of New York,757 F.2d 529 (2d Cir., 1985)***:

**More Definite Statement of the Claims**:

The Amended Complaint herein is sufficiently definite as to the claims made against the Higgins defendants.  However, should this Court conclude otherwise, plaintiff will file such additional statement as this Court may direct.

**Motion Declaring the Parties are Still the Same**:

This motion is nothing more than a disguised motion to amend the Amended Complaint for the sole purpose of providing defendants with a basis for attacking this court's jurisdiction.  It

must be rejected for the reasons above stated.

**Stay of Discovery Pending Determination:**

This Court stayed this action until such time as plaintiff served and filed an Amended Complaint. It would appear that the filing of the Amended Complaint ended the stay as to discovery and plaintiff will make the appropriate application to this Court to clarify that issue.

**An Order of Abstention:**

In support of their previous motion Movants cited this Court to ***Coopers & Lybrand v.Sun-Diamond Growers of CA, 912 F.2d 1135 (9th Cir., 1990)*** in support of their request for abstention. However, in ***Coopers & Lybrand,*** the Court stated specifically that the Colorado River rule is not to be applied except in extraordinary and extremely limited circumstances. The Court held:

> The Colorado River doctrine is not a recognized form of abstention. Colorado River Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Instead, it is a form of deference to state court jurisdiction. Federal Deposit Ins. Corp. v. Nichols, 885 F.2d 633, 637 (9th Cir.1989). An exercise of Colorado River deference, however, is reviewed under the same abuse of discretion standard applied to abstention decisions. Id.
>
> *1138 Abuse of discretion review in the abstention context " 'should not be confused with the broader abuse of discretion test used in other matters, such as rulings on certain evidentiary issues.' " Id. (quoting American Int'l Underwriters, Inc. v. Continental Ins. Co., 843 F.2d 1253, 1256 (9th Cir.1988)). " 'In abstention cases, "discretion must be exercised within the narrow and specific limits prescribed...." Thus the district court judge in this case [was required to exercise his] discretion within the "exceptional circumstances" limits' " of Colorado River deference. Nakash v. Marciano, 882 F.2d 1411, 1413 (9th Cir.1989) (quoting American Int'l Underwriters, Inc. v. Continental Ins. Co., 843 F.2d at 1256) (quoting C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir.1983))).

The Colorado River Rule arose from a Supreme Court case entitled ***Colorado River Water Conservation Dist. v. U. S., 824 U.S. 800, 96 S.Ct. 1236 (1976)*** which involved the Indian Nations and rights to water resources within the state of Colorado over which the

Southwestern states had enacted an elaborate allocation protocol. The Court cautioned:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163, 1166 (1959). "(I)t was *814 never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." Alabama Pub. Serv. Comm'n. v. Southern R. Co., 341 U.S. 341, 361, 71 S.Ct. 762, 774, 95 L.Ed. 1002, 1015 (1951) (Frankfurter, J., concurring in result). Our decisions have confined the circumstances appropriate for abstention to three general categories.

Clearly, there are no facts herein which would warrant exercise of the doctrine of abstention.

## CONCLUSION

For the reasons above stated, it is respectfully requested that the motion be in all respects denied.

Respectfully submitted

**DE MAIO & HUGHES, P.C.**

by_____
Luigi P. De Maio (LPD 4175)
Attorneys for Plaintiff
330 East 30th Street
New York, NY 10016
(212)888-8300

TO:

John Phelan, III, Esq.
Attorney for Moving Defendants
1285 Avenue of the Americas- Suite 3500
New York, NY 10019