UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE JONES

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PROCAPUI-Productores de Camaroes de Icapui Ltda.,

Plaintiffs,

-against-



MARCIAL GERALD LAYANI, G.F. HIGGINS
INC.,  THERESA HIGGINS as Executrix of
THE ESTATE OF GERALD FRANCIS HIGGINS,
THOMAS HIGGINS, ROBERT HIGGINS,
RICHARD RUBIN and NOEL BLACKMAN

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, by its attorneys, De Maio & Hughes, LLC, complaining of defendants,  alleges:

### JURISDICTION

1. Jurisdiction herein is predicated upon Title 18, United States Code, Section 1964, and upon Title 28, United States Code, Sections 1331  and Title 28, United States Code Section 1332 and the principles of pendent jurisdiction.

### VENUE

2. Venue herein is predicated upon Title 18, United States Code, Section 1965 and Title 28 United States Code, Section 1391.

### PLAINTIFF

3. Plaintiff, **Pracapui- Productores de Camaroes de Icapui Ltda.**("Pracapui"), is a corporation organized and existing under and by virtue of the laws of the Republic of Brazil with its principal place of business in Icapui, Brazil.

## DEFENDANTS AND CO-RACKETEERS

4. Defendant Co-Racketeer, **MARCIAL GERALD LAYANI ("Layani"),** was at all times relevant hereto, a citizen of the United States and a resident of the State of New York, Southern District of New York. Upon information and belief, Marcial Gerald Layani is now located in Toulouse, France being a fugitive from justice under the laws of the Republic of Brazil among other countries.

5. Defendant Co-Racketeer, **G.F. HIGGINS, INC. ("Higgins, Inc.**), upon information and belief, is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business at 825 Washington Street, Pembroke, Mass.

6. Defendant Co-Racketeer, **THE ESTATE OF GERALD FRANCIS HIGGINS,** upon information and belief, is the estate of Gerald Higgins, deceased, who at the time of his death was a citizen and resident of the State of Massachusetts and was the President and a principal shareholder of G.F. Higgins, Inc. Defendant **Theresa Higgins** is named herein by virtue of her representative capacity as Executrix of the Estate of Gerald Francis Higgins.

7. Defendant Co-Racketeer, **THOMAS HIGGINS,** upon information and belief, is a citizen and resident of the State of Massachusetts and was, at all times relevant hereto, a principal shareholder and officer of G.F. Higgins, Inc.

8. Defendant Co-Racketeer, **ROBERT HIGGINS,** upon information and belief, is a citizen and resident of the State of Massachusetts and was a principal shareholder and Treasurer of G.F. Higgins, Inc.

9. Defendant Co-Racketeer, **RICHARD RUBIN ("Rubin"),** upon information and belief, was an attorney who is or was admitted to practice in the State of New York and a citizen

2

and resident of the State of New York.

10. Defendant Co-Racketeer **NOEL BLACKMAN** ("**Blackman**"), at all times relevant hereto was a citizen and resident of the State of New York.

## FACTS

11. In or about 1999, Layani , acting in concert with Rubin and Blackman, persuaded Rita Zahabian and Joseph Anavian to make an investment in a company for the purpose of importation and sale of lobsters, shrimp and related merchandise.

12. In furtherance of the venture, Layani retained the services of Rubin to form **RIMIJO International Trading Corp.** ("Rimijo"), a corporation formed under the laws of the State of New York with its principal place of business in the State of New York, Southern District of New York.

13. The initial shareholders of **RIMIJO** were Rita Zahabian, Jozef Anavian and Layani, each holding a 1/3 interest in the company.  The purpose of **RIMIJO** was to further the business of the sale and importation of shrimp and lobster from Brazil.

14. In or about 1998, or approximately a year prior to the formation of **RIMIJO**, Layani, acting in concert with Rubin, and without the knowledge of Zahabian or Anavian, had caused the formation of **Interbras Global Trading Co., Ltd** ("Interbras") under the laws of the State of New York.

15. Layani had retained Rubin to form **Interbras**.

16. The Directors of **Interbras** were Layani, Rubin and Louis C. Miceli, now deceased.

3

17. Upon information and belief, the owners of **Interbras** were Layani, Rubin and Miceli.

18. Upon information and belief, during his lifetime, Miceli had ties to organized crime.

19. Upon information and belief, in or about 1992, Miceli, Blackman and Rubin, acting in concert, had formed a corporation organized under the laws of the State of New York called **MC Holdings Corp.**

20. Immediately upon the formation of **RIMIJO**, Layani, Rubin and Miceli, acting in concert, engaged in activities the sole purpose of which was to engage in a pattern of mail and wire fraud intended to divert the assets and profits of **RIMIJO** from said corporation and its shareholders to themselves.

21. In furtherance of said scheme, and without the knowledge or consent of either Anavian or Zahabian; Layani, Rubin, Blackman and Miceli, acting in concert:

    a.    caused RIMIJO to enter into contracts or agreements with MC Holdings and Interbras which were not in the interests of RIMIJO and which were intended solely for the purpose of depriving RIMIJO of its assets, and

    b.    using the mails and the wires, sold the merchandise of RIMIJO through Interbras and MC Holdings retaining in said corporations the profits which were actually those of RIMIJO, and

    c.    using the mails and the wires, transferred monies and assets of RIMIJO to Interbras and MC Holdings with either no or inadequate consideration, and

    d.    using the mails and the wires, seized and converted the corporate opportunities of RIMIJO and transferred those opportunities to Interbras and MC Holdings, and

    e.    using the mails and the wires, diverted funds which were due to RIMIJO from its customers to private and/or personal accounts of Layani, Rubin and Miceli in total

4

derogation of the rights of RIMIJO in said accounts receivable.

22. Layani, Rubin, Miceli, acting in concert, using the mails and the wires, caused RIMIJO to enter in *inter se* agreements with Interbras and MC Holdings which were not in the interest of RIMIJO and intended solely to divert the assets and profits of RIMIJO to themselves and to other corporations of which they were shareholders.

23. In or about 1999, Layani induced Anavian to invest in property in Brazil for the purpose of creating and maintaining a shrimp farm for the purpose of the cultivation and sale of shrimp.

24. As part of the proposed venture, Anavian purchased a parcel of property in Icapui, Brazil.

25. Anavian requested Layani to form a corporation under the laws of the Republic of Brazil for the purpose of furthering the creation, development and maintenance of the shrimp farm and the sale of its shrimp and lobster from Brazil.

26. Layani, using his own counsel in Brazil, formed Procapui and transferred to Procapui the contracts, assets and interests of RIMIJO so that Procapui became the successor in interest to RIMIJO. .

27. Anavian made a capital investment in Procapui providing it with the funds for the development of the land into a viable shrimp farm and for the purpose of further and advancing the business of Procapui.

28. At all times relevant hereto, Layani, Rubin, Miceli,, acting in concert, using the mails and the wires, diverted the funds which were intended for the development of Procapui and used said funds for purposes which were not legitimate uses of the funds and in derogation of the

interests of Procapui.

29. In furtherance of said scheme, and without the knowledge or consent of either Anavian or Zahabian; Layani, Rubin and Miceli, acting in concert:

      a. caused Procapui to enter into contracts or agreements with MC Holdings and Interbras which were not in the interests of Procapui, and

      b. sold the merchandise of Procapui through Interbras and MC Holdings retaining in said corporations the profits which were actually those of Procapui, and

      c. transferred monies and assets of Procapui to Interbras and MC Holdings with either none or inadequate consideration, and

      d. seized and converted the corporate opportunities of Procapui and transferred those opportunities to Interbras and MC Holdings, and

      e. diverted funds which were due to Procapui from its customers to private and/or personal accounts of Layani, Rubin and Miceli in total derogation of the rights of Procapui in said accounts receivable.

30. In or about 2000, Layani and Blackman and, upon information and belief, Miceli and Rubin, acting in concert, introduced Procapui to G.F. Higgins. Inc. ostensibly for the purpose of selling lobster and shrimp to G.F. Higgins, Inc.

31. Anavian and Zahabian were informed that the relationship between Procapui and G.F. Higgins was arms length.

32. In fact, the relationship was a contrivance among Layani and Blackman, G.F. Higgins, Gerald Higgins and Thomas Higgins, and, upon information and belief, Rubin, acting in concert, to illegally and fraudulently further divert the assets and profits of Procapui to themselves.

6

33. In furtherance of said scheme, Layani and Blackman, G.F. Higgins, Gerald Francis Higgins, Thomas Higgins and Robert Higgins, and, upon information and belief, Rubin, acting in concert, using the mails and the wires, entered into agreements which were not in the interests of Procapui.

34. In furtherance of said scheme, and without the knowledge or consent of either Anavian or Zahabian; Layani, Rubin, Miceli, G.F. Higgins, Gerald Higgins and Thomas Higgins, using the mails and the wires, acting in concert:

    a. caused Procapui to enter into contracts or agreements with MC Holdings and Interbras which were not in the interests of Procapui, and which were intended solely to use the mails and the wires to divert the assets and profits of Procapui, and

    b. using the mails and the wires, sold the merchandise of Procapui through Interbras and MC Holdings retaining in said corporations the profits which were actually those of Procapui, and

    c. using the mails and the wires, transferred monies and assets of Procapui to Interbras and MC Holdings with either no or inadequate consideration, and

    d. using the mails and the wires, seized and converted the corporate opportunities of Procapui and transferred those opportunities to Interbras and MC Holdings, and

    e. using the mails and the wires, diverted funds which were due to Procapui from its customers to private and/or personal accounts of Layani, Rubin and Miceli in total derogation of the rights of Procapui in said accounts receivable and

    f. contrived to cause the merchandise of Procapui to be sold to Higgins for

7

discounts so substantial that Procapui was not able to make a profit therefrom, and

g. diverted the proceeds of those discounts away from Procapui and its shareholders in the form of illegal "kickbacks" to G.F. Higgins, Gerald Higgins, Thomas Higgins, Robert Higgins, Layani, Rubin and Blackman, and

h. diverted payments due to Procapui from Procapui and into the private and personal accounts of G.F. Higgins, Gerald Higgins, Thomas Higgins, Layani, Rubin and Blackman, and

i. altered the books and records of Procapui to erase, reduce, eliminate or otherwise obfuscate accounts due and receivable to Procapui from G.F. Higgins, Inc., and

j. made payments to Procapui through illegal and unauthorized intermediaries, contrary to the laws of Brazil and of the United States  which then further diverted the proceeds of those payments away from Procapui and to G.F. Higgins, Gerald Higgins, Thomas Higgins, Robert Higgins, Layani, Rubin and Blackman, and

k. contrived to have Procapui engage in the unlawful sale of lobster which did not conform the legal lobster either under the laws of the United States or those of Brazil.

35. In furtherance of this continuing scheme, G.F. Higgins, Layani, Thomas Higgins, Robert Higgins and Gerald Higgins, acting in concert with Layani,  contrived to cause Procapui to enter into a "working capital" and "line of credit" agreement whereby G.F. Higgins was to advance funds to Procapui and be repaid either in cash or in merchandise delivered to it by Procapui.

36. In reality this agreement was simply a further effort and device to divert the assets of Procapui to G.F. Higgins, Gerald Higgins, Thomas Higgins, Robert Higgins and Layani. and others.

37. In furtherance of this scheme, Layani, G.F. Higgins, Gerald Higgins and Thomas Higgins and Robert Higgins, acting through and in concert with Layani, contrived to take a mortgage on property of Anavian located within the State of New York as "security" for the full and faithful performance of the "working capital" and "line of credit" agreement.

38. At all times during the relationship between G.F. Higgins and Procapui, Layani, G.F. Higgins, Gerald Higgins, Robert Higgins and Thomas Higgins were aware that they, acting in concert, were managing the affairs of Procapui in a notorious and fraudulent manner designed solely to enrich themselves at the expense of Procapui and its shareholders.

39. Anavian and Zahabian were unaware of the activities of Layani, G.F. Higgins, Gerald Higgins and Thomas Higgins and Robert Higgins.

40. For a continuous period from in or about 2000 through the end of the relationship in or about early 2005, Layani, G.F. Higgins, Gerald Higgins, Thomas Higgins and Robert Higgins contrived to defraud Procapui and embezzle its assets and profits and transfer those assets and profits to themselves.

41. There is currently due and owing to Procapui from G.F. Higgins the sum of approximately $1,500,000 as calculated by the Central Bank of Brazil in unpaid and open invoices representing merchandise shipped by Procapui to G.F. Higgins.

42. No part of said $1,500,000 has been repaid though duly demanded.

43. Layani, G.F. Higgins, Gerald Higgins and Thomas Higgins sought to evade and

9

avoid the obligations of G.F. Higgins by making purported payments to Procapui not in accordance with the payee as evidenced by the invoices and shipping documents but rather to unauthorized and illegal third-parties from whom Layani, G.F. Higgins, Gerald Higgins and Thomas Higgins would further divert the proceeds to themselves.

44. The payments so made were in direct violation of the laws of the United States and the laws of the Republic of Brazil.

## THE RACKETEERING ENTERPRISE

45. This is an action brought pursuant to the Racketeer Influenced Corrupt Organizations Act as defined in 18 U.S.C. §1964. At all times relevant hereto, in the Southern District of New York and elsewhere, defendant G.F. Higgins, together with defendants and co-racketeers Layani, G.F. Higgins, Gerald Higgins, Thomas Higgins, Robert Higgins, Rubin and Blackman and others associated with the organized crime, have constituted an enterprise, that is a legal entity and group of entities and individuals associated in fact as defined in 18 U.S.C. §1964, which engaged in and whose activities affected and which continues to engage in and continues to affect interstate commerce.

46. At all times relevant hereto, in the Southern District of New York and elsewhere, defendants G.F. Higgins, together with defendants and co-racketeers Layani, G.F. Higgins, Gerald Higgins and Thomas Higgins, Robert Higgins, Rubin and Blackman and others associated with the organized crime have unlawfully, wilfully and knowingly engaged in a pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961.

47. At all times relevant hereto, in the Southern District of New York and elsewhere, defendant G.F. Higgins, together with defendants and co-racketeers Layani, G.F. Higgins, Gerald Higgins and Thomas Higgins, Robert Higgins, Rubin and Blackman and others associated with organized crime, constituted and enterprise which is engaged in and whose activities affect

interstate commerce, and defendants together with the co-racketeers and others known and unknown, have unlawfully, wilfully and knowingly conducted or participated, directly and indirectly, in the conduct complained of through a pattern of racketeering acts in violation of Title 18, United States Code, Section 1962(c).

48. In addition to those activities which are set forth in Exhibits A and B annexed hereto, defendant G.F. Higgins, together with defendants and co-racketeers Layani, G.F. Higgins, Gerald Higgins and Thomas Higgins, Robert Higgins, Rubin and Blackman and others associated with the organized crime acting individually and in concert with the co-racketeers, and others, unlawfully, wilfully and knowingly engaged in a pattern of racketeering activity, as defined in 18 U.S.C. §1961, by committing the following specific acts:

**Racketeering Act One**: (extortion)

49. Plaintiff repeats and realleges paragraphs 1 through 48 hereof.

50. In or about 2004, and for a continuous period thereafter, Layani. acting in concert with, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins threatened and coerced plaintiffs advising them that any attempt to redress or correct the acts complained of would result in the death of Anavian or members of his immediate family (Exhibit A).

51. In or about 2004, and for a continuous period thereafter, Layani threatened and coerced Anavian, advising him that any attempt to redress the grievances of plaintiff or to report the activities complained of to the authorities of either the United States or the Republic of Brazil would result in the death of Anavian or members of his immediate family (Exhibits A and B).

52. In conjunction therewith, Layani and persons acting in concert with him or at his direction are currently under investigation by the government of Brazil for charges of murder,

extortion, illegal sale of shrimp and lobster, drug trafficking, prostitution, child molestation and other assorted violations of the laws of the Republic of Brazil.

53. The commission of the foregoing acts extortion against plaintiff constitutes a violation of 18 U.S.C. 1951.

**Racketeering Act Two**: (mail fraud)

54. Plaintiff repeats and realleges paragraphs 1 through 48 hereof.

55. Commencing in or about 2001 until late 2004, Layani, acting in concert with, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins engaged in a pattern of using the mails to transmit doctored and altered invoices of Procapui to G.F. Higgins allegedly representing the sale of goods by Procapui to G.F. Higgins.

56. In reality, the invoices transmitted were mere alterations of the accurate invoices which represented the sale price of the goods sold and delivered.

57. The bogus invoices were for a different amount and were issued without the knowledge and or consent of either Procapui or the Brazilian import/export authorities and without the knowledge of consent of the United States import authorities. (Exhibit C[1])

58. In addition, defendants contrived to cause the bogus invoices to not include instructions to G.F. Higgins to remit payment to the Republic of Brazil approved bank of Procapui for the receipt of payment for goods sold, delivered and exported from the Republic of Brazil in accordance with the exchange control and import/export laws of the Republic of Brazil.

---

[1]Exhibit C annexed hereto for the information of the Court is only one in a series of invoices all of which bore the suffix "T" and all of which materially differed from the accurate invoices.

59. Layani, acting in concert with, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins engaged in a pattern of using the mails for the purpose of receiving these invoices, with full knowledge that they were false and fraudulent, and diverting the sums due thereon from Procapui to third parties known only to Layani, acting in concert with, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins.

60. In furtherance of this scheme, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins contrived to have an uninterrupted series of invoices spanning the period from 2001 through 2004 issued from Procapui to G.F. Higgins which did not reflect the fair value of the goods sold and delivered by Procapui to G.F. Higgins.

61. In furtherance of this scheme, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins, acting in concert, using the mails, caused an uninterrupted series of "duplicate" invoices to be issued the sole purpose of which was to defraud Procapui.

**Racketeering Act Three:** (wire fraud)

62. For a continuous period from 2001 through 2004, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins, acting in concert, caused approximately 265 wire transfers to be sent either to the bank of Procapui or to other recipients ostensibly for the benefit of Procapui, none of which reflected the value of good sold and delivered to G.F. Higgins by Procapui.

63. For a continuous period from 2001 through 2004, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins, acting in concert, wired funds due Procapui to third parties, knowing that those third-parties would divert the funds from Procapui and, upon information and belief, to Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins.

64.  For a continuous period from 2001 through 2004, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins, acting in concert, using the wires, altered the invoices of Procapui for the purpose of depriving Procapui of the benefit of its sales and diverting that benefit to Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins (Exhibit D).

65.  For a continuous period from 2001 through 2004, Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins, acting in concert, using the wires, defrauded Sovereign Bank, from which G.F. Higgins obtained a line of credit, solely for the purpose of permitting them to continue to use the wires to defraud Procapui.

66.  For a continuous period from 2001 through 2004. Rubin, Blackman, Gerald Higgins, G.F. Higgins, Robert Higgins and Thomas Higgins, acting in concert, defrauded the United states Customs Service by mis-reporting the value of good sold and delivered by Procapui and exported by Procapui to the United States and imported by G.F. Higgins.

## AS AND FOR A FIRST CLAIM FOR RELIEF

67. Plaintiff repeats and realleges paragraphs 1 through 66 hereof.

68.  As a  result of the acts set forth above in Racketeering Act One, plaintiff was extorted by threats of physical violence.

69. The above conduct by defendants and their agents, individually and acting in concert violates the provisions of 18 U.S.C. §1962(c).

70. As a result thereof,  plaintiff has been damaged in an amount not yet fully determined but in no event less than $7,000,000.

14

## AS AND FOR A SECOND CLAIM FOR RELIEF

71. Plaintiff repeats and realleges paragraphs 1 through 66 hereof.

72. Plaintiff was made the subject of mail fraud.

73. Defendants, individually and acting in concert have engaged in conduct which violates the provisions of 18 U.S.C., Section 1962(c).

74. As a result thereof, plaintiffs have been damaged in an amount not yet fully determined but in no event less than $7,000,000.

## AS AND FOR A THIRD CLAIM FOR RELIEF

75. Plaintiff repeats and realleges paragraphs 1 through 66 hereof.

76. Plaintiff was made the subject of wire fraud

77. As a result of the above, defendants, individually and acting in concert have engaged in conduct which violates the provisions of 18 U.S.C. §1962(c).

78. As a result thereof, plaintiffs have been damaged in the amount not yet fully determined but in no event less than $7,000,000.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

79. Plaintiff repeats and realleges paragraphs 1 through 66 hereof.

80. Defendants, acting in concert, made representations to plaintiff, or failed to make

15

representations to plaintiff which should have been made to make the representations made truthful, which at the time, defendants, acting in concert, knew to be false and knew that plaintiff would rely upon to its detriment.

81.  Plaintiff relied upon said misrepresentations to its detriment.

82.  As a result thereof, plaintiff has been damaged in an amount not yet fully determined but in no event less that $7,000,000.

### AS AND FOR A FIFTH CLAIM FOR RELIEF

83.  Plaintiff repeats and realleges paragraphs 1 through 66 hereof.

84.  Pursuant to an agreement with G.F. Higgins, Inc., plaintiff sold and delivered goods to G.F. Higgins.

85.  G.F. Higgins has failed and refused to pay for said goods pursuant to said agreement.

86.  As a result thereof, and pursuant to the contract, there is currently due and owing to plaintiff the sum of approximately $1,500,000 together with interest no part of which has been paid through duly demanded.

**WHEREFORE**, plaintiff demands judgment against defendants, as follows:

1.  On its First Claim for Relief judgment in the amount of $7,000,000 together with treble damages and interest, and

2.  On its Second Claim for Relief judgment in the amount of $7,000,000 together with treble damages and interest, and

16

3. On its Third Claim for Relief, judgment in the amount of $7,000,000 together with treble damages and interest, and

4. On its Fourth Claim for relief, judgment in the amount of $7,000,000 together with interest, and

5. On its Fifth Claim for Relief, judgment in the amount of $1,500,000 together with interest

together with costs and attorneys fees herein.

Dated:
New York, New York
July 18, 2007

Luigi P. De Maio (LPD 4175)
**DE MAIO & HUGHES, LLC.**
Attorneys for Plaintiff
330 East 30th Street
New York, NY 10016
(212)888-8300

17



### *Crtificate of Acknowledgment*

| | | |
|---|---|---|
| State of Israel | ) | |
| Tel Aviv/Yafo Municipality | ) | |
| Embassy of the United States | ) | SS: |
| of America | ) | |

I certify that on this day the individual/s named below appeared before me and acknowledged to that the attached instrument was executed freely and voluntarily.

Name/s of individual/s:  Anavian Leyla

X _____
(Signature of Consular Associate)

Rosario Kramer

**Consular Associate of the United States of America**

commission does not expire

January 17, 2006

(SEAL)



To the American Embassy.

My name is Leyla Omanian.
Since Nov. 2005 I haven't heard from
my son Montial Gerald Oayani born in
New York in Oct. 20 1968. The last
time I spoke to him he was in Santos
Brazil. He told me he was threatened
by Richard Rubin, Bobby & Noah Blackman
from New York and also by Toni Higgins
from Boston and that he was afraid for
his life. The persons I mentioned had
been putting him under pressure for a
long time. My son had always told
us not to complain about those people.
and he himself was threatening us
and at one time I was obliged to

... a criminal report against my son

in Fortaleza Brazil and also to leave Santos at once. But my brother Jozef Anatian is still in Brazil and his life as well as other members of my family in New York are in danger. My family specially my brother invested a lot of money in Brazil giving full power of attorney to my son, trusting him. Since March 2003 we found out that my son had taken advantage of this trust and put the company under his own name. Later we found out that he had sold all the trucks without telling anybody. Moreover He was always asking for more money telling us his life was in danger and that he had to pay back the people

The worse came in 2005 when we found out that he had taken a mortgage on my brother's house without his knowledge and furthermore that he had transferred the house to himself.

My son's lawyers have forged my brother's signature over and over. Now one of them is under investigation by the police. The money missing adds up to millions of Dollars.

Noah Blackman, Bobby, Richard Rubin and Tom Higgins who are threatening us (according to my son who said they'll take care of us) Have been involved in this matter with my son from the very beginning.

My son's nick name is Mike. I would appreciate your giving this matter the importance it deserves. Unfortunately the

http://www.geocities.com/emoffbr/imprensace.htm?200616                    1/16/2006

The above is a website on which you can found lots of articles on Mike Zayani.

We have certified documents on all those forgeries.

Would you please take the necessary steps and contact me with the whereabouts of my son and also help my family with this matter

Tel. Aviv

Jay

1/17/2006

you can contact me at
972-25023156



*Hulda Chaves Lenz Cesar*
Tradutora Pública Juramentada
Rua Tenrólogo Silvano Serra, 351 – casa 17 – Papicu Dunas
60.181-530 Fortaleza – Ceará - Telefone: (085) 262.3081

*Translation # 529/2005*

I, the undersigned, a sworn-in Translator in and for this State, registered at the Trade Board of Ceará under #0020602, hereby DECLARE to have received a document written in Portuguese for translation into ENGLISH, which I did faithfully, to the best of my ability, as follows: STATE OF CEARÁ GOVERNMENT – PUBLIC SAFETY AND SOCIAL DEFENSE SECRETARIAT – CIVIL POLICE – DEFRAUDATION AND FALSIFICATION POLICE DEPARTMENT – TESTIMONY TERM – INQUIRY No. 304-00478/2005 – On the 18th day of the month of October of 2005, in this city of Fortaleza, State of Ceará, around the 4:08 p.m. was found present the B. of Law MARIA CELESTE FERREIRA DA PONTE, POLICE OFFICER, with me JOSÉ EVANDRO REIS, Scrivener of her position, subscribed at the end, there came before the Public Notary's Office SERGIO MARIA NOBRE OTHON SIDOU, BRAZILIAN nationality, MARRIED, COMPLETE HIGHER EDUCATION, ACCOUNTANT, son of PAULO MARIA OTHON SIDOU AND MARGARIDA MARIA DE ALACOQUE NOBRE OTHON SIDOU, born on 09/08/1961, natural of FORTALEZA-CE, resident at R. OLIVEIRA VIANA 365 Apt. 101, PAPICU, FORTALEZA-CE, telephone: 32643634. As it is the practice, he said nothing, compromised as required by law, adverted about the penalties comminated for false testimony, inquired by the Authority, he SAID THAT: in the year of 2003, he was hired to perform accounting services for the Company PROCAPUÍ, by the manager of the same, Lawyer EUNICE LEAL OLIVEIRA; THAT, in that same year of 2003, due to various irregularities found inside the Company, the deponent was obligated to remake the accounting services for the year of 2002; THAT the hardest difficulty found inside that Company was the absence of documents proving commercial operations performed by the bad administration of the Company, above all the ones proving the expenses; THAT, the withdrawal of high amounts of the checks of PROCAPUÍ did not have due documentary proof to justify the accounting book entries;



Página 1 de 4



*Hulda Chaves Lenz Cesar*
Tradutora Pública Juramentada
Rua Teatrólogo Silvano Serra, 351 – casa 17 – Papieu Danas
60.181-530 Fortaleza – Ceará - Telefone: (085) 262.3081

*Translation # 529/2005*

THAT, he can affirm to have noticed that in the period of 2002, when remade, presented net profit around four million reais; THAT, regarding the period of 2003, done by the deponent, noticed similar problems, such fact led the deponent to have a conversation with Mr. MIKE, opportunity where the deponent alerted him about the irregularities that the Company was presenting, equally alerting Lawyer EUNICE LEAL DE OLIVEIRA; THAT yonder the accounting problems were found problems of tributary and fiscal nature as well as Labor and Social Welfare Obligations, besides commercial nature problems; THAT, by the end of 2003, Mr. MIKE dispensed the accounting services of the deponent, and did not pay his salaries; THAT, the deponent can affirm that when he assumed the accounting works of that Company, Mr. JOSEF ANAVIAN, Mrs. RUTH, Mr. MIKE and Mr. JOSÉ SARAIVA GOMES, known by STÊNIO, were part of the of the PROCAPUI Company's partnership, however, during the course of that year of 2003, the deponent had made some additives for capital increase, deriving from foreign origin, sent by the partner JOSEF ANAVIAN; THAT, the deponent took knowledge that at the end of 2003 an additive was made, excluding Mr. JOSEF of the partnership of the Company, additive not made by the deponent, and for such reason the deponent did not proceed to the actualization of the company's data at the public control agencies; THAT, at the end of 2004, the deponent was requested by MIKE to follow an inspection of the Secretary of Finances (SEFAZ) regarding to the period of 2002; THAT, the deponent followed that inspection up to the end; from that occasion the deponent started to have disagreements with Mr. MIKE, because Mr. MIKE did not want to present himself to the Inspector, named GABRIEL, including threatening the Inspector, fact which made the Inspector to enter a complaint "boletim de ocorrência" at the Police Department; THAT, clarifies that Mr. MIKE, not satisfied with the inspection result threatened the deponent by telephone and dispensed him; THAT, the deponent found divergence regarding the



*Páginas 2 de 4*



*Hulda Chaves Lenz Cesar*
Tradutora Pública Juramentada
Rua Teatrólogo Silvano Serra, 351 – casa 17 – Papicu Dunas
60.181-530 Fortaleza – Ceará - Telefone: (085) 262.3081

*Translation # 529/2005*

export information, since the Bill of Sale issued here in Ceará contained a determined value, and in the Export Permit was inserted another value; **THAT**, he clarified that the goods exported to the company **GF. HIGGINS** had a value 20% below the market price; **THAT**, he clarifies that today exists a document proving a credit with that company of value higher than one million and five hundred thousand dollars; **THAT**, he can affirm that the way that **Mr. MIKE** made the exclusion additive of **Mr. JOSEF ANAVIAN** is not a usual accounting procedure, much less had sustenance by the Brazilian commercial law, once that using a Power of Attorney **Mr. MIKE** committed an evident illicit enrichment, appropriating himself of the capital quotes of his uncle and partners, at non-onerous title; **THAT**, The Brazilian Civil Law refuses the use of Power of Attorney for one's own benefit; **THAT**, has yet to add that the deponent was recently contacted by the lawyer and manager of the Company, **Mrs. EUNICE LEAL DE OLIVEIRA**, when she requested to the deponent to alter the book entries of the period of 2002, with the intention of configuring nonexistent and strange debts to the operations of the company, so far unknown; **THAT**, the deponent refused to perform such alterations, since he understood that he would be practicing a fraud in the accounting of that company, which objective was to benefit as creditors of the company her husband, son, father-in-law and friends; **THAT**, the total amount of that illicit operation proposed by said lawyer was something around R$ 1,700,000.00;. And nothing else was said or was asked to the deponent, the **Authority** ordered to end the present Testimony Term that, read and found accordingly was duly signed by all and by me **JOSÉ EVANDRO REIS**, Scrivener that digitized this. – Signature spaces for the Police Officer and the Deponent. Nothing else of importance was contained on the aforementioned document, which I translated in this city of Fortaleza, on the eighth day of the month of November of the year two thousand



Página 3 de 4



*Hulda Chaves Lenz César*
Tradutora Pública Juramentada
Rua Teatrólogo Silvano Serra, 351 – casa 17 – Papicu Dunas
60.181-530 Fortaleza – Ceará - Telefone: (085) 262.3081

*Translation # 529/2005*

and five. IN TESTIMONY WHEREOFF, I hereunto set my hand and affix my Seal of Office.////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

Hulda Chaves Lenz César

Sworn-in Translator

Fees: R$105,00

Rec. 49/2004 JUCEC





*Hulda Chaves Lenz Cesar*
Tradutora Pública Juramentada
Rua Teatrólogo Silvano Serra, 331 – casa 17 – Papicu Dunas
60.181-530 Fortaleza – Ceará - Telefone: (085) 262.3081

*Translation # 532/2005*

I, the undersigned, a sworn-in Translator in and for this State, registered at the Trade Board of Ceará under #0020602, hereby DECLARE to have received a document written in Portuguese for translation into ENGLISH, which I did faithfully, to the best of my ability, as follows: **STATE OF CEARÁ GOVERNMENT – PUBLIC SAFETY AND SOCIAL DEFENSE SECRETARIAT – CIVIL POLICE – DEFRAUDATION AND FALSIFICATION POLICE DEPARTMENT – TESTIMONY TERM – INQUIRY No. 304-00476/2005** –On the 18th day of the month of October of 2005, in this city of Fortaleza, State of Ceará, around 2:22 p.m., at the presence of the B. of Law **MARIA ROSICLEIDE DE CASTRO, POLICE OFFICER**, with me **JOSÉ EVANDRO REIS**, Scrivener of her position, signed at the end, came to the Public Notary's Office **JOZEF ANAVIAN, AMERICAN** nationality, **UNMARRIED, COMPLETE HIGHER EDUCATION, ENTREPRENEUR**, son of **FARRADJ** and **GLADYS ANAVIAN**, born on 05/15/1948, natural of **NEW YORK / US**, resident at R. **AURÉLIO CÂMARA 700, DUNAS, FORTALEZA-CE**, telephone: 325182. Inquired by the Authority, he **SAID THAT**: coming to this Specialized Ofice, he took this opportunity to reaffirm the terms included in the criminal notice recorded in this Superintendency under # 05215692-3, to be investigated the penal responsibilities of the author, **MARCIAL GERALD LAYANI**, also known as **"MIKE"; THAT**, the deponent clarified that the defendant is his nephew and the same was brought by the deponent to Brazil, specially to Fortaleza/CE, with the intention of conjointly incorporating a commercial limited society, having in view to explore the market of the "*carcinocultura*" industry (shrimp farms), in the City of Icapuí/CE. wit the aim of exporting for the foreign market; **THAT**, in that moment the deponent had already decided to live in Brazil, including as retired; **THAT**, the deponent affirmed he has being investing in new business; **THAT**, the defendant at that time, had a public Power of Attorney to manage the family's businesses; **THAT**, the deponent clarified that the family,



*Página 1 de 2*



*Hulda Chaves Lenz Cesar*
Tradutora Pública Juramentada
Rua Teatrólogo Silvano Serra, 351 – casa 17 – Papicu Dunas
60.181-530 Fortaleza – Ceará – Telefone: (085) 262.3081

*Translation # 532/2005*

as well as their friends transferred to Brazil, through Mr. **MIKE**, a few million of American dollars, because he was the only responsible manager for all the investments of the family here in Ceará; **THAT**, at that time the company PROCAPUÍ was established, in name of the deponent and MIKE, *Produtores de Camarão Ltda.*, located at the city of Icapuí/CE, with head office in the address at Av. Engenheiro Alberto Sá, 480/Papicu, office that operates to this date, at the professional address of B. of Law EUNICE LEAL DE OLIVEIRA and MIKE'S professional address; The Lawyer acted both as PROCAPUÍ's lawyer, and as the actual operational manager of the Company, as she entitled herself; **THAT**, as reported, the above referred lawyer, together with **MIKE**, are charged in a Police Inquiry in this Specialized, under # 00217/2004; **THAT**, the deponent informs that after sending more than six million American dollars, for the shrimp farm construction, to his surprise, when arrived here, he found a total ruin and a complete lack of management and administrative control of the company, when Mr. **MIKE** constantly called up to the deponent in the United States, as well as to his aunts, requesting them to send more money to pay the company bills; **THAT**, in that moment the deponent was surprised that all his **Capital Quotes of the Company (PROCAPUÍ)** had been assigned, without his consent and approval, to Mr. **MIKE**; **THAT**, the deponent clarified that at present the defendant has an equity control of more than 99,9% of the Company, after excluding the deponent, as well as Mr. Mike's mother and sister of the deponent, Mrs. **LEYLA ANAVIAN**; **THAT**, the deponent clarified that his sister and genitor of the defendant entered into the society on 2002, with a part of the Capital, as reported at the Articles of Incorporation copy attached to the Criminal Notice; **THAT**, the deponent emphasized that all the money, which was part of the beginning of the Company incorporation, had been given by the deponent, since MIKE did not have any capital to enter as partner; **THAT**, the deponent clarified that after the company was already



Página 2 de 5



*Hulda Chaves Lenz Cesar*
Tradutora Pública Juramentada
Rua Teatrólogo Silvano Serra, 351 – casa 17 – Papicu Dunas
60.181-530 Fortaleza – Ceará - Telefone: (085) 262.3081

*Translation # 532/2005*

suppliers; **THAT**, after all this acts, **MARCIAL GERALD LAYANI** was found living in the

City of Santos/SP, whose address is inserted in the initial brief; **THAT** were present the

Lawyers **ALBERTO VERAS CARAPEBA**, **CEARÁ BAR ASSOCIATION #14284** and

**EDILSON SOARES**, **CEARÁ BAR ASSOCIATION #11490-A**. And nothing else was

said or asked to the deponent, the Authority ordered to end the present Testimony Term

that, read and found accordingly was duly signed by all and by me **JOSÉ EVANDRO**

**REIS**, Scrivener that digitized this. – Signature spaces for the Police Officer, and the

Scrivener. Signed by the deponent: **JOSEG ANAVIAN** an by the Lawyers, **ALBERTO**

**VERAS CARAPEBA and EDILSON SOARES, CEARÁ BAR ASSOCIATION #11490-A**

Nothing else was contained on the aforementioned document, which I translated in this

city of Fortaleza, on the eighth day of the month of November of the year two thousand

and five. IN TESTIMONY WHEREOFF, I hereunto set my hand and affix my Seal of Of-

fice..///////////////////////////////////////////////////////////////////////////////////////////////////

*Hulda Chaves Lenz Cesar*
Hulda Chaves Lenz César

Sworn-in Translator

Fees: R$156,80

Res. 49/2004-JUCEC





**PROCAPUÍ - PRODUTORES DE CAMARÕES DE ICAPUÍ LTDA**
CNPJ 04.198.103/0081-69  CGF 06.305.020-0
Vila Barra Grande, S/No. – Centro – Icapuí/Ce/Brazil
Fone:(85)263.2622 - Fax:(85)263.3327

**PROCAPUÍ**
THE NOBILITY OF THE SEA.

**COMMERCIAL INVOICE**

No.: CL-009/02        DATE: JULY 21, 2002.

OUR SALE OF:    BRAZILIAN FROZEN ROCK
LOBSTER TAILS "PROCAPUÍ BRAND"
TERMS:

BUYER:  G. F. HIGGINS, INC, S.A.
825 WASHINGTON STREET, PEMBROKE,
MA 02359 – USA.

MARKS:   PROCAPUÍ/BRAZIL
GF HIGGINS/USA

SHIPPED PER: CAP SAN LORENZO.   FROM: PECEM/CE/BRAZIL
TO: NEW YORK/USA

CONSIGNED TO: G. F. HIGGINS, INC. S.A.

INSURANCE: COVERED BY BUYER

NOTIFY: BOSTON BAY BROKERS
88 BLACH FALCON AVE,
BOSTON, MA 02210 – USA
PHONE: 617-737-5100/617-737 2411
ATTN: LINDA QUASARANO.

TERMS:
[ ] FOB        [ ] C&F        [X] CFR

DRAFT No.: CL-009/02  AT THE AMOUNT OF US$ 140,378.28  REPRESENTING 100% OF THIS COMMERCIAL
INVOICE DRAWN TO THE ORDER OF
AGAINST

[ ] AT COLLECTION BASIS    [X] REMITTANCE    [ ] UNDER LETTER OF CREDIT No.:

**SPECIFICATION OF GOODS**

01 (ONE) PART CONTAINER FCL/FCL OF 40 FT CONTAINING:
263 (TWO HUNDRED SIXTY THREE) MASTER BOXES CONTAINING FOUR BOXES OF 10 LBS
TOTALING 40 LBS NET EACH OF "BRAZILIAN FROZEN ROCK LOBSTER TAILS" IQF
IWP "PROCAPUÍ BRAND". TOTAL NET WEIGHT: 10.520 LBS. AS BELOW:

| SIZES | BOXES | LBS | PRICE/LB/FOB | AMOUNT |
|-------|-------|------|--------------|--------|
| 03 OZ | 15 | 600 | US$ 11,50 | US$ 6,900.00 |
| 04 OZ | 39 | 1.560 | US$ 12,50 | US$ 19,500.00 |
| 05 OZ | 28 | 1.120 | US$ 14,00 | US$ 15,680.00 |
| 06 OZ | 21 | 840 | US$ 14,00 | US$ 11,760.00 |
| 07 OZ | 23 | 920 | US$ 14,00 | US$ 12,880.00 |
| 08 OZ | 24 | 960 | US$ 14,00 | US$ 13,440.00 |
| 09 OZ | 23 | 920 | US$ 13,00 | US$ 11,960.00 |
| 10/12 OZ | 37 | 1.480 | US$ 13,00 | US$ 19,240.00 |
| 12/14 OZ | 23 | 920 | US$ 13,00 | US$ 11,960.00 |
| 14/16 OZ | 16 | 640 | US$ 13,00 | US$ 8,320.00 |
| 16/20 OZ | 14 | 560 | US$ 13,00 | US$ 7,280.00 |
| | 263 | 10.520 | | US$ 138,920.00 |

OCEAN FREIGHT ........................... US$  1,458.28

TOTAL CFR .............................. US$ 140,378.28
GROSS WEIGHT: 3.340 KG / NET WEIGHT: 3.030 KG
CONTAINER NR.: GCEU 797.080-0 / SEAL NR.: DT 430125 / SEAL SGS NR.: 0004697
***PRODUCT ELABORATED AND PACKED BY: ICAPEL – ICAPUÍ PESCA LTDA – SIF 971***
ADRESS: VILA BARRA GRANDE, S/N – CENTRO – ICAPUÍ/CEARÁ/BRAZIL

PROCAPUÍ PRODUTORES DE CAMARÕES DE ICAPUÍ LTDA

Marcial Gerald Layani
Manager

**PROCAPUÍ**
THE NOBILITY OF THE SEA.

**DE CAMARÕES DE ICAPUÍ LTDA**
CNPJ 04.198.103/0001-69  CGF 06.305.020-0
Vila Barra Grande, S/No. – Centro – Icapuí/Ce/Brazil
Fone:(85)263.2622 - Fax:(85)263.3327

| | |
|---|---|
| **No.:** CL-009/02T | **DATE:** JULY 16, 2002. |

**BUYER:** G. F. HIGGINS, INC, S.A.
825 WASHINGTON STREET, PEMBROKE,
MA 02359 - USA.

**OUR SALE OF:**    BRAZILIAN FROZEN ROCK
LOBSTER TAILS "PROCAPUÍ BRAND"
**TERMS:**

| SHIPPED PER: CAP SAN LORENZO. | FROM: PECEM/CE/BRAZIL TO: NEW YORK/USA |
|---|---|

**MARKS:**    PROCAPUÍ/BRAZIL
GF HIGGINS/USA

**CONSIGNED TO:** G. F. HIGGINS, INC. S.A.

**INSURANCE:** COVERED BY BUYER

**NOTIFY:** BOSTON DAY BROKERS
88 BLACK FALCON AVE,
BOSTON, MA 02210 - USA
PHONE: 617-737-5100/617-737-2411
ATTN: LINDA QUASARANO.

**TERMS:**
[ X ] FOB        [ ] C&F            [ ] CFR

**DRAFT No.:** CL-009/02T  AT THE AMOUNT OF US$ 104,068.00  REPRESENTING 100% OF THIS COMMERCIAL INVOICE DRAWN TO THE ORDER OF
AGAINST

[ ] AT COLLECTION BASIS    [ X ] REMITTANCE   [ ] UNDER LETTER OF CREDIT No.:

### SPECIFICATION OF GOODS

01 (ONE) PART CONTAINER FCL/FCL OF 40 FT CONTAINING:

167 (ONE HUNDRED SIXTY SEVEN) MASTER BOXES CONTAINING FOUR BOXES OF 10 LBS
TOTALING 40 LBS NET EACH OF "BRAZILIAN FROZEN ROCK LOBSTER TAILS" IQF
IWP "PROCAPUÍ BRAND". TOTAL NET WEIGHT: 6.680 LBS. AS BELOW:

| SIZES | BOXES | LBS | PRICE/LB/FOB | AMOUNT |
|---|---|---|---|---|
| 03 OZ | 10 | 400 | US$ 12,50 | US$  5,000.00 |
| 04 OZ | 25 | 1.000 | US$ 14,50 | US$ 14,500.00 |
| 05 OZ | 15 | 600 | US$ 16,70 | US$ 10,020.00 |
| 06 OZ | 13 | 520 | US$ 16,70 | US$  8,684.00 |
| 07 OZ | 16 | 640 | US$ 16,70 | US$ 10,688.00 |
| 08 OZ | 16 | 640 | US$ 16,70 | US$ 10,688.00 |
| 09 OZ | 17 | 680 | US$ 15,60 | US$ 10,608.00 |
| 10/12 OZ | 18 | 720 | US$ 15,40 | US$ 11,088.00 |
| 12/14 OZ | 17 | 680 | US$ 15,40 | US$ 10,472.00 |
| 14/16 OZ | 12 | 480 | US$ 15,40 | US$  7,392.00 |
| 16/20 OZ | 08 | 320 | US$ 15,40 | US$  4,920.00 |
| | 167 | 6.680 | | US$ 104,068.00 |

GROSS WEIGHT: 3.340 KG  /  NET WEIGHT: 3.030 KG
CONTAINER NR.:              / SEAL NR.:              / SEAL SGS NR.:
***PRODUCT ELABORATED AND PACKED BY: ICAPEL - ICAPUÍ PESCA LTDA - SIF 971***
ANDRESS: VILA BARRA GRANDE, S/N - CENTRO - ICAPUÍ/CEARÁ/BRAZIL

PROCAPUÍ PRODUTORES DE CAMARÕES DE ICAPUÍ LTDA

p/ Marcial Gerald Lavani
Manager



**PROCAPUÍ** BRAND®

THE NOBILITY OF THE SEA.·

CNPJ: 04.198.103/0001-69    CGF: 06.305.020-0

June, 24ᵗʰ 2005.

I, Marcial Gerald Layani, do make the following declarations.

On June 29ᵗʰ, 2004 I have declared ,that I personally have diverted funds, profits and capital, from Procapui Ltda, Brasil. This process was partially done with the help of shareholder officers of G.F.Higgins Pembroke U.S.A. Specifically Gerry Higgins and Thomas Higgins.

Our official invoices for shipments of lobsters and shrimps from Procapui Ltda Brasil; were approximately 20-50% less than actual real value of ""same day price" of the "same type of goods". This extra 20-50% was shared between Higgins and myself, Marcial Gerald Layani.

Thomas Higgins has full knowledge of this fact. Plus the facts such as, we were shipping illegal size lobsters (sizes 2 & 3) from Brazil. (the shared profits were very high on these illegal lobsters). And also both Thomas and Gerry Higgins were well aware that the money send to various accounts-other than Procapui Ltda, in Brazil-;were for our mutual benefits and for our illegal activities. And the money send had absolutely nothing to do with Procapui Ltda., and with personal guarantee of Jozef Anavian.

As a matter of record, G.F. Higgins owes Procapui Ltdá.. Brasil, over $1,000,000.00 for the actual shipments. Plus he owes Procapui Ltda ., and its shareholders one half of all the illegitimate discounts that they have received.

All these were done with total secrecy from the shareholders of Procapui Ltda., shareholders .None of the members of my family or the shareholders of Procapui Ltda., were aware of any of these illegal activities.

Marcial Gerald Layani
President and General Manager

Witnesses

Leyla Anavian

AV. ENG. ALBERTO SÁ, 480 – PAPICU – CEP 60175-395 FONE/FAX: +55 (85) 262-7550
FORTALEZA/CE - BRASIL

G F HIGGINS . INC
Bob, THOM, GERALD HIGGINS

$ 1-000. 000 ⁰⁰

PRODUTORES DE CAMARÕES DE ICAPUÍ LTDA.



PROCAPUÍ
THE NOBILITY OF THE SEA.

*Mike Layani*
PRESIDENT

Av. Engenheiro Alberto Sá, 480 ~ Papicu ~ Fortaleza - CE ~ CEP 60175-395
Fone: (85) 262.1857 ~ Fax: (85) 262.7550 ~ E-mail: mikelayani@yahoo.com