happening. For him to say he did not learn of our problems or the money we owed to the Higgins company before 2004 is simply false.

10. Mr. Anavian visited Brazil every other month from the time we started the company. He owned a home near the company's fish business. He, indeed, owned the building immediately next to the offices of Eunice Leal Oliviera where the company's records were kept. He had access to any information he wanted. When the Higginses came to visit Brazil to discuss business, they often stayed at Mr. Anavian's home. Business discussions were held in Mr. Anavian's presence. They often had dinner with Mr. Anavian either in his home or at a restaurant. I heard them discuss with Mr. Anavian the sums that were due them. In 2004, during one of their visits to Brazil, they told Mr. Anavian that payments had gotten behind and that they were owed some $300,000. Mr. Anavian promised them that he would ship three or four containers of lobster by year end 2004 or that he would see the difference was made up by cash payments. As I recall, he did not keep his promises. Under our agreement with G.F. Higgins, we were required to bring our balance to zero by the end of each calendar year.

11. G.F. Higgins and the Higgins family members have been wrongfully named in this proceeding. All they did was to advance money to Procapui, over and over again, and purchase shrimp and lobster from us. They provided capital to help us get started and to keep us in business. My uncle, Jozef Anavian, has sued them without any evidence based on his guesswork that, if Procapui's business failed, it must be someone's fault and he has selected Higgins to blame because he wants to protect his New York home from foreclosure and because he thinks they have deep pockets.

