UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
PROCAPUI-PRODUTORES de CAMAROES de
ICAPUI LTDA.

                    Plaintiff,

          v.

MARCIAL GERALD LAYANI, G. F. HIGGINS,
INC., THERESA HIGGINS, as Executrix of
the Estate of GERALD FRANCIS HIGGINS,
IN
THOMAS HIGGINS, ROBERT HIGGINS,
RICHARD RUBIN and NOEL BLACKMAN,

                    Defendants.
------------------------------------------------------------------x
G.F. HIGGINS, INC., THERESA HIGGINS, as
Executrix of the Estate of GERALD FRANCIS
HIGGINS, THOMAS HIGGINS and ROBERT
HIGGINS,

               Third Party and
                Supplemental Plaintiffs,

          v.

JOZEF ANAVIAN,

             Third Party and
              Supplemental Defendant.
------------------------------------------------------------------x

07 Civil Action
File No. 6627-BSJ
Mag. Judge Andrew
J. Peck

DECLARATION OF
THOMAS HIGGINS

SUPPORT OF
MOTION TO
DISMISS AMENDED
COMPLAINT

       **THOMAS HIGGINS,** declares the following under penalty of perjury:

-1-

1. I am a Defendant and Third Party Plaintiff in the above action. I make this Declaration on my own knowledge in support of our Motion to Dismiss the Plaintiff's Amended Complaint and in Reply to the papers submitted by Plaintiff on this Motion. I am an officer of G.F. Higgins, Inc. and have been for many years and am personally familiar with all of the matters stated herein.

2. I am advised that, on a motion to dismiss a pleading for failure to state a claim or for lack of particularity, the Court may consider only the pleading being challenged. I will, therefore, not attempt here to contravene the many allegations of the Amended Complaint or even of the Declaration of Jozef submitted on this Motion. I deny absolutely any wrongdoing and all of the allegations of the Amended Complaint that suggest that there was any wrongdoing or that we "conspired" with Michael Layani or that we benefitted financially from any of the transactions he is said to have carried out, other than normal business honest dealings where we bought shrimp and lobster from Procapui and sold them in the U.S. I will, however, deal with the allegations regarding the Statute of Limitations issues and the issue relating to the Court's jurisdiction over the case given Michael Layani's presence in the case.

3. Regarding the Limitations issue, I understand that Mr. Anavian is saying that he did not know of any of the claimed wrongdoing before he moved to Brazil

full time in 2004.  First, of course, Mr. Anavian is not the Plaintiff here, Procapui is. As I understand it, the issue is what did Procapui know, when did they know it or, rather, when did Procapui learn facts which should have caused them to investigate the facts.  Procapui had an outside accounting firm, a Mr. Sidou, and an internal officer, Michael Donnelly, who, I understand, kept the records and who was responsible for reconciling Procapui's shipments and invoices and making the required exchange control reports to the Brazilian government.  Even if Michael Layani were hiding information from Mr. Anavian, there were others at Procapui who could easily tell what was occurring.  If, as Mr. Anavian says, goods were been shipped to us and no money was received by Procapui because it was "diverted" as Mr. Anavian seems to say happened, there were Procapui personnel following such matters who could have and should have noticed and looked into it.  Obviously, also, Mr. Anavian did not learn of the wrongdoing alleged because there was no wrongdoing, at least as far as the Higginses are concerned.  The "schemes" and "conspiracies" and "racketeering" alleged are all the figment of Mr. Anavian's imagination.  He needs to explain the failure of his business and to prevent the foreclosure of his New York property so he conjures a massive "conspiracy".

4.  Of course, it is also not true that, before 2004, Mr. Anavian did not know what was occurring in Procapui's business.  Mr. Anavian had a home in Brazil near

the fish farm. I understand he visited Brazil at least every other month from the time of his investment until he moved there full time in 2004. Members of the Higgins family, including my father, before his death, and my brother, Robert, and I visited Brazil numerous times before 2004, commencing as early as 2001. While we would not always see Mr. Anavian while there, he was frequently there when we were there prior to his move in 2004. Except for our very first visit when we stayed in a hotel, we always stayed at what we understood was Mr. Anavian's house and held business and social meetings with him. We never refused or declined to answer any question he asked or kept him in the dark on anything that was going on. He was, we understood, a large investor and he guaranteed Procapui's obligations to us in 2002. He told us at that time that he was happy with the way things were going with Procapui and that is why he agreed to guaranty Procapui's obligations to us and to collateralize the guaranty with his home in New York State. (See, for example, the letter he wrote to my father dated June 1, 2002, which I have attached and which bears Bates Nos. PO 1918-19.) I personally discussed with Anavian where we stood on the balances due to us. In 2004 when Procapui began to get seriously behind in its obligations, we raised the issue with him. He expressed no surprise and specifically promised me that Procapui would ship us three or four containers of lobsters by year end and that all balances would be brought even by

year end as was provided in out contract. He failed to keep his promise. The 2004 events were typical of our dealings with Mr. Anavian. We, of course, did not discuss with him any claimed diversions of funds because, so far as we knew, there were none.

    5. Procapui, through its officers and employees, always knew everything that was occurring. As stated, Mr. Anavian knew or was certainly in a position to know everything. The Court should recall that the alleged "fraud" Plaintiff is trying to establish is said to have occurred entirely on documents created not by us but by Procapui. The invoices they complain about were all their invoices prepared by Procapui in Brazil. The wire transfer instructions which we followed and which they complain resulted in "diversions" were all prepared by Procapui in Brazil. Wire transfer instructions were signed by Layani but also by Michael Donnelly, by Mr. Anavian's sister, Rita Ruth Zahabian and, in one or two cases, by Mr. Anavian himself. The only documents prepared and sent by us were the orders we sent to purchase fish, orders which match the amounts which we then credited to Procapui for the shipments and which, therefore, evidence the transaction which actually occurred in each case. Plaintiff do not and have not complained that any of those orders were misleading in the slightest degree. The documents we generated were correct. The prices in the orders were the prices we believed as businessmen we

could pay for the fish, import it with the risk of market changes during shipment and resell it in the U.S. at a profit. The documents the Plaintiff says are misleading or evidence of a claimed conspiracy are all generated by Procapui. In other words, Procapui always had all of the information relating to these transactions. There was nothing to "discover" at some later date. They already had the information. Even if they claim they did not know of the "diversion" - although Procapui's wire transfer instructions show where Higgins sent all the funds transmitted - certainly when they sent several containers of fish to us and - by their theory - did not get paid for it or had not already received an advance of funds paying for it, they could not escape knowing what was going on. Of course, nothing was going on. We are being sued for something that never happened and then told we may not assert the Statute of Limitations because Procapui could not have "discovered" it sooner. There was nothing to "discover" and, if they think there was, they have always had all documents in their hands from which to "discover" it.

6. The Plaintiff seems to be trying to make a claim that Layani and the Higginses imported "illegal" lobsters into the U.S. There was a brief period of no more than a couple of months in June and July of 2004 when the U.S. and Brazilian governments prohibited the import of lobsters under a certain size. There were no shipments of any lobsters of any size during that period. End of story.

7. The Plaintiff in its papers on this Motion make a great deal out of the fact that Mr. Layani provided a Declaration in support of our first motion to dismiss. They seem to be saying that our obtaining this declaration shows that we are somehow continuing to "conspire" with Mr. Layani. Mr. Layani called me twice in late 2005. Each call was very brief and consisted of Mr. Layani apologizing to me for the way things had turned out and little else. I have not spoken to him since this action was filed in July, 2007, other than the two calls in late 2005, since we made our demand for payment in 2005. At the request of our counsel and not knowing where Mr. Layani was, in August, 2007, I sent an email to Mr. Layani at an email address I found on an old business card asking him to get in touch with our attorney. I did not speak to him then. He contacted our attorney and provided the declaration which is on file with the Court. I understand our attorney has provided the email traffic between Layani and me or between Layani and the attorney during that period to Plaintiff's counsel. To try, as Plaintiff seems to be doing, to use as evidence of a "conspiracy" the fact that, having been sued for $7 million, we reached out and tried to find the one witness who might actually know what occurred in Brazil, seems somewhat silly. Of course, we reached out for the witness. To do otherwise would be irresponsible. Again, there has been no communication between the Higginses and Michael Layani since 2005 when we

ceased doing business with Procapui except as above.

I declare the foregoing to be true and correct under penalty of perjury.

Dated: April 29, 2008

/S/_____
THOMAS HIGGINS