UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
PROCAPUI-PRODUTORES de CAMAROES de
ICAPUI LTDA.

                    Plaintiff,

       v.

MARCIAL GERALD LAYANI, G. F. HIGGINS,
INC., THERESA HIGGINS, as Executrix of
the Estate of GERALD FRANCIS HIGGINS,
THOMAS HIGGINS, ROBERT HIGGINS,
RICHARD RUBIN and NOEL BLACKMAN,

                    Defendants.
------------------------------------------------------------------x
G.F. HIGGINS, INC., THERESA HIGGINS, as
Executrix of the Estate of GERALD FRANCIS
HIGGINS, THOMAS HIGGINS and ROBERT
HIGGINS,

              Third Party and
               Supplemental Plaintiffs,

       v.

JOZEF ANAVIAN,

            Third Party and
               Supplemental Defendant.
------------------------------------------------------------------x

07 Civil Action
File No. 6627-BSJ
Mag. Judge Andrew
J. Peck

DECLARATION OF
JOHN J. PHELAN, III
IN SUPPORT OF
HIGGINS PARTIES'
MOTION FOR
SANCTIONS

      JOHN J. PHELAN, III, declares under penalty of perjury that the following statements are true and correct:

-1-

1. I am a member of the Bar of this Court and am attorney of record for G.F. Higgins, Inc., Theresa Higgins as Executrix of the Estate of Gerald Francis Higgins, Thomas Higgins and Robert Higgins (the "Higgins Parties") in the within action. I make this Declaration on my own knowledge based on my participation as counsel for the Higgins Parties. It is made in Reply to the papers filed on April 30, 2008 by Plaintiffs in opposition to the Higgins Parties' Motion seeking sanctions pursuant to Rule 11 F.R.Civ.P. against Plaintiff, Third Party and Supplemental Defendant Jozef Anavian ("Anavian") and against their counsel, Luigi DeMaio and his law firm DeMaio & Hughes, LLP and in further support of that Motion. Filed herewith is a declaration of Thomas Higgins dated May 6, 2008. The Court is also asked to read the declaration of Jozef Anavian submitted in opposition to the motion to dismiss the Amended Complaint which motion was submitted to the Court on May 2, 2008. No reply Memorandum is filed at this time as the Higgins parties will rely on their earlier Memorandum in support of the Motion for Sanctions.

2. The Plaintiff and Anavian have filed a declaration of Luigi DeMaio and a number of exhibits and a short Memo of Law in answer to the Motion. Plaintiff attempts to show that its actions and, perhaps more so, those of its counsel, were reasonable and based on credible evidence tending to show that the allegations of the Complaint were accurate and well founded. In fact they show the opposite. The papers filed by Plaintiff and Anavian and, particularly, the exhibits attached reveal an attempt to defraud this Court and the other parties and counsel by creating and filing falsified documents. This obviously heightens, not diminishes, the grounds for sanctions.

3. The exhibits annexed to the DeMaio declaration fall into several categories:

A. There are exhibits which are nothing more than compilations or summaries of business

records of transactions between the parties (Exhibits E, H and I.) These are based on records provided by the Higgins parties during discovery in this action or in the prior State Court action. These transactions, without additional proof, show nothing more than that there were dealings in shellfish and in funds between the parties. They are far more consistent with innocent business activity than they are with the Plaintiff's conspiracy theories. We have not cross-checked these schedules for accuracy and completeness and do not concede either at this time.

      B. There is a document attempting to show that Mr. Layani is a "bad guy", a purported arrest warrant, Exhibit J to the DeMaio declaration. Read in plain English and assuming it is genuine, it is a warrant based on the fact that the Brazilian police tried to get Mr. Layani to come in for an inquiry or investigation and couldn't find him. It neither charges nor convicts him of any crime except failing to show up for an interview. This is, we assume, the "criminal investigation" in Brazil which is alleged in the Amended Complaint and repeatedly referred to in Plaintiff and Anavian's papers. This is typical of the careless and unsupported allegations and assertions in Plaintiff's papers. It demonstrates why their conduct is sanctionable. The address to which the Police sent the notice for Layani was Anavian's address in Brazil, not Layani's. But, in any case, so what? This does nothing to establish what Procapui needs to establish, that the Higginses were involved in a conspiracy, not that Layani was involved in a Brazilian inquiry. Procapui's attempt to paint Layani as a "bad guy" with this sort of flimsy evidence, if it can be called that, ought not be countenanced by the Court and, in any event, has nothing to do with the Higgins parties. Yesterday, May 7, 2008, we received from Brazil two official government documents, in Portugese, which are not in PDF format and which we have not had the time to have translated which, we understand, say that (i) there are no pending charges against Layani in Brazil at the

present time and (ii) the paper attached to the DeMaio declaration as Exhibit J, the purported warrant, bearing the purported handwritten signature of Judge Raimundo Deusdeth Rodrigues Junior was not signed by him as no documents are issued out of the Court or signed by the Judge in English.  We will furnish certified translations as soon as possible.

    C.  There are records from the Central Bank of Brazil, Exhibits C and D.  In the accompanying declaration of Thomas Higgins, he advises the Court that the Higgins parties had nothing whatever to do with the Brazilian Central Bank.  The Higginses never filed a single paper with or provided any information to the Bank.  The Central Bank has never made a single inquiry or communicated in any way with the Higginses.  The information which the Central Bank summarizes in the Exhibit C and D reports is based solely on what Procapui told them or which they, perhaps, gleaned from other banking or export records.  If the Central Bank suggests that Higgins owed Procapui money when the exact opposite is the fact, that can only be because that is what Procapui told the Central Bank.  In any case, it is not binding on Higgins.  Under the law of neither the U.S. nor that of Brazil, did the Higgins parties have any obligation to make any reports or to comply in any way with Brazilian law.  The contract between the parties, annexed as an Exhibit to the Higgins Parties answer in this action, states that Massachusetts law controls the dealings between the parties and does not mention Brazilian law or the Central Bank of Brazil.

    D.  In the Thomas Higgins declaration, he discusses Exhibits F and G, Mr. Higgins discusses the documents annexed as Exhibits F and G.  Those documents relate to a company called IMA Ltd.  On October 27, 2004, Layani emailed Higgins and asked them to confirm certain facts to a bank for the purpose of helping Layani and his business to get a loan.  He even provided the language of the letter he wanted the Higginses to sign.  Layani admits that the letter he wants

the Higginses to sign is all "fictice" (sic). Thomas Higgins did NOT sign that letter. He would not do so. IMA was a company that was, as Higgins understood, being set up to obtain financing and to do business in the export of fish similar to that of Procapui owned and operated by Layani and Anavian. Anavian testified in his State Court deposition that he was a "Director" of IMA. In responding to Layani's request, Thomas Higgins did not follow the script provided by Layani. He confirmed that Higgins had a relationship with "the principals of IMA Ltd." and that they had been purchasing shrimp and lobster from them for several years", all of which was absolutely true. The balance of Mr. Higgins's letter is also entirely true if the term "principals of IMA Ltd" is substituted for "IMA Ltd." The Higgins letter is written carelessly by a businessman who failed to distinguish the entity from its principals. In any case, no matter how you read the letters, they say absolutely nothing about any of the "conspiracies" alleged between Layani and the Higgins parties to divert funds from Procapui. So far as is known, IMA never got off the ground and never borrowed any money. We don't even know if Mr. Higgins's letter was ever even shown to any bank.

    E. The next group of exhibits annexed to DeMaio's declaration are those dealing with the issue of the authority of Anavian or anyone at Procapui other than Layani to bring this action, Exhibits K, L and M. Layani states in his declaration dated April 29, 2008 that he is the 99.99% owner of Procapui up until today and attaches a document, Exhibit 1 to his declaration, which is from a government office in Brazil dated November 29, 2007 which states that he is. DeMaio attaches Exhibits K, L and M to his declaration to show that Anavian has authority to bring the action. Putting aside Exhibit L, allegedly signed by an unknown person, that leaves us with Exhibit K in which Mr. Layani says he owns the company, has sole authority to bring the suit and

has not done so, and Exhibit M which DeMaio says is a letter signed by Layani authorizing Anavian to bring the action. (Why, if Anavian controlled Procapui, he would need this letter, is, of course a mystery. It is only relevant if Layani, in fact, did control Procapui.) **In any case, Exhibit M is a forgery**. The Court should know that Exhibit M was produced during the litigation by Plaintiff to Defendants but only on December 18, 2007 and only after the Higgins parties had raised the issue of Anavian's authority and only after specific requests for documents evidencing authority which were initially objected to. Layani swears that Exhibit M to the DeMaio declaration is a forgery and that both the signatures of himself and of his mother, Leyla Anavian, are forged on that document. Neither Anavian nor any other person has provided a sworn declaration to the Court saying that he witnessed either Layani or Leyla sign it. The notarial stamp on it, if that is what the stamp is, is dated November 30, 2005, five months after its purported June 24, 2005 date. *Even more important is that the document contains its own internal proof of its forged character.* The document is dated in the upper right corner "June 24th 2005". The text of the letter says that Layani appoints Anavian "to be the officer representing PROCAPUI LTDA. in the USA Supreme Court case number 603300/95 (sic) and any subsequence (sic) court cases." The index number for the State Court case between the parties which preceded this action is 603300/05 (not 95). Annexed to this declaration as Exhibit 1 is a copy of the computer printout from the computer of the New York County Supreme Court showing that the index number, "603300 2005", was issued by the new York County Clerk for an action between "G F Higgins Inc" and "Procapui Produtore" on "09152005". **The New York Supreme Court case was first filed on September 15, 2005, nearly THREE MONTHS AFTER the June 24th date on the Exhibit M letter annexed to the DeMaio declaration,**

-6-

**which letter recites the index number.** It is obviously impossible for DeMaio, Layani, Anavian or anyone else to have known or to have predicted the index number which would not be assigned to the case for another nearly three months. **The Exhibit M letter is a forgery, a document created by Plaintiff and Anavian after the litigation was well along.** The obvious intent was to create evidence of authority on the part of Anavian to bring the suit when such evidence was demanded in late 2007. Just as obviously, if Procapui were not owned by Layani and if Anavian had the unquestioned authority to bring the action, such perjurious actions would not have been necessary. Clearly, Plaintiff has produced to the Defendants and has filed with the Court a false document and is now attempting by attaching it to the DeMaio declaration to argue its authenticity and persuasive character. Clearly, also, Plaintiff's counsel, who represented Procapui and Anavian in the Supreme Court action, although not at the time of its filing, was in a position to cross-check the dates as I did before producing and then filing a false document. The document is annexed to a declaration, not of Anavian, but of counsel, Mr. DeMaio. While counsel would argue, I am sure, that the document is offered by him to show the reasonableness of his actions before the Court in defense of the sanctions motions, not necessarily the authenticity of the document, he cannot rely on a demonstrably false document for any purpose. To do so is equivalent to saying that his client has lied to him and that he failed to catch the lie.

     F. Finally, annexed to the DeMaio declaration are two more documents, Exhibits A and B. Exhibit B is a letter dated June 3, 2004 which Layani agrees he did sign. It says that, at that time, Procapui owed Higgins $1,150,000 and would work to reduce that amount. Mr. Layani says in his declaration that he signed the Exhibit B letter and that it is accurate. He says, however, that neither he nor his mother, Leyla, signed the Exhibit A letter which is the supposed

"confession" by Layani which names the Higgins parties. It was attached to the Complaint and to the Amended Complaint. **This document is also clearly a forgery, a document. First, it is dated "June 24th 2005", the exact same date as the phony Exhibit M.** Obviously, both would have had to have been signed on the same day, June 24, 2005 to be valid. We have established that one was not since the information within it could not have been known for months afterwards. This creates an overwhelming inference that the other, supposedly signed by the same persons on the same day, was not as well. Second, it states that "we were shipping illegal lobster sizes from Brazil". As Thomas Higgins pointed out in his April 30, 2008 reply declaration on the dismissal motion, the "illegal lobster" issue was only in effect for two months or so in the summer of 2004 and that no lobster at all of any size was shipped during that period. Mr. Anavian, in his declaration dated September 14, 2007, says that "[s]ince that date [the date of the "confession"] I have had virtually no communication whatsoever from or with Layani". Presumably that means that, after June 24, 2005, there were no further communications. If that is so, it would explain why Anavian picked June 24 when he later concocted the forged documents. He picked a date when he believed Layani was in Brazil. Oddly, the Anavian declaration also says that the confession covers the scheme "...with G.F. Higgins, Thomas Higgins, Robert Higgins, Rubin and Blackman...". In fact, the supposed "confession" does not mention Rubin and Blackman.

    4. There is another document, dated June 29, 2004, nearly a year earlier, (Exhibit 2 hereto) which Layani also says he did not sign. It does not mention the Higginses and says that Layani is "confessing" to certain wrongdoing at Procapui and agreeing to repay everyone. The date on this document is significant. The June 24, 2005 "confession" refers apparently to this Exhibit 2 document. It says, "On June 29th, 2004 I have declared..." and describes some of the

-8-

information in the Exhibit 2 document. Mr. DeMaio, in his declaration dated April 30, 2008 quoting the June 24, 2005 "confession" places a "(sic)" after the June 29th, 2004 date and drops a footnote. The footnote says "Actually dated June 2005". Now, if Mr. DeMaio is correct about the dates, how could a document dated June 24, 2005 be describing what he said in a June 29, 2005 document, one written supposedly five days later? Either the date of the Exhibit 2 document is 2004, pushing the discovery of the alleged wrongdoing back to sometime well before June 29, 2004, which Anavian has expressly denied (see ¶¶ 5-6 of his declaration), or the date is 2005 confirming that the June 29, 2005 letter cannot be correctly dated. If they had put all the information together so as to prepare a lengthy "confession" by June 29, 2004, they must have begun to gather the information considerably earlier. The June 29, 2004 is the end product of an obviously lengthy investigation. That is entirely inconsistent with the "late 2005" date Anavian says in his declaration he started to learn of Layani's alleged misdeeds.

    5. In short, the Plaintiff is attempting, none too carefully, to concoct and to place false evidence before the Court and to mislead the Court and counsel by these forged documents.

    I declare the foregoing is true and correct under penalty of perjury.

Dated: May 8, 2008

/S/_____
John J. Phelan, III

**CERTIFICATE OF SERVICE**

-9-

JOHN J. PHELAN, III, hereby certifies as follows:

1. I am attorney of record for The Higgins Defendants in the within action and am a member of the bar of this Court.

2. On May 8, 2008, I served (i) the Reply declarations of Thomas Higgins and John J. Phelan, III, and exhibits on Luigi DeMaio, Esq, DeMaio & Hughes, 330 East 30th Street, New York, NY 10016, attorneys for Plaintiff, upon Lawrence R. Lonergan, Esq., Attorney for Defendant Rubin, 275 Seventh Avenue, New York, NY 10001 by filing such papers with the Clerk by electronic means on the Court's CM/ECF system and upon Noel Blackman, Defendant *pro* se, by U.S. mail addressed to 14706 Hallwell Ct., Cypress, TX 77429-2385.

Dated: New York, NY
       May 8, 2008

                                            Yours, etc.
                                            John J. Phelan, III, P.C.


                                            By /S/_____
                                              John J. Phelan, III (JP8632)
                                            Attorney for Higgins Defendants
                                            1285 Avenue of the Americas, # 3500
                                            New York, NY 10019
                                            Tel: (212) 315-3082
                                            Fax: (212) 315-3028
                                            email: jphelaniii@att.net