

RECEIVED
AUG 06 2008
CHAMBERS OF
ANDREW J. PECK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 8/6/08

# DE MAIO & HUGHES, LLC.
Attorneys and Counselors at Law

Hon. Aniello De Maio (1878-1945)*

Luigi Biaggio Maria De Maio (1879-1967)*

John Henry De Maio (1912-1967)

Hon. Thomas J. Hughes (1912-1996)

Louis Victor De Maio (1916 - 1965)

Luigi P. De Maio

330 East 30th Street
NEW YORK, N.Y. 10016
TELEPHONE: (212) 888-8300
FACSIMILE: (212) 889-1391
E-mail:luigidemaio@netscape.net

Columbia County Office:
2540 State Route 82
Ancram, NY 12502
Tel: (518)329-2962
Facsimile: (518) 329-0852

*not admitted in New York

August 7, 2008

**BY TELECOPIER (212)805-7933**
Magistrate Judge Andrew J. Peck
United States District Court
United States Courthouse
500 Pearl Street - Room 1370
New York, NY 10007-1312

**MEMO ENDORSED**

Procapui Productores De Camaroes De
Icapui Ltda v. G.F. Higgins, Inc., et al
07 Civ. 6627 (BSJ)

Dear Magistrate Judge Peck:

We are the attorneys for plaintiff herein.

Despite the good relationship which counsel herein enjoy, an issue has arisen which requires your intervention.

Plaintiff previously requested and you ordered, over defendants objection, that defendants produce invoices for lobster and shrimp purchased from suppliers other than Procapui during the relevant period. The relevance of that information was apparent from the fact that Layani has executed a sworn statement that he engaged in an "agreement", for want of a more descriptive term, with Higgins to sell it lobster and shrimp at extraordinary and improper discounts and then share the ill-gotten gains with the principals of Higgins. Therefore, the prices that Higgins was paying to arms' length suppliers during the relevant period was most relevant.

For the relevant years, we have prepared a compilation of sales by Procapui to Higgins

compared with sales by Higgins to end users. They are as follows:

### SALES BY PROCAPUI TO G.F. HIGGINS BY YEAR[1]

| Year | Amount |
| --- | --- |
| 2000 (Waxtrade) | $249,220 |
| 2001 | $1,848,838 |
| 2002 | $6,941,215 |
| 2003 | $3,104,062 |
| 2004 | $159,610 |
| **TOTAL SALES** | **$12,302,945** |

### HIGGINS TOTAL SALES PER YEAR[2]

| Year | Amount |
| --- | --- |
| 2000 | $17,040,000 |
| 2001 | $19,617,000 |
| 2002 | $21,069,000 |
| 2003 | $13,928,000 |
| 2004 | $19,758,000 |

We have learned from the Sovereign Credit Memorandum, copy enclosed, that, for instance, in 2001 Procapui accounted for only 21.2% of Higgins' purchases and that the remaining 78.8% was purchased from other suppliers. We also learned from the Sovereign Memoranda, copy enclosed, that shrimp and lobster account of 64.6% of Higgins' annual sales.

Despite the above, defendants have produced only the following invoices for the years in issue:

| Year | No. of Invoices | Total Value |
| --- | --- | --- |
| 2000 | 1 | $12,566.40 |
| 2001 | 2 | $16,941.40 |
| 2002 | 2 | $30,732.50 |
| 2003 | 0 | 0 |
| 2004 | 3 | $100,150.81[3] |

Obviously, the production is far short of the shrimp and lobster purchases of Higgins from other suppliers for the years in question.

---

[1] Compiled from the invoices produced by Higgins

[2] Compiled from the information given by Higgins to Sovereign Bank in support of the credit file.

[3] Interestingly, Higgins produced the most invoices for the year 2004 during which the Procapui sales were negligible.

However, even those invoices which have been produced indicate that Higgins was paying substantially higher prices to the invoicing supplier than it was to Procapui. To the extent possible, given the paucity of records produced, we compared like product prices on like dates.

In addition to the above, the Sovereign Bank documents reveal other disturbing information which supports the request for the above documents. For instance, apparently Higgins informed Sovereign that there was a "partnership" between Higgins and Procapui and that Higgins was entitled to the "exclusive use" of the name Procapui and further that Higgins was the "sole importer" of Procapui products.[4] Procapui had no knowledge of any of these alleged arrangements. I enclose copies of the pertinent portions of the Sovereign Memoranda.

Lastly, the Sovereign documents include additional information which support the above request. Disturbingly, we read the following which was obviously communicated to Sovereign by Higgins:

> RECENT DEVELOPMENTS:
> Because G.F. Higgins sources products internationally as well as domestically the Company has been able to maintain a lower sensitivity to price fluctuations and supply constraints. **Recently, G.F. Higgins has increased the amount of business it conducts with a Brazilian supplier and has agreed to sell the product under the Procapui Band. The two main products sourced from the Brazailian supplier include**:
>
> Lobster Tails: Brazilian lobster tails are universally accepted in the industry as the best warm water lobster tail available anywhere in the world. In Brazil there is a well-managed fishery with strict quotas that prevent overfishing. Because it is a wild/non aquacultured fishery, it is not as susceptible to large price changes that have been known to happen in fisheries dominated by aquaculture. In addition, barriers to entry that prevent other importers in the United States from being able to import Brazilian lobster tails help protect the Company from the threat of high competition. The producers in Brazil typically align themselves with one or two US importers and work with that importer to make sure that both parties generate a profit. The target markets for the lobster tails are high-end restaurants and retail store chains.
>
> Shrimp—Farmed white vannami. This species is farmed all over Central /

---

[4] "GFH has formed a new partnership with Procapui / Icapel making GFH the exclusive importer of Procapui Brand Shrimp and Lobster tails. The partnership commenced in May 2001 and going forward all product shipped to the U.S.A will be branded and labeled Procapui Brand, packed by Icapel, and imported by GFH. Of note, Procapui, Pesca Ltd. and GFH jointly own Procapui brand and have an exclusive arrangement. Procapui Pesca has been packing shrimp and lobster tails for over 25 years and will be responsible for 'supplying boats, fisherman, raw material and fishing contracts from "HACCP" approved facilities as well as pricing and other market formation necessary to compete within the market. GFH will provide brand development, sales and marketing, new product development, contracts for chain accounts and retail distribution. [Sovereign Credit Memorandum]

> South America and in increasing amounts from China. Like other farmed seafood, there have been large price fluctuations that have affected this market and have made it difficult to generate profits consistently. <u>However, G.F. Higgins management believes the Company is somewhat insulated from exposure to price fluctuations. Due to the relationship with the Company's Brazilian supplier, the Company can purchase products at adjusted prices based on what the market is willing to bear.</u> Through G.F. Higgins' control over the Brazilian plant, it is able to do things like finger pack and have a quality seal granted by the city in which the plant is located. This allows the Company to brand products and take them 'ut of the commodity category. Additionally, it allows the Company to sometimes get more for the product. Through Higgins' plant intro! in Brazil, the Company has the ability to change the form in which the product comes in, something very few businesses have in Central/South America. The Company can produce blocks, peeled, cooked and IQF products. This means for the same item there are now four different markets for the Company's shrimp resenting further expansion of the Company's potential customer base.(emphasis added) [Sovereign Credit Memorandum]

Thus, Higgins apparently informed Sovereign that it "controlled" the Procapui plant and enjoyed a relationship with Procapui which permitted it to "adjust" prices based apparently upon what Higgins and Layani agreed to be what the "market was willing to bear".

Given the above, plaintiff request that Higgins be directed to produce all invoices for shrimp and lobster from suppliers other than Procapui. In order to facilitate that matter, I am willing to accept all invoices for any products which we will then sort into the relevant invoices or I am also willing to have Higgins produce the invoices for inspection and copying and I will visit the place of production.

## EXTENSION OF SEPTEMBER 26, 2008 DOCUMENT PRODUCTION DEADLINE

Subject to your Honor's agreement, Mr. Phelan and I have agreed to extend the deadline for document production to October 15, 2008.

The reason for the request is that, after the last conference, I was informed that I am expected to be on trial for at least the first week of September and have been called out of the country for the period September 17 through September 30. I do not wish to seek and adjournment of the trial as we have been trying to get a trial date for months.

Since we last met, the parties have already exchanged substantial additional documents and we have completed the deposition of Rita Zahabian.

In the interim, however, we are proceeding with the identified depositions and that of Jozef Anavian will take place in mid-September and I will arrange for a document review of the requested Higgins documents during that period in the event that the within request is granted. We are also proceeding with the depositions of Thomas Higgins and Robert Higgins and

Sovereign Bank in the Boston area during this period.

Respectfully,

Luigi P. De Maio

BY E-MAIL
John Phelan, III, Esq.
Attorney for the Higgins Defendants
1285 Avenue of the Americas- Suite 3500
New York, NY 10019

**MEMO ENDORSED**

1. [Handwritten note, partially illegible] De[fendants] [to] produce documents [by] 10/15 but the completion of all depositions [to occur] by 10/31. [Court is] not going to defer the start. [Court] will [not] allow changes involved of [illegible].

2. [Handwritten] [Court] will hold a conference [phone], 8/8/08 at 9:30 AM, to discuss the letters and response to the letter.

SO ORDERED:

Hon. Andrew Jay Peck
United States Magistrate Judge

**BY FAX**

CREDIT APPROVAL MEMORANDUM

## FINANCIAL ANALYSIS

*The following analysis is based on combined (G. F. Higgins, Inc. and Higgins Realty Trust) reviewed financial statements prepared by Wolf & Co. for the twelve months ended 12/31/00 and 12/31/99 respectively.*

G. F. Higgins reported a net profit of $129M for FY'00 from revenues of $17,040M, compared to a $115M net profit from revenues of $14,146M for FY'99.

- Revenues increased $2,894M (21%) to $17,040M for the fiscal year ended 12/31/00 due to increased volume of high ticket items, such as shrimp, lobster tails, and crab meat under the Company's Nautilus brand program. Volume in actual pounds sold increased 1,351M (54%) to 3,842M pounds for the fiscal year ended 12/31/00, up from 2,491M pounds for the similar period last year. GFH has added many new customers and has increased business with existing customers by adding new items to their product mix, the most successful of these additions being scallops. This is the Company's second year of providing IQF (individually quick frozen) scallops, which represented 22.1% of GFH's product mix. The Company's major products are outlined in the following table:

| ITEM | $ SOLD | % OF TOTAL |
|---|---|---|
| SHRIMP | $6,974,618 | 41.8% |
| SHELLFISH (Lobster Tails / Stone Crab Claws / Langostinos) | $3,803,297 | 22.8% |
| SCALLOPS | $3,694,007 | 22.1% |
| FISH | $2,208,548 | 13.3% |
| **TOTAL** | **$16,670,470** | |

Revenues from new customers totaled approximately $900M during the year and GPH is expecting to continue to improve upon this trend with several new items slated for FY'01. The majority of revenues in FY'00 were derived from State Fish Co., Inc. and Tampa Bay Fisheries. The Company's top twenty customers are outlined as follows:

| CUSTOMER | $ AMOUNT | % OF TOTAL |
|---|---|---|
| State Fish Co., Inc. | $3,599,754 | 30.7% |
| Tampa Bay Fisheries | $1,672,725 | 14.3% |
| Harbor Seafood, Inc. | $857,722 | 7.3% |
| Ocean Venture, Inc. | $702,557 | 6.0% |
| Slade Gorton Co., Inc. | $564,651 | 4.8% |
| Shells Seafood Rest. | $493,386 | 4.2% |
| Waldman Seafood, Inc. | $449,281 | 3.8% |
| Casino Lobster | $289,278 | 3.3% |
| Ocean Seafood Dist. | $346,147 | 3.0% |
| Safe Harbor Seafood | $294,760 | 2.5% |
| Midstates Distributor | $284,327 | 2.4% |
| Dairyland USA Corp. | $702,557 | 2.4% |
| City Line Distributors | $281,632 | 2.4% |
| SFD Int'l / Salasnek | $279,996 | 2.4% |
| State Fish Distributors | $253,848 | 2.2% |
| Sysco Food Svc. / West | $236,600 | 2.0% |
| Two Cousins Fish Mkt. | $190,601 | 1.6% |
| Ipswich Shellfish Co. | $183,963 | 1.6% |
| Fairway Wholesale | $178,194 | 1.5% |
| B-G Lobster & Shrimp | $168,664 | 1.4% |
| **TOTAL** | **$11,711,189** | |

8

SB3107



## ~~~~REIGN APPROVAL MEMORAND~~~~

### SUMMARY FINANCIAL INFORMATION

| FYE: (Date) 12/31 | | 1999 | | 2000 | | 2001 | |
|---|---|---|---|---|---|---|---|
| Revenues | Change | $14,148M | +44.6% | $17,040M | +20.5% | $19,617M | +15.1% |
| Net Income | Net Profit Margin | $115M | 0.8% | $129M | 0.8% | $96M | 0.5% |
| Net Worth | TL/Tang. Net Worth | $619M | 2.85x | $700M | 3.64x | $744M | 3.33x |
| Working Capital | (Curr. Assets – Curr.Liab.) | $340M | | $401M | | $421M | |
| Debt Service Coverage Ratio* | (OCF/DS) | 2.68x | | 2.46x | | 1.64x | |

* Operating Cash Flow – EBITDA – cash taxes paid – unfunded capital expenditures. Debt Service = interest + current maturities of debt.

### FINANCIAL ANALYSIS

Fiscal Year End Performance:

*The following analysis is based on reviewed consolidated financial statements for G.F. Higgins, Inc. prepared by Wolf & Company PC for the twelve-month periods ended 12/31/01 and 12/31/00, respectively.*

Operating Performance:
For the twelve months ended 12/31/01, G.F. Higgins, Inc. reported a net profit of $96M on revenue of $19,617M, compared to a net profit of $129M on revenue of $17,040M for the similar period last year.

- Sales increased by $2,577M to $19,617M for the twelve months-ended 12/31/01. This increase revenue was primarily caused by increases in volume (poundage) sold, coupled with rises in product prices. Total poundage for twelve months ended 12/31/01 increased 259,136 to 4,101,147 from 3,842,012 for the twelve months ended 12/31/00. The bulk of the increased volume stems from the Company's partnership with Procapui / Icapel making GFH the exclusive importer of Procapui Brand Shrimp and Lobster tails. In addition the company has provide the bank with the following information:

Top 10 Vendors:

| Rank | Vendor | Amount | % of Top 10 |
|---|---|---|---|
| 1 | State Fish Co., CA | $ 9,957,890 | 55.1% |
| 2 | Procapui / Waxtrade | $ 3,825,915 | 21.2% |
| 3 | Oak Island, ME | $ 1,809,637 | 10.0% |
| 4 | Harbor Seafood, NY | $ 723,305 | 4.0% |
| 5 | Vietbao Seafood Co. | $ 551,441 | 3.0% |
| 6 | F.W. Bryce, Inc., MA | $ 370,320 | 2.0% |
| 7 | Kiang Ruat Sea Gull Trading | $ 275,940 | 1.5% |
| 8 | Sea-Trek Enterprises, RI | $ 222,043 | 1.2% |
| 9 | Crystal Cove Seafood, NY | $ 176,247 | 1.0% |
| 10 | Slade Gorton, CT | $ 170,948 | 0.9% |
| | | $ 18,083,886 | |

Top 10 Customers (by sales):

| Rank | Customer | Amount | % of Top 10 |
|---|---|---|---|
| 1 | State Fish Co., Inc. | $ 4,693,087 | 40.1% |
| 2 | Ocean Venture, Inc. | $ 1,927,393 | 16.4% |
| 3 | Harbor Seafood | $ 1,038,752 | 8.9% |
| 4 | Super Value Foods, Inc. | $ 912,890 | 7.8% |
| 5 | US Food Service/ Las Vegas | $ 730,942 | 6.2% |
| 6 | Tampa Bay Fisheries | $ 722,315 | 6.2% |
| 7 | Waldman Seafood | $ 493,365 | 4.2% |
| 8 | Ocean Seafood Distributors | $ 441,463 | 3.8% |
| 9 | City Line Distributors | $ 379,010 | 3.2% |
| 10 | Dairyland USA Corp. | $ 378,378 | 3.2% |
| | | $ 11,717,595 | |

SB1184

Top 10 Customers (by sales):

| Rank | Customer | Amount | % of Top 10 |
|---|---|---|---|
| 1 | Ocean Venture, MA | $ 2,637,969 | 41.9% |
| 2 | State Fish Co., Inc., CA | $ 947,126 | 15.0% |
| 3 | Waldman Sfd, NY | $ 602,439 | 9.6% |
| 4 | City Line Dist., NJ | $ 559,838 | 8.9% |
| 5 | China Gate, NY | $ 355,130 | 5.8% |
| 6 | Ocean Sfd. Dist., NJ | $ 351,395 | 5.6% |
| 7 | Vals Ocean Pcf. NY | $ 305,311 | 4.9% |
| 8 | Two Cousins, NY | $ 189,922 | 3.0% |
| 9 | Select Whsle, NJ | $ 174,415 | 2.8% |
| 10 | Crown Fish, NY | $ 167,511 | 2.7% |
|  |  | $ 6,301,056 |  |

Additionally the company's top vendors include:

Top 10 Vendors:

| Rank | Vendor | Amount | % of Top 10 |
|---|---|---|---|
| 1 | State Fish Co., CA | $ 6,236,419 | 53.6% |
| 2 | Procapul, Brazil | $ 2,947,316 | 26.4% |
| 3 | Nha Trang, Vietnam | $ 740,134 | 6.4% |
| 4 | PTN, Thailand | $ 482,346 | 4.2% |
| 5 | Oak Island, ME | $ 284,813 | 2.5% |
| 6 | Ocean Venture, MA | $ 256,849 | 2.2% |
| 7 | Harbor Seafood, NY | $ 225,038 | 1.9% |
| 8 | Fisher King, Canada | $ 221,373 | 1.9% |
| 9 | Phong Nam, Vietnam | $ 189,623 | 1.2% |
| 10 | F.W. Bryce, MA | $ 93,600 | 0.8% |
|  |  | $ 11,627,540 |  |

## MANAGEMENT:

| Name | Age | Title | Years | | % |
|---|---|---|---|---|---|
| Thomas Higgins | 34 | President | 5+ | 1 | 35% |
| Robert Higgins | 32 | VP | 5+ | 5+ | 34% |

Following the death of Gerald Higgins, who had run the Company for 29 years at the time of his passing, the day-to-day operations have been undertaken by his two sons, Thomas and Robert Higgins. Both Tom Higgins and Bob Higgins have been with the Company for several years as they were brought on to assist with the expansion of the business and eventual succession. Tom and Bob were groomed to one-day control the operations of the Company, with Tom heading Sales and Purchasing, and Bob heading inventory control and general and administrative operations. They have been with the Company for seven years, and make a strong management team.

Results of Lexis-Nexis Search:

The obligor and the management team have been researched within the Lexis-Nexis database. There were no significant adverse findings.

# SOVEREIGN APPROVAL MEMORANDUM

## BUSINESS

Gerald Higgins started G. F. Higgins, Inc. (GFH) in Los Angeles in 1975. This seafood brokerage and trading business was relocated to Massachusetts in 1979 at which time it was incorporated and elected an S-Corp. status. GFH is a wholesaler and distributor of frozen seafood, specializing in higher priced items such as shrimp, crabmeat, halibut, lobster tails, salmon and swordfish. GFH sells primarily to other wholesalers, retail distributors and retail chains with direct sales to approximately 90 customers east of Ohio. The Company has built a very solid customer base which includes Slade Gorton & Co., Inc. (D & B rating of 1R2), State Fish Co., Inc. (D & B rating of 1R3), Bams Sea Products (D & B rating of 3A3), Harbor Seafood, Inc. (D & B rating of 1R3), Tampa Bay Fisheries, Inc. (not rated by D & B), and Safe Harbor (not rated). The Company leases office space from a related realty trust, Higgins Realty Trust.

## MANAGEMENT

| Name(s) | Age | Position | # Yrs. Co. | # Yrs. Position | Ownership % |
|---|---|---|---|---|---|
| Gerald Higgins | 57 | Owner | 27 | 27 | 100% |

*Information not available*

Gerald Higgins is 100% owner of G. F. Higgins, Inc. and is the sole trustee of Higgins Realty Trust. Mr. Higgins has over 30 years of experience working in the seafood industry. Prior to starting his seafood brokerage and trading business in 1975, Mr. Higgins worked at Hunt Wesson as a regional manager and at M.W. Houck Food Brokers as a salesman since 1966. Both sons of Jerry Higgins, Tom Higgins and Bob Higgins have been with the Company for several years to assist with the expansion of new business and territories. In addition, both sons are being groomed to one-day control the operations of the Company with Tom heading Sales and Purchasing, and Bob heading inventory control and general and administrative operations.

GFH has formed a new partnership with Procapui / Icapel making GFH the exclusive importer of Procapui Brand Shrimp and Lobster tails. The partnership commenced in May 2001 and going forward all product shipped to the U.S.A will be branded and labeled Procapui Brand, packed by Icapel, and imported by GFH. Of note, Procapui, Pesca Ltd. and GFH jointly own Procapui brand and have an exclusive arrangement. Procapui Pesca has been packing shrimp and lobster tails for over 25 years and will be responsible for supplying boats, fishermen, raw material and fishing contracts from "HACCP" approved facilities as well as pricing and other market information necessary to compete within the market. GFH will provide brand development, sales and marketing, new product development, contracts for chain accounts and retail distribution.

## RECENT DEVELOPMENTS:

Because G.F. Higgins sources products internationally as well as domestically the Company has been able to maintain a lower sensitivity to price fluctuations and supply constraints. Recently, G.F. Higgins has increased the amount of business it conducts with a Brazilian supplier and has agreed to sell the product under the Procapui Band. The two main products sourced from the Brazilian supplier include:

Lobster Tails—Brazilian lobster tails are universally accepted in the industry as the best warm water lobster tail available anywhere in the world. In Brazil there is a well-managed fishery with strict quotas that prevent overfishing. Because it is a wild/non aquacultured fishery, it is not as susceptible to large price changes that have been known to happen in fisheries dominated by aquaculture. In addition, barriers to entry that prevent other importers in the United States from being able to import Brazilian lobster tails help protect the Company from the threat of high competition. The producers in Brazil typically align themselves with one or two US importers and work with that importer to make sure that both parties generate a profit. The target markets for the lobster tails are high-end restaurants and retail store chains.

Shrimp—Farmed white vannamei. This species is farmed all over Central / South America and in increasing amounts from China. Like other farmed seafood, there have been large price fluctuations that have affected this market and have made it difficult to generate profits consistently. However, G.F. Higgins management believes the Company is somewhat insulated from exposure to price fluctuations. Due to the relationship with the Company's Brazilian supplier, the Company can purchase products at adjusted prices based on what the market is willing to bear. Through G.F. Higgins' control over the Brazilian plant, it is able to do things like finger pack and have a quality seal granted by the city in which the plant is located. This allows the Company to brand products and take them out of the commodity category. Additionally, it allows the Company to sometimes get more for the product. Through Higgins' plant control in Brazil, the Company has the ability to change the form in which the product comes in, something very few businesses have in Central/South America. The Company can produce blocks, peeled, cooked and IQF products. This means for the same item there are now four different markets for the Company's shrimp resulting further expansion of the Company's potential customer base.

# FAX TRANSMITTAL SHEET



**ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.:        (212) 805-7933
Telephone No.:  (212) 805-0036

**Dated:** August 6, 2008                              **Total Number of Pages:** 10

| TO | FAX NUMBER |
|---|---|
| Luigi P. De Maio, Esq. | 212-889-1391 |
| John J. Phelan, III, Esq. | 212-315-3028 |
|  |  |

# TRANSCRIPTION:

**MEMO ENDORSED 8/6/08**

1. The Court extends the document discovery cutoff to 10/15 but the completion of all discovery inc. depositions remains 10/30 and is not likely to be further extended. (Get additional lawyers involved if necessary.)

2. The Court will hold a conference this Friday, <u>8/8/08 at 9:30 AM</u>, to discuss the other issue raised in this letter.

**Copy to:**   Judge Barbara S. Jones